## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FC INVESTMENT GROUP LC<br>1700 Wisconsin Avenue, N.W.<br>Washington, DC 20007,<br><br>and<br><br>LAWRENCE JAY EISENBERG<br>1700 Wisconsin Avenue, N.W.<br>Washington, DC 20007,<br><br>      Plaintiffs,<br><br>   v.<br><br>LARRY B. LICHTENSTEIN<br>c/o Larry B. Lichtenstein & Associates<br>20 North Clark Street, Suite 801<br>Chicago, IL 60602,<br><br>and<br><br>LARRY B. LICHTENSTEIN & ASSOCIATES<br>20 North Clark Street, Suite 801<br>Chicago, IL 60602,<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No._____<br><br><br>**Jury Trial Demanded** |

## COMPLAINT

For its complaint against Defendant Larry B. Lichtenstein and Larry B. Lichtenstein & Associates (collectively, "Lichtenstein"), FC Investment Group LC ("FC") and Lawrence Jay Eisenberg ("Eisenberg") (FC and Eisenberg are collectively referred to herein as "FCIG") allege as follows:

**Parties**

1.      Plaintiff FC is a Maryland limited liability company having its principal place of business at 1700 Wisconsin Avenue, N.W., Washington, DC 20007.  Plaintiff Eisenberg is the sole owner and Manager of FC, which he created in or about April 2001 for the purpose of allowing his friends and family members to place individual investments with a company called Titan Global Strategies, Ltd. ("Titan"), of which Defendant Lichtenstein was one of two Directors.  Titan, through Lichtenstein and his co-director and business partner Milan Martinic ("Martinic"), perpetrated a fraudulent, phantom foreign currency exchange program that bilked FCIG out of millions of dollars.  At all relevant times, FCIG conducted business with Titan, Lichtenstein and their co-conspirators from FC's Washington, DC offices.

2.      Plaintiff Lawrence Jay Eisenberg is a resident of the State of Maryland and has a principal business address in the District of Columbia at 1700 Wisconsin Avenue, N.W., Washington, DC 20007.

3.      Defendant Larry B. Lichtenstein is a resident of the State of Illinois and has a principal place of business at Larry B. Lichtenstein & Associates, 20 North Clark Street, Suite 801, Chicago, IL 60602.  Lichtenstein and Titan transacted business with and directed numerous communications to Eisenberg and FCIG in the District of Columbia in furtherance of the conspiracy.

4.      Defendant Larry B. Lichtenstein & Associates is a law firm, of which Lichtenstein is a principal.  Larry B. Lichtenstein & Associates has a principal place of business at 20 North Clark Street, Suite 801, Chicago, IL 60602.  Upon information and belief, Larry B. Lichtenstein is an unincorporated association doing business in the state of Illinois.  At relevant times, Lichtenstein acted as an agent of Larry B. Lichtenstein & Associates in his capacity as a

2

principal thereof.  Larry B. Lichtenstein & Associates is thus vicariously liable for Lichtenstein's acts as set forth herein.

## Venue

5.      This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. §§ 1332 and 1367.  Personal jurisdiction exists over Lichtenstein in the District of Columbia because Lichtenstein directed contact to FCIG and Eisenberg in the District of Columbia in furtherance of the conspiracy.

6.      Venue is proper pursuant to 28 U.S.C. § 1391.

## Nature of the Action

7.      This is an action for piercing of the corporate veil, compensatory and punitive damages against Lichtenstein arising from his role in a conspiracy led by Titan to defraud FCIG out of millions of dollars in a fraudulent foreign currency investment scheme.  FCIG has secured a $6.5 million judgment against Titan in Wisconsin state court.  Lichtenstein was one of two directors of Titan, and formed Titan along with his friend, client and business partner, Martinic.  Titan was a sham entity created for the purpose of fraudulently inducing investors, such as FCIG, to invest in a fraudulent currency program.  Titan actually placed no investments and existed solely to shield its principals from personal liability.  As a result, the corporate form should be disregarded and Lichtenstein should be personally liable for FCIG's judgment against Titan.  In addition, Lichtenstein, both in his role as a director of Titan and as Martinic's attorney, made material representations of fact that were designed to, and did, induce Plaintiffs to invest millions of dollars in the fraudulent foreign currency investment scheme.  Moreover, once Titan's and its board members' activities were revealed to be fraudulent, Lichtenstein tendered false documents

to induce FCIG to refrain from filing suit. As a result, FCIG is entitled to recover from Lichtenstein its lost investment, prejudgment interest, attorney fees and punitive damages.

