## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DISTRICT OF COLUMBIA

FC INVESTMENT GROUP, L.C., et al.

      Plaintiffs

v.

LARRY B. LICHTENSTEIN, et al.,

      Defendants.

Case No. 1:05-cv-01753-RMC

**ORAL HEARING REQUESTED**

## MOTION TO DISMISS, OR IN THE ALTERNATIVE,
## MOTION TO TRANSFER VENUE

Defendants, LARRY B. LICHTENSTEIN and LARRY B. LICHTENSTEIN & ASSOCIATES, by their undersigned attorneys, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3), and Local Rule 7.1, respectfully move this Court for an Order dismissing the Complaint in this matter, with prejudice, on the following grounds: (1) that this court lacks jurisdiction over the subject matter of this action; (2) this court lacks personal jurisdiction over the Defendants; and (3) venue in this Court is improper.

In the alternative, for the convenience of the parties and witnesses and in the interests of justice, pursuant to 28 U.S.C. § 1404(a), Defendants respectfully move this court for an Order transferring this action to the United States District Court for the Northern District of Illinois.

In support of this Motion, Defendants submit the attached Memorandum of Points and Authorities, as well as a proposed Order.

Defendants request that the Court hold an oral hearing on this Motion.

1

Respectfully submitted,
**LARRY B. LICHTENSTEIN**
**LARRY     B.     LICHTENSTEIN     &**
**ASSOCIATES**
*Defendants*
By Counsel:

DATED: November 7, 2005

Matthew A. Ranck (D.C. Bar # 484983)
William L. Mitchell, II (D.C. Bar # 476101)
ECCLESTON AND WOLF, P.C.
2001 S Street, N.W., Suite 310
Washington, DC  20009
Tel. (202) 857-1696
Fax (202) 867-0762
*ranck@ewmd.com*
*wmitchell@ewdc.com*

### CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Motion, Memorandum of Points and Authorities and proposed Order were transmitted by electronic mail on this 7th day of November, 2005, to:

Ross D. Cooper, Esquire
SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.
11921 Rockville Pike, Third Floor
Rockville, Maryland 20852
*Counsel for Plaintiffs*

Matthew A. Ranck

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DISTRICT OF COLUMBIA**

FC INVESTMENT GROUP, L.C., et al.

      Plaintiffs

v.                                                                    Case No. 1:05-cv-01753-RMC

LARRY B. LICHTENSTEIN, et al.,

      Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER VENUE

Larry B. Lichtenstein and Larry B. Lichtenstein & Associates, Defendants herein, by and through their undersigned counsel, Pursuant to Rules 12(b)(1)(2) and (3) of the Federal Rules of Civil Procedure, and pursuant to Local Rule 7, hereby file this Memorandum of Points and Authorities in support of their Motion to Dismiss or in the alternative to Transfer Venue, and in support thereof state:

### INTRODUCTION

This action arises from the Plaintiffs' alleged loss of in excess of $5,000,000, which they claim to have invested on behalf of themselves and a group of unidentified, non-party investors, with another non-party, Titan Global Strategies, Ltd. ("Titan") for trading in foreign currency securities. Plaintiffs assert that Titan was undercapitalized when it was formed, failed to observe requisite corporate formalities, was not in compliance with applicable statutes and regulations, and was a sham entity. They further assert that Mr. Lichtenstein, an attorney, knew that Titan was a sham, but that he and Titan's sole owner, Milan Martinic ("Martinic"), as well as perhaps others who are not

1

parties to the suit, induced Plaintiffs to invest their funds through various misrepresentations and other wrongs. Although Plaintiffs assert that their investments were either lost or stolen, they do not allege that any of this money went to Mr. Lichtenstein or his law firm.

Plaintiffs[1] began investing funds with Titan and/or Martinic in 1998, and they allege that they were advised in 2002 that a company called IFX Markets, Ltd ("IFX") was to take over management and brokerage services for Titan's investments. Mr. Lichtenstein incorporated Titan in November 2002, and was nominally identified as one of its two directors, along with Martinic, until January 11, 2003, when he (Mr. Lichtenstein) formally resigned. Plaintiffs allege that, beginning in 2002, Mr. Lichtenstein acted as an intermediary between Titan/IFX and the Plaintiffs concerning the investments. Specifically, Plaintiffs assert that Mr. Lichtenstein falsely represented that Titan was in compliance with all United States securities and commodities regulations, and that he and Martinic would take the necessary steps to ensure continuing compliance in that regard, despite knowing that Titan was a sham entity and was not in compliance with applicable statutes and regulations.