### Statement of Facts

A.    **FCIG Is Induced to Invest in a Conspiracy in Which the Trader Was a British Company Called IG Group, PLC**

8.    In or about September 1998, Titan and its officials contacted Eisenberg at his offices in the District of Columbia about making an investment in a foreign currency trading account to be managed by Titan. Eisenberg was informed that Milan Martinic owned and controlled Titan. Eisenberg further was advised that all of the trades to be managed by Titan were to be made by the IG Group, PLC ("IG"), a currency trader.

9.    Based upon Titan's representations respecting its experience and affiliations, and the representations contained in an information brochure referencing Titan's arrangement with IG that was sent to Eisenberg via U.S. Mail, Eisenberg invested $10,000 with Titan. That investment was to be invested in foreign currency trades and was to be completely liquid and allow for withdrawal merely upon notice to Titan.

10.    In continuing reliance on the information brochures that Titan was operated as a "joint venture" with IG, and Titan's subsequent representations to Eisenberg at his offices in the District of Columbia and elsewhere, which are more fully described below, between October 1998 and October 2003 Eisenberg and related entities such as his pension plans invested approximately $1.065 million with Titan. Eisenberg's wife also invested $400,000 with Titan.

11.    Beginning in 1998 and continuing through 2003, Titan sent "account statements" to Eisenberg (and later FCIG) at Eisenberg's office in the District of Columbia, which allegedly reflected the trading in his accounts and the profits that had been earned in Eisenberg and FCIG's

investments. Upon information and belief, Titan was a sham and never placed any foreign currency investments.

**B.     In Reliance on Titan's Misrepresentations,
Eisenberg Created FCIG to Facilitate His Dealings with Titan**

12.     In April 2001, Eisenberg created FCIG to allow his friends and family members to place individual investments with Titan. Upon FCIG's creation, all of Eisenberg's activities were taken on behalf of, and in his capacity as manager of, FCIG.

13.     As of October 2003, the total investments in the FCIG accounts, net of amounts returned by Titan, was approximately $5 million.

14.     Continuing through November 2003, Titan sent "account statements" to Eisenberg and FCIG in the District of Columbia that supposedly evidenced large earnings on FCIG's investments.

**C.     In 2002, IFX Replaced IG as a Member of the
Conspiracy and Induces FCIG to Invest Millions
More in the Fraudulent Trading Program**

15.     In early 2001, Titan assigned Charles Knott, a Titan employee responsible for "New Business Development" to be Eisenberg's, and, as of April 2001, FCIG's investment advisor and point-of-contact for Titan. Knott met with Eisenberg several times in the District of Columbia in 2001 and 2002 to explain Titan's operations and answer FCIG's due diligence requests.

16.     In or about 2002, Knott advised FCIG that IFX would assume the management, investment and brokerage service responsibilities for Titan from IG. IFX was Titan's business partner in this foreign currency investment scheme. Titan's points of contact at IFX were Senior Sales Executive Andy Demetriades ("Demetriades") and Christopher L. Cruden ("Cruden") of IFX's Managed Investment Products Department. Lichtenstein called Eisenberg from time to

time to offer assurances about IFX's role in the Titan/IFX program. IFX's involvement with Titan was reassuring to FCIG and Eisenberg.