In addition, Plaintiffs maintain that Mr. Lichtenstein continued to misrepresent Titan's true nature and character after Plaintiffs allegedly discovered that Titan had lost the invested funds and was unable to return them. According to Plaintiffs, Mr. Lichtenstein was in regular contact with them from late 2003 to early 2004 regarding the return of these funds by Titan, and he repeatedly assured Plaintiffs that the money had been, or was in the process of being, returned. Plaintiffs assert that they relied on Mr.

---

[1] Upon information and belief, Plaintiff Eisenberg is an exceedingly sophisticated businessman, and is a licensed attorney and is or was a certified public accountant as well.

Lichtenstein's alleged statements by refraining from filing lawsuits against Titan and Martinic until after the point in time when the funds had been dissipated and were unrecoverable. Ultimately, Plaintiffs obtained a $6.5 Million judgment against Titan and Martinic in Wisconsin state court. Complaint at ¶40.

Having apparently been unable to recover from Martinic, Plaintiffs now set their sights on Mr. Lichtenstein, seeking to recover their $6.5 million based upon theories of: (1) piercing the corporate veil; (2) fraudulent misrepresentation; (3) civil conspiracy; (4) civil aiding and abetting; and (5) negligent misrepresentation. Respectfully, the claims against Mr. Lichtenstein must be dismissed because the Complaint fails to sufficiently plead subject matter jurisdiction; because this Court lacks personal jurisdiction over Mr. Lichtenstein and the law firm[2]; and because the venue selected by Plaintiffs is improper. In the alternative, this case must be transferred to the United States District Court for the Northern District of Illinois on the basis of *forum non-conveniens*.

## FACTUAL BACKGROUND

Plaintiffs concede that Mr. Lichtenstein is a resident of the state of Illinois, and has a principal place of business in Chicago, Illinois. (Compl. ¶ 3). Plaintiffs also concede that Mr. Lichtenstein's law firm was formed under the laws of the state of Illinois, and has a principal place of business in Chicago, Illinois. (Comp. ¶ 4). Plaintiffs assert that Lichtenstein, as Titan's attorney, "directed contact" to them in the District of Columbia. (Compl. ¶¶ 5, 24). However, while Plaintiffs allege substantial contact between themselves and Titan, Martinic and other non-parties, the contact between the Plaintiffs and Lichtenstein seems to be limited to a alleged telephone conversations with

---

[2] In addition, as Larry B. Lichtenstein & Associates is nothing more than a trade name, lacking capacity to sue or be sued, all claims against it must be dismissed with prejudice.

Lichtenstein in 2002, 2003, and 2004 concerning Titan and the investments, although there is no indication who initiated them or the specifics thereof, (Compl. ¶¶ 25-26, 37-38), and a facsimile Lichtenstein allegedly sent to Plaintiffs in January 2004 concerning a $4.5 million deposit of funds into a Titan-controlled bank account at U.S. Bank. (Compl. ¶ 39).

Lichtenstein and his law firm have no offices, agents, or employees located in the District of Columbia. (Lichtenstein Declaration, Exh. A, ¶ 3). They do not own real estate in the District of Columbia. (*Id.*, ¶ 4). They do not transact any business in the District of Columbia, and are not even licensed to conduct business therein. (*Id.*, ¶¶ 5-6).

## ARGUMENT[3]

I.    **The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction as it Fails to Allege Diversity of Citizenship of the Individual Parties**

The facts alleged in the Complaint do not establish diversity jurisdiction. To establish diversity jurisdiction, "one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983). Plaintiffs' Complaint clearly fails to do so.

Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed a citizen of any state by which it has been incorporated and of the state where it has its principal place of business." Admittedly, the complaint alleges the principal place of business for each of the corporate parties to this action[4]. (Complaint ¶¶ 1,4).

---

[3]   Although Defendants have not responded substantively to the Complaint at this time, Defendants wish to assure the Court that they vehemently deny any wrongdoing in connection with any of the matters alleged in the Complaint.