17.    In furtherance of the Titan/IFX conspiracy, Titan opened an account with IFX.

18.    Further reassuring to FCIG was that, on the several occasions FCIG requested a partial return of investment funds Titan released the funds without delay. These partial returns exceeded over $500,000 in total. This hallmark of a well-executed fraud – the partial return of an investor's funds to provide the appearance of legitimacy – was designed to induce FCIG to continue its investment activities and assuage any concerns respecting Titan's business practices.

19.    To further perpetuate the fraudulent scheme, Eisenberg was invited by Knott and Cruden to visit IFX's offices in November, 2002 for a presentation respecting the venture.

20.    During his visit to IFX, Eisenberg met with Knott, Cruden and several other IFX directors and officers. Eisenberg and was shown an elaborate PowerPoint presentation that indicated in no uncertain terms that Titan and IFX had established a joint venture with respect to foreign currency trading activities.

21.    On December 10, 2002, Titan wired $100,000 to IFX from Titan's account at US Bank.

**D.    Lichtenstein Was Involved with FCIG and its Dealings with Titan**

22.    On information and belief, Lichtenstein is Martinic's friend, business partner and personal attorney. Lichtenstein aided and abetted Martinic's illegal activity by forming shell companies, such as L & M Internet and Titan.

23.    Continuing into 2001 (and beyond), FCIG raised questions regarding Titan's business structure and Titan's compliance with applicable laws and regulations. Unbeknownst to FCIG, Titan was not yet incorporated or licensed to do business in any state.

6

24.    Upon information and belief, in response to FCIG's continuing inquiries, Martinic requested that his partner and attorney, Lichtenstein, interact with FCIG in connection with FCIG's investments with Titan.  FCIG was reassured that Lichtenstein, an attorney, was involved in the Titan program.

25.    Beginning in 2002, Lichtenstein relayed information to FCIG regarding Lichtenstein's role as an intermediary between Titan and its co-conspirator IFX, which FCIG was led to believe was taking over the trading activities for Titan from IG.

26.    In 2002, Lichtenstein had regular contact with FCIG regarding the Titan/IFX relationship.  Lichtenstein and Eisenberg had telephone conversations on or about May, 2002 , July 20, 2002, August, 12, 2002, October 29, 2002 during which Lichtenstein made the following representations, all of which were false: i) Lichtenstein and Martinic would work with a Chicago law firm, KMZ Rosenmann, to ensure that Titan was in compliance with all applicable United States securities and commodities regulations; ii) the Titan/IFX venture would not be in jeopardy because all regulatory compliance issues would be resolved; iii) that IFX would perform the trades for Titan; iv) that Martinic and Lichtenstein would go to London to make sure that all regulatory compliance had been completed; v) that once their compliance issues were taken care of, Martinic and Lichtenstein would travel to Washington, D.C. to meet with FCIG to answer any further questions about the Titan/IFX venture.

27.    Lichtenstein's representations were false in that, inter alia, IFX never actually performed trades for Titan, Titan's activities (with IFX or otherwise) never complied with United States or British regulatory requirements and FCIG was never given the opportunity to meet with Lichtenstein and Martinic to complete FCIG's due diligence.

E.    **Titan is Incorporated Under the Laws of Illinois**

28.    On or about November 12, 2002, in response to FCIG's repeated due diligence inquiries and in an attempt to shield Titan's principals from the liability associated with operating Titan as an unincorporated business since at least 1998, Lichtenstein caused Titan to be incorporated under the laws of Illinois by instructing that Titan's articles of incorporation be filed with the Illinois secretary of state.

29.    Titan's articles of incorporation reflect, inter alia, that Lichtenstein and Martinic were directors of Titan and Titan was incorporated with only $1,000 in capital (which is not enough capital to satisfy debts attendant to operating a company that facilitates multi-million dollar investments).

30.    Titan observed no corporate formalities, appointed no officers, was undercapitalized, never conducted board of directors or shareholder meetings, and commingled its funds with personal funds and funds of other businesses.