[4]   However, see note 6, *infra.*

4

On the other hand, with regard to the individual defendants, Plaintiffs have alleged only the states of each party's *residence*. (Complaint ¶¶ 2-3). However, diversity of "citizenship", rather than diversity of residence, is necessary to confer diversity jurisdiction upon a federal district court. 28 U.S.C. § 1332(a); *See e.g.*, *Edick v. Poznanski*, 6 F. Supp.2d 666 (W.D. Mich. 1998). As such, it is the rule in the District of Columbia and elsewhere that an allegation of *residence* alone is insufficient to establish the citizenship necessary for diversity jurisdiction. *See Naartex*, 722 F.2d at 792 (citing 13 <u>Wright, Miller & Cooper, Federal Practice and Procedure</u> § 3611, at 706 (1975)). The rationale behind this rule is that an individual may have more than one residence, but has only one citizenship or domicile. *Gambelli v. U.S.*, 904 F. Supp. 494, 496-97 (E.D.Va.1995); *See also*, *Last v. Elwyn*, Inc., 935 F. Supp. 594, 596-97 (E.D. Pa. 1996) (person's domicile is distinguished from residence for purposes of diversity jurisdiction statute); *Mitchell v. Mackey*, 915 F. Supp. 388, 391 (M.D. Ga. 1996) (while "citizenship" and "domicile" are synonymous for purposes of diversity jurisdiction, "residence" is not equivalent of either citizenship or domicile.).

In their Complaint, Plaintiffs allege only that Mr. Lichtenstein is a "resident" of the state of Illinois and that Mr. Eisenberg is a "resident" of Maryland.[5] While these allegations may be true, Plaintiffs have not alleged in what state he or the individual defendant are citizens. As such allegations of residence do not adequately plead the required citizenship, they are insufficient to establish diversity jurisdiction, and the Complaint must be dismissed. *Naartex*, 722 F.2d at 792.

---

[5] Plaintiffs also allege that Mr. Lichtenstein has a principal place of business in Illinois and Mr. Eisenberg has a principal place of business in the District of Columbia. The court has made clear, however, that individual defendants are not corporations and thus, their principal place of business is irrelevant for purposes of diversity jurisdiction. *Shaller v. Columbia Hosp. for Women, Medical Center*, 685 F. Supp. 852, 852 (D.D.C. 1988).

**II.    The Complaint Should Be Dismissed Because This Court Lacks Personal Jurisdiction Over the Defendants**

Plaintiffs have the burden of establishing that the Defendants are subject to the personal jurisdiction of the federal court in the District of Columbia. To determine whether that jurisdiction exists, two factors are paramount: (1) whether jurisdiction is applicable under the District of Columbia long-arm statute; and (2) whether a finding of personal jurisdiction satisfies the Constitutional requirements of due process. *Youming Jin v. Ministry of State Security*, 335 F. Supp.2d 72, 77 (D.D.C. 2004).

**A. District Of Columbia Long-Arm Statute**

Under the District of Columbia long-arm statute, "the plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. New York Zoological Soc.,* 894 F.2d 454, 456 (D.C.Cir. 1990). While the long-arm statute is interpreted broadly and factual disputes are resolved in favor of the plaintiff, the plaintiff must allege some specific facts evidencing purposeful activity by the defendant which invokes the benefits and protections of the District's laws. *COMSAT Corp. v. Finshipyards S.O.M.*, 900 F. Supp 515, 520 (D.D.C. 1995). In that regard, the long-arm statute provides specific categories of purposeful activity from which personal jurisdiction over a defendant may arise. Thus, § 13-423 of the D.C. Code explains that jurisdiction may arise from the defendant, among other things: (1) "transacting any business in the District;" (2) "contracting to supply services in the District;" (3) "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia" or (4) "causing tortious injury in the District" by an act or omission outside of the District if the person regularly does business or derives revenue from the District of Columbia. D.C. Code § 13-423; *See also, Youming Jin*, supra., 335 F. Supp.2d at 77.