31.    Despite that Lichtenstein is an attorney (and thus understands the formalities that must be observed by a corporation) and a director of Titan, Lichtenstein made no efforts to ascertain the location and extent of Titan's assets, inspect Titan's records or ensure that Titan was operating in compliance with all applicable laws and regulations.

F.    **FCIG Continued to Invest with Titan/IFX Until the Titan/IFX
Venture was Revealed to be a Fraudulent Investment Scheme**

32.    Relying on Lichtenstein and Knott's representations, IFX's representations that Titan and IFX were business partners, the meeting in IFX offices and the PowerPoint presentation, FCIG and those investors associated with FCIG invested approximately $2 million after the London meeting in November, 2002.

8

33.     On March 10, 2003, Cruden sent a letter to Lichtenstein outlining further "potential revenue streams" for Titan and IFX, which is further evidence that Titan and IFX were allied together and of Lichtenstein's active role in the fraudulent investment scheme.

34.     In late 2003, when Eisenberg's request to close his account was rebuffed, the IFX/Titan venture was revealed to be a fraudulent investment scheme.  To this date, Eisenberg/FCIG's funds have not been returned.

### G.     Lichtenstein Falsely Assures FCIG That it's Funds Would Be Returned In Their Entirety

35.     Lichtenstein made false assurances to FCIG that its accounts would be closed and that the entirety of the funds would be returned to FCIG and the investors associated with FCIG.

36.     FCIG repeatedly requested to meet with Lichtenstein to review the procedure to close the accounts and obtain a return of the invested funds, but Lichtenstein refused to conduct such in-person meetings.

37.     FCIG was in regular contact with Lichtenstein in late 2003/early 2004 regarding return of the funds.  Specifically, Eisenberg and Lichtenstein had telephone conversations on at least November 19, 2003, December 5, 10, 22, 23 and 29, 2003, during which Lichtenstein made materially false statements upon which FCIG relied in refraining from taking immediate legal action against Titan and its conspirators.

38.     During these phone calls and other communications, Lichtenstein assured FCIG that: i) $6 million was already being sent to FCIG via certified check; ii) Martinic was working with a bank and would obtain a loan to refund FCIG's money; iii) that Martinic would call FCIG to work out the details for the return of the funds; iv) that all the paperwork to effectuate the transfer was complete; and v) all monies would be returned to FCIG as set forth in the Contract

and per Titan's representations to FCIG. To this date, none of the funds that FCIG and the investors associated with FCIG invested with Titan have been returned.

39.     FCIG reasonably relied upon Lichtenstein's misrepresentations regarding return of its funds based upon a facsimile that Lichtenstein sent to Eisenberg on January 14, 2004 attaching a deposit slip that indicated that $4.3 million had been deposited into a Titan controlled bank account at US Bank. Upon receipt of this deposit slip, FCIG was reassured that funds were available to return at least a portion of the FCIG related investments with Titan and thus continued to refrain from taking any legal or equitable action against Titan, Martinic, Lichtenstein, IFX or any other conspirators.

40.     FCIG later discovered that the deposit slip was fake and instituted legal action against Titan, Martinic, IG and IFX. FCIG initially filed suit against Martinic and Titan in the Circuit court for Walworth County, Wisconsin on March 23, 2004. On July 20, 2004, FCIG obtained a judgment against Titan and Martinic for $6.5 million. An action against IFX is still pending in this Court.

41.     As a result of FCIG's detrimental reliance on Lichtenstein's representations respecting return of FCIG's investment, Martinic, Titan and their co-conspirators were given sufficient time to spend, transfer and otherwise deplete the invested funds and other assets to render the judgment uncollectible. FCIG has expended hundreds of thousands of dollars in legal and related fees in pursuing its legal remedies and attempting to enforce its judgment, all of which would have been avoided but for Lichtenstein's fraudulent representations concerning both Titan's activities and the return of FCIG's funds.

42.     Throughout the course of these representations, Lichtenstein never disclosed that he was also a member of Titan's board of directors. FCIG reasonably relied on Lichtenstein's

representations as an officer of the Court and had no knowledge of Lichtenstein's personal interest in protecting Titan's assets. FCIG would not have relied upon Lichtenstein's representations during this "negotiation period" had FCIG known of Lichtenstein's bias as a Titan board member.