6

Plaintiffs assert personal jurisdiction exists "because Lichtenstein directed contact to FCIG and Eisenberg in the District of Columbia in furtherance of the conspiracy." (Compl. ¶5). Plaintiffs certainly do not allege, nor could they, that Defendant, an Illinois attorney (Lichtenstein Declaration, Exh. A, ¶ 2), *regularly* does business in or derives revenue from the District of Columbia. Similarly, the Plaintiffs do not and cannot allege that Defendants contracted to supply services in the District of Columbia. As such, Plaintiffs, may not assert jurisdiction under the under the second or fourth categories of § 13-423, as cited above.

Likewise, Plaintiff does not allege defendants caused injury while *physically present* in the District of Columbia. As such they cannot assert personal jurisdiction under the third category. *See Margoles v. Johns*, 157 U.S. App. D.C. 209, 483 F.2d 1212, 1219-20 (D. C. Cir. 1973); *See also Moncrief v. Lexington Herald-Leader Co.*, 257 U.S. App. D.C. 72, 807 F.2d 217, 221 (D. C. Cir. 1986) (holding that § 13-423(a)(3) is an intentionally restricted tort section which stops short of the outer limits of due process and confers jurisdiction only over a defendant who commits an act while physically in the District and causes an injury physically in the District); *See also Helmer v. Doletskaya*, 393 F.3d 201 (D.C. Cir. 2004). As a result, Plaintiffs must assert jurisdiction under the first category of the long-arm statute, as cited above, "transacting any business in the District of Columbia." D.C. Code § 13-423.

## B. Transacting Business in the District of Columbia

The "transacting business" provision of the District of Columbia long-arm statute permits the exercise of personal jurisdiction to the full extent of the due process clause. *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 810-

811 (D.C. 1976). Thus, a plaintiff must demonstrate that the defendant had minimum contacts with the District of Columbia such that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Dooley v. United Technologies*, 786 F. Supp. 65, 71 (D.D.C. 1992) (citing *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). This determination has been described essentially as "whether the defendant purposefully established minimum contacts in the forum state." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108-09, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987). With regard to establishing such contacts, the Supreme Court recognized in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), that contemporary business is often transacted solely by mail and wire communications and that jurisdiction may sometimes exist even if a defendant "did not physically enter the forum state." *Id.* at 476, 105 S.Ct. at 2184.

Nevertheless, the Constitution does not permit a defendant to be haled into court in a jurisdiction "solely as a result of 'random,' 'fortuitous,' or other 'attenuated' contacts...or of the 'unilateral activity of another party or third person'...." *Id.* at 475, 105 S.Ct. at 2183. The *Burger King* Court explained that in a case where jurisdiction is based on non-physical contacts, one must determine, despite the lack of physical presence in the forum: (1) whether the defendant purposefully availed himself/itself of the privilege of conducting business in the forum state and (2) whether the defendant's conduct and contacts in connection with the forum is such that he "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This analysis embodies the notion that the

defendant's own action must be substantial enough to put it on notice of the possibility of defending itself in the forum state. *Id.* at 298, 100 S.Ct. at 567-68; *Chung v. NANA Development Corp.,* 783 F.2d 1124, 1127 (4th Cir. 1986).

Plaintiffs have not suggested that Mr. Lichtenstein, his law firm or any of their agents are residents of the District of Columbia or have ever entered the District for the purpose of transacting business with the Plaintiffs. In fact, Plaintiffs assertion of personal jurisdiction is apparently based solely upon a series of telephone calls and a facsimile transmission. (Compl. ¶¶ 25-26, 37-39). These contacts, however, are simply not substantial enough, and do not evidence any intent on the part of Defendants to do business in the District of Columbia, such that the requirements of the due process clause are met. As the court in *Chung*, supra., explained, "if a party's slightest gesture of accommodation were to impose personal jurisdiction, commercial dealings would soon turn unobliging and brusque." *See Chung v. NANA Development Corp.*, 783 F.2d at 1129.