43.     Titan was involuntarily dissolved by the Illinois secretary of state on April 1, 2004 for failure to pay taxes.

## COUNT I- LICHTENSTEIN, AS A DIRECTOR OF TITAN, IS PERSONALLY LIABLE FOR FCIG'S JUDGMENT AGAINST TITAN

44.     Plaintiffs incorporate as if realleged herein the allegations contained at paragraphs 1-43.

45.     Lichtenstein had a unity of interest with Titan such that Titan's corporate status should be disregarded. Lichtenstein incorporated Titan and named himself as a director, but Titan never observed any corporate formalities, was undercapitalized, kept no books and records, had no officers, and commingled its funds with personal funds of its directors.

46.     To uphold Titan's corporate status as a means of protecting Lichtenstein from personal liability would perpetrate a fraud on the public in that FCIG and other Titan creditors would be left without recourse as to Titan's debts if the corporate veil of Titan, which has no assets, is not pierced.

47.     Because Lichtenstein had a unity of interest with Titan and because shielding Lichtenstein from personal liability would perpetrate a fraud on the public, FCIG is entitled to enforce its $6.5 million judgment against Lichtenstein individually.

## COUNT II - INTENTIONAL FRAUD/FRAUD IN THE INDUCEMENT

48.     Plaintiffs incorporate as if realleged herein the allegations contained at paragraphs 1-47.

11

49.    As set forth above, Lichtenstein, made intentional and material misrepresentations of fact to FCIG and Eisenberg on numerous occasions in 2002 and 2003 respecting, inter alia:  (i) Titan's legitimacy and Titan's relationships with foreign IFX (as set forth in paragraph 25 above); and (ii) that FCIG's funds would be returned (as set forth in paragraphs 35-36 above). Indeed, Lichtenstein's representations were false in that Titan and IFX never actually performed any trades with its investors' money and FCIG's funds were never returned.

50.    Given that Lichtenstein was a director of Titan, Lichtenstein either knew that these representations were false or recklessly disregarded the truth of these representations.

51.    Lichtenstein made these misrepresentations for the purpose of inducing FCIG to act as set forth below.

52.    FCIG had a right to rely on Lichtenstein's statements based upon his representations to Eisenberg that Lichtenstein was counsel to Martinic and Titan.

53.    In reasonable reliance on Lichtenstein's misrepresentations described above, FCIG and Eisenberg were induced to, inter alia:  (i) invest funds with Titan (which it believed would be traded by IFX); (ii) perform services for Titan, such as introducing Titan to other potential investors; (iii) maintain its investments with Titan; and (iv) refrain from seeking legal or equitable relief from the conspirators until after Titan and Martinic were, in effect, "judgment proof."

54.    Lichtenstein, recklessly and/or maliciously, intended that FCIG and Eisenberg would rely upon his misrepresentations in the manner described above.

55.    As a result of Lichtenstein's intentional fraud, FCIG and Eisenberg have been deprived of approximately $5 million of investment funds.

## COUNT III - CIVIL CONSPIRACY

56.     Plaintiffs incorporate as if realleged herein the allegations contained at paragraphs 1-55.

57.     Lichtenstein had agreements and/or understandings with Martinic and IFX to commit fraud beginning at least in 2002 and continuing through 2004 as evidenced by his role as one of Titan's board members, his relationship as Martinic's business partner before Titan was incorporated and various communications set forth in the previous paragraphs.

58.     As described above, not only did Martinic and IFX take overt actions in furtherance of the conspiracy, but Lichtenstein also committed numerous overt acts in furtherance of the conspiracy, including intentionally providing material false and misleading information to Eisenberg and FCIG.  Moreover, Lichtenstein, during his participation in the conspiracy, knew that the overt actions were directed to the District of Columbia in that he directed phone calls and other communications to Eisenberg in the District of Columbia.