Even if substantiated, little weight can be given to the telephone conversations. Plaintiffs are a Maryland limited liability company (the "LLC") with its principal place of business in Maryland[6] and a Maryland resident (see Compl. ¶39). At no time did the LLC register in, maintain a resident agent in, or establish its principal place of business in the District of Columbia. At no time was Mr. Eisenberg a resident of the District of Columbia. As such, to imply that these telephone calls represent "purposeful availment", Plaintiffs assume that Defendants were aware Mr. Eisenberg was at his District of

---

[6] Although Plaintiffs allege the LCC's principal place of business is in the District of Columbia, there is no factual support for this allegation. The LLC's principal place of business was originally designated, in April 2001, as 9800 Gable Ridge Terrace, Apt. G, Rockville, MD. See Articles of Incorporation, Exhibit B. In January 2005, just months before filing this suit, the LLC designated its principal place of business as 122 Treehaven Street, Gaithersburg, Maryland 20850. See Certificate of Reinstatement, Exhibit C. Thus, Plaintiffs' averment that the LLC's principle place of business is in the District of Columbia is suspect.

Columbia law office, and not his home or the LLC's principal place of business, during the relevant telephone conversations. Moreover, some of these telephone calls were initiated by or requested by Mr. Eisenberg. These calls certainly cannot be considered for the purposes of minimum contacts. *Reiman v. First Union Real Estate Equity & Mortgage,* 614 F. Supp. 255, 257 (D.D.C.1985) ("A plaintiff may not...depend upon his own activity to establish the existence of minimum contacts; the defendant must in some way have voluntarily and purposefully availed himself of the protection of the forum state's laws.").

Similarly, the alleged facsimile transmission does not arise to the level necessary to give rise to personal jurisdiction. It is the general rule that a "single, responsive mailing cannot constitute the 'meaningful' contact or 'substantial connection' between the defendant and the forum state." *United States v. Ferrara*, 54 F.3d at 831 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The facsimile upon which Plaintiffs substantially rely upon to assert personal jurisdiction was a single facsimile that was in response to continuous requests from the Plaintiffs. Clearly, a single facsimile, sent in response to requests of a Plaintiff, does not amount to the "meaningful" contact or "substantial connection" required by the due process clause. *Id.* Nor does it demonstrate any desire to avail themselves of the privilege of conducting business in the District of Columbia.

The contacts referred to in the Complaint can at best be categorized as "random,'" "fortuitous,'" or "attenuated." *Id.* at 475, 105 S.Ct. at 2183. While these contacts by phone and fax may have been into the District of Columbia, the fact that Defendants were, in these instances, required to communicate with Mr. Eisenberg while he was at his

place of employment instead of his residence or the LLC's principal place of business does not, and cannot be shown to, arise out of any desire on the part of the Defendants to do business in Washington, DC.

### III.    The Complaint Should Be Dismissed as Venue is Improper

In a suit such as this where the purported jurisdiction would be based upon alleged diversity of citizenship, venue is appropriate in a judicial district "(1)...where any defendant resides, if all defendants reside in the same State", "(2)...in which a substantial part of the events or omissions giving rise to the claim occurred", or "(3)...in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." *See* 28 U.S.C. § 1391(a).

According to the Complaint, the defendants in this matter are both residents of Illinois (Complaint ¶¶ 3,4), and the Plaintiffs are residents of Maryland and allegedly the District of Columbia.  (Complaint ¶¶ 1,2).  As all defendants reside in Illinois, venue is proper in Illinois under § 1391(a)(1).

Moreover, 28 U.S.C. § 1391(a)(3) is only available "if there is no district in which the action may otherwise be brought."  However, as Illinois is a proper venue, § 1391(a)(3) is unavailable as a means of establishing venue.  As such, it appears that Plaintiffs are asserting the District of Columbia is an appropriate venue under § 1391(a)(2), which requires that "a substantial part of the events or omissions giving rise to the claim occurred" in the judicial district.  However, as this case has a minimal nexus with the District of Columbia, § 1391(a)(2) is unavailable to Plaintiffs.

The Complaint itself establishes that the alleged wrongful acts occurred entirely outside of the District of Columbia.  The Complaint asserts that Lichtenstein, an attorney

in Illinois, was the director of an undercapitalized Illinois corporation, which failed to meet the corporate formalities required under Illinois, and that he conspired with, aided and abetted, acted through and made fraudulent representations on behalf of, that corporation and its sole owner with regard to an ongoing transaction between the Illinois corporation and the Plaintiffs, a Maryland LLC and its Maryland-resident owner/proprietor. (Complaint ¶¶ 44-70).