59.     FCIG was harmed by Lichtenstein's conspiracy with Martinic and IFX and has suffered damages.

## COUNT IV - CIVIL AIDING AND ABETTING

60.     Plaintiffs incorporate as if realleged herein the allegations contained at paragraphs 1-59.

61.     As described above, Martinic and IFX committed numerous fraudulent acts in violation of the common law.

62.     Lichtenstein had knowledge of Martinic and IFX's fraudulent enterprise or recklessly disregarded the fraudulent nature of the enterprise and offered reassurances to FCIG about Titan's legitimacy, which induced Plaintiffs to continue to invest money with Titan, to

13

maintain their accounts with Titan and to refrain from filing suit against the members of this fraudulent conspiracy.

63.    Lichtenstein aided, abetted and encouraged Martinic and IFX's wrongful and tortious conduct and knowingly provided substantial assistance, aid and encouragement in the commission of such conduct by: (i) becoming a member of Titan's board of directors; (ii) becoming an intermediary between Titan, IFX and FCIG; (iii) inducing FCIG to refrain from filing suit against the members of this fraudulent conspiracy.

64.    Plaintiffs relied on Lichtenstein's representations to their detriment by maintaining their accounts with and continuing to invest funds with Titan and refraining from filing suit against the conspirators, which damaged FCIG in an amount to be more fully determined at trial.

## COUNT V - NEGLIGENT MISREPRESENTATION

65.    Plaintiffs incorporate as if realleged herein the allegations contained at paragraphs 1-64.

66.    Lichtenstein, as an attorney licensed by the state of Illinois, is in the business of supplying information for the guidance of others in their business transactions.

67.    Lichtenstein had a duty to exercise care and competence in obtaining and communicating the information, which FCIG was justified in expecting.

68.    Lichtenstein breached this duty by failing to communicate to FCIG that he was also a member of Titan's board of directors and failing to assure that the corporation for which he was a director was engaged in a lawful business, observed corporate formalities and was registered with the appropriate regulatory authorities.

69.    As a Titan customer and potential claimant/creditor, FCIG was in the class of persons for whose guidance Lichtenstein was to provide information regarding both the nature of Titan's business and whether the funds would be returned.

70.    Lichtenstein's breach of this duty caused FCIG to suffer damages because FCIG justifiably relied on Lichtenstein's representations as an unbiased attorney with no personal stake in the transactions.  FCIG's damages include, but are not limited to, the $5 million invested with Titan.

WHEREFORE, Plaintiffs Eisenberg and FCIG respectfully request this Court enter judgment in their behalf and enter an order:

A.    Rendering Lichtenstein personally liable for satisfaction of FCIG's $6.5 million dollar judgment against Titan;

B.    Awarding Plaintiffs the full amount of investment funds contained in Plaintiffs' account(s) with Titan, which are in excess of $5 million;

C.    Awarding Plaintiffs compensatory damages in an amount to be proven at trial for Defendant's actions as described above;

D.    Awarding Plaintiffs punitive damages in an amount to be proven at trial for Defendant's intentional and malicious actions as described in Count II;

E.    Awarding Plaintiffs pre- and post-judgment interest on all amounts awarded;

F.    Awarding Plaintiffs attorney fees incurred in bringing this action and in pursuing collection of its judgment against Titan and Martinic; and

G.    Awarding Plaintiffs all such further relief this Courts deems fair and reasonable.

Dated:  June ___, 2005                    Respectfully submitted,

                                          SHULMAN, ROGERS, GANDAL,
                                           PORDY & ECKER, P.A.


                                          By: _____
                                          Ross D. Cooper #429200
                                          11921 Rockville Pike, Third Floor
                                          Rockville, MD 20852
                                          (301) 230-5200
                                          (301) 230-2891 (fax)


                                          Attorney for Plaintiffs, Lawrence Jay Eisenberg and
                                          FC Investment Group



                          **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable.


                                          _____
                                          Ross D. Cooper



                                   16