Plaintiffs do not allege that the defendant conspired with any party or entity found in the District of Columbia, or that the defendant aided or abetted any party or entity located in the District of Columbia. Essentially, Plaintiffs argue that the defendant acted as the director and attorney for an Illinois corporation to induce a Maryland LLC to invest money that was never returned. Although Plaintiff Eisenberg maintained a law practice in D.C. and allegedly communicated with the defendants from this office, as opposed to his residence or the LLC's registered principal place of business, the nucleus of facts giving rise to this claim occurred in Illinois. As discussed above, the only contacts with the District of Columbia arise from what the Complaint makes clear was minimal communication into the District, all of which was initiated by the Plaintiffs or was in response to their requests.

As argued above, the Defendants do not believe that these minimal contacts are sufficient to give rise to personal jurisdiction. However, even if the Court finds to the contrary, these contacts are certainly insufficient to constitute a "substantial part of the events" giving rise to the claims as required by 28 U.S.C. § 1391(a) (2). Thus, the Complaint should be dismissed on the basis of improper venue.

**IV.    If the Complaint is not Dismissed, the Court Should Exercise Its Discretion and Transfer Venue to the Northern District of Illinois**

12

**A. 28 U.S.C. 1404(a)**

Even if both jurisdiction and venue are proper, the court should exercise its discretion and transfer this case to the Northern District of Illinois "for the convenience of parties and witnesses, [and] in the interest of justice..." 28 U.S.C. § 1404(a). Pursuant to Section 1404(a), the movant must make two showings to justify transfer: (1) that the plaintiff originally could have brought the action in the proposed transferee district, and (2) that the considerations of convenience and the interest of justice weigh in favor of transfer to that court. See, e.g., *Sierra Club v. Flowers*, 276 F. Supp.2d 62, 65 (D.D.C. 2003).

**B. Plaintiffs Could Have Brought The Action In The United States District Court For The Northern District Of Illinois**

To satisfy the requirements of § 1404(a), the movant must establish that the plaintiff could have brought the action in the proposed transferee forum. *Sierra Club*, 276 F. Supp.2d at 65.   As previously noted, when jurisdiction is based upon diversity, venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." See, 28 U.S.C. § 1391(a).  In this case, the defendants are (1) an individual resident of the Northern District of Illinois, and (2) a law firm whose principal place of business is in Northern District of Illinois.   (Complaint, ¶¶ 3,4) Accordingly, venue is proper in the United States District Court for the Northern District of Illinois.

**C . Convenience and the Interests of Justice Weigh In Favor Of Transfer**

Considerations of convenience and the interests of justice weigh in favor of transfer. In this regard, Section 1404(a) directs the court to weigh a number of case-

specific private interest and public interest factors. *Id*. The private interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Id*.; *see also Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996) (same). The public interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in deciding local controversies at home. Id. As set forth in detail below, the application of these factors demonstrates that this case should be transferred to the United States District Court for the Northern District of Illinois.

1. PRIVATE INTEREST FACTORS

*(a). Plaintiff's Choice of Forum*

The Plaintiffs' choice of forum is generally given deference in determining whether a transfer of venue is justified. *See, Thayer/Patric of Educ. Funding v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002). This deference, however, is mitigated if a plaintiff's choice of forum has no meaningful ties to the controversy. *See, Trout Unlimited*, 944 F. Supp. at 17; and *Sierra Club*, 276 F. Supp.2d at 67; *See also, M Airport Working Group of Orange County, Inc. v. Dep't of Defense*, 226 F. Supp.2d 227, 231 (D.D.C. 2002) ("Even if plaintiffs' choice of forum is entitled to some deference, it is far from dispositive where...the case has minimal connection to the District of Columbia and other factors militate strongly in favor of transfer.") Here, as the controversy arises from a dispute between a Maryland LLC, an Illinois corporation and an Illinois lawyer - based upon alleged acts and omissions occurring almost exclusively

14

in Illinois with only marginal ties to the District of Columbia - Plaintiffs' choice of forum merits little deference.

The plaintiffs are a Maryland limited liability company with its principle place of business in Maryland[7] and its owner/manager, a Maryland resident. (Complaint at ¶2). Moreover, on information and belief, the address that Plaintiffs assert as the "principal place of business" for the LLC and Eisenberg is simply the address of Eisenberg's private law practice. Thus, the only tie between the District of Columbia and this controversy is that Mr. Eisenberg happened to communicate with Defendants on occasion from his District of Columbia law office. As such, the District of Columbia has no meaningful ties to the controversy, and only marginal deference should be given to Plaintiffs' choice of forum.

*(b). Defendant's Choice of Forum*

On the contrary, Defendants have significant and legitimate reasons for believing that the Northern District of Illinois is a more appropriate forum. First, Mr. Lichtenstein has no significant or ongoing ties with the District of Columbia, but he has significant ties to Illinois. In this respect, Mr. Lichtenstein maintains a private law practice as a solo practitioner from his Chicago office. He has no partners, no associates, no law clerks and only a single employee (a receptionist/secretary). Consequently, he serves all of his clients personally, with no ability to have a colleague cover matters for him. Not only will litigating this case in the District of Columbia be a hardship for him personally, but it will likely be a hardship on his clients as well.

---

[7] *See* note 3.

Secondly, as discussed below, the forum suggested by Defendants is the forum in which this controversy arose, and there is little doubt that Illinois law will apply to the substantive issues to be resolved. Finally, as also discussed below, convenience for the parties and witnesses, as well as ease of access to evidence all weigh in favor of a transfer to Illinois.

*(c). Whether the claim arose elsewhere*

While Plaintiffs allege that Mr. Eisenberg occasionally communicated with the Defendants from his District of Columbia office (with the Defendants remaining at all times in Illinois) these alleged communications represent the only connection between this claim and the District of Columbia. On the other hand, the nucleus of facts upon which Plaintiffs' claims are based – including Titan's fraudulent scheme, alleged to have been on-going for approximately four years before these Defendants even had any involvement or contact with Plaintiffs - all occurred in Illinois. *See, e.g.*, Complaint at ¶¶ 8-18, 25. Mr. Lichtenstein's entire role in all of the underlying events was, as far as Plaintiffs allege they knew, during the course and scope of his representation as Titan's and/or Martinic's Illinois attorney. *See* Complaint at ¶ 24. Mr. Lichtenstein is not alleged to have represented Plaintiffs in any capacity, and he is not even alleged to have practiced law in the District of Columbia. Rather, he allegedly simply communicated on behalf of his client with Plaintiffs.

Similarly, the Plaintiffs' claims arise out of their dealings with Titan, a corporation formed under the laws of Illinois, which allegedly failed to follow Illinois corporate formalities. Significantly, Plaintiffs' dealings with Titan ultimately led them to sue Martinic and Titan in Wisconsin, not the District of Columbia.

*(d). The Convenience of the Parties*

Neither Mr. Eisenberg nor Mr. Lichtenstein reside in Washington, D.C. As noted above, Mr. Lichtenstein is a solo practitioner in Chicago, without the support system to adequately serve his clients if he is forced to litigate this case in the District of Columbia. Moreover, Plaintiffs can hardly be heard to argue that it would be inconvenient to litigate in Illinois, as they previously litigated the underlying case in Wisconsin. Upon information and belief, Plaintiffs have or had an attorney client relationship with a large law firm in either Illinois or Wisconsin.

*(e). The Convenience of the Witnesses*

The most critical factor to examine in determining whether to transfer a case under 28 U.S.C. § 1404(a) is the convenience of the witnesses. See, *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995) (citing *International Comfort Products, Inc. v. Hanover House Industries, Inc.*, 739 F. Supp. 503, 507 (D. Ariz. 1989)). In this case, the majority of anticipated witnesses reside near or in the Northern District of Illinois, not the District of Columbia.

As noted, this controversy arises out of a complex series of transactions between entities located in Illinois and Maryland. For instance, upon information and belief, numerous key witnesses, including Laura Mudra who assisted in preparing the paperwork for Titan's incorporation; Laurie Hewitt who handled funds for Martinic; Wes Nissen an attorney retained by Titan to address regulatory compliance issues; Ms. Martinic (and perhaps others in the Martinic family); and the Defendants all currently reside in or near Illinois. Moreover, Defendants believe that other very important witnesses live in adjoining states such as Michigan or Wisconsin. To the extent any of

these witnesses are needed to testify at trial, it will obviously be exceedingly cumbersome and inconvenient for them to attend proceedings in the District of Columbia.

On the other hand, other than Plaintiff Eisenberg, it is not clear that any significant witnesses reside in or around the District of Columbia. Although there are presumably many other investors, the Complaint provides no insight into their locations or the extent/nature of their knowledge. As such, it is clear that by placing venue in the Northern District of Illinois the court can optimize the convenience of the witnesses.

*(f). Ease of Access to Proof*

Most of the relevant non-party documents in this case will be located in Illinois. Specifically, relevant documents will be located in the law offices of the KMZ Rosenmann, the firm retained by Titan to address regulatory compliance issues, in Chicago. Additional documents will undoubtedly exist in Illinois regulatory and corporation commission offices, as well as in the Court files in Wisconsin where the underlying case was litigated. Moreover, various personal and corporate bank and exchange or investment accounts, which were opened in Chicago, will undoubtedly be implicated in this controversy. As such, the ease of access to proof weighs heavily in favor of transfer. On the other hand, few non-party documents located in the District of Columbia appear to be at issue.

2. PUBLIC INTEREST FACTORS

The public interest factors the Court will consider in determining whether to transfer a case under 28 U.S.C. § 1404(a), include (1) the transferee court's familiarity with the governing laws, (2) the relative congestion of the calendars of the transferor and

transferee courts, and (3) the local interest in deciding local controversies at home. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001). Like the private interest factors, these public interest factors also weigh in favor of transfer in the instant case.

*(a). Transferee Court's Familiarity with the Governing Laws*

Under the District of Columbia's choice of law rules, the law governing the plaintiff's claims is the law of the state with the most significant relationship to the matters at issue. *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp, 1018, 1026 (D.D.C. 1994). While limited communications took place via telephone, email and fax between Illinois, Maryland, and Washington, D.C., as discussed above, the common nucleus of operative facts underlying all of these the transactions and the claims asserted all took place in Illinois. Illinois is, therefore, the state with the most significant relationship to the matters at issue. As such, to the extent that the issues to be resolved in this lawsuit are based on statute or common-law principals, Illinois state law will apply. As such, it is respectfully submitted that the District Court for the Northern District of Illinois has a greater familiarity with the governing state laws.

*(b). The relative congestion of the calendars of the transferor and transferee courts*

There is nothing to indicate that the calendar of the transferee district is any more or less congested that of this district. Furthermore, as this suit is in its preliminary stages, transferring the case at this juncture would create no undue delay.

*(c). Local Interest in Deciding Local Controversies at Home*

"There is a local interest in having localized controversies decided at home." *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1947). As such, controversies should be

resolved in the locale where they arise. *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979). As noted above, the claims that are subject to suit arise almost entirely from Mr. Lichtenstein's representation of Titan and/or Martinic's as their Illinois counsel, or from his role as a director of Titan, an Illinois company. As such, the dispute alleged in the Complaint should be decided by a court in the affected judicial district, the United States District Court for the Northern District of Illinois, and not by the United States District Court for the District of Columbia.

WHEREFORE, for the reasons aforesaid, the Defendants respectfully request that their Motion be GRANTED, and that this case be DISMISSED, or in the alternative, that the case be transferred to the United States District Court for the Northern District of Illinois.

Respectfully submitted,

**Larry B. Lichtenstein**
**Larry B. Lichtenstein & Associates**

By Counsel:


Matthew A. Ranck (D.C. Bar #484983)
William L. Mitchell, II (D.C. Bar #476101)
ECCLESTON AND WOLF, P.C.
2001 S Street, N.W., Suite 310
Washington, D.C. 20009
(202) 857-1696 (telephone)
(202) 857-0762 (facsimile)
Ranck@ewmd.com
wmitchell@ewdc.com

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7ᵗʰ day of November, 2005, I caused a copy of the foregoing **Memorandum of Points and Authorities in support of their Motion to Dismiss or in the alternative to Transfer Venue** to be filed electronically with the United States District Court and served in the manner indicated below:


**Via E-Mail/Electronic Filing**


Ross D. Cooper, Esquire
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
11921 Rockville Pike, Third Floor
Rockville, MD 20852
*Counsel for Plaintiffs*

_____
William L. Mitchell, II (#476101)