## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FC INVESTMENT GROUP LC, <u>et al</u>. | ) |
|  | ) |
|  | ) |
| **Plaintiffs,** | ) |
|  | ) Case No. 1:05-cv-01753-RMC |
| **v.** | ) |
|  | ) |
| LARRY B. LICHTENSTEIN , <u>et al</u>. | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
## TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

Ross D. Cooper #429200
SHULMAN, ROGERS, GANDAL,
 PORDY & ECKER, P.A.
11921 Rockville Pike, Third Floor
Rockville, MD 20852
(301) 230-5200
(301) 230-2891 (fax)

Counsel for Plaintiffs FC Investment Group,
LC and Lawrence J. Eisenberg

## TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     Lichtenstein and FCIG are Diverse Citizens
        and Thus This Court has Subject Matter
        Jurisdiction Over FCIG's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    Lichtenstein Is Subject to Personal Jurisdiction
        in the District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      Lichtenstein is Subject to Personal Jurisdiction
                Pursuant to the District of Columbia Long-Arm
                Statute Based Upon His Own Contacts with
                the District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                1.      Lichtenstein Transacted Business in the
                        District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                2.      Lichtenstein Caused Injury in the District of
                        Columbia by an Act or Omission within the District
                        of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.      Lichtenstein is also Subject to Jurisdiction Here
                Based on His Co-Conspirators' Contracts with the
                District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.     Venue is Proper in the District of Columbia . . . . . . . . . . . . . . . . . . . . . . 15

V.      There is No Basis to Transfer this Action to the Northern
        District of Illinois . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        A.      Private Interest Factors Warrant Retaining Venue in
                the District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1.   Plaintiffs' Choice of Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

2.   Defendants' Choice of Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3.   Whether the Claims Arose Elsewhere . . . . . . . . . . . . . . . . . . . . . 18

4.   The Convenience of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . 19

5.   Convenience of the Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

6.   Ease of Access to Sources of Proof . . . . . . . . . . . . . . . . . . . . . . . 22

B.   Public Interest Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1.   Transferee's Familiarity with the Governing
     Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2.   The Relative Congestion of the Calendars of
     the Transferor and Transferee Courts . . . . . . . . . . . . . . . . . . . . . 23

3.   Local Interest in Decided Local Controversies
     at Home . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

Airport Working Group of Orange County v. U.S. Dep't of Defense,
    226 F. Supp. 2d 227 (D.D.C. 2002) ........................................................ 17

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985) ................................................................... 8, 11

Chung v. Chrysler Corp.,
    903 F. Supp. 160 (D.D.C. 1995) ............................................................ 20

Chung v. NANA Dev. Corp.,
    783 F.2d 1124 (4th Cir. 1986) ............................................................ 10

Crane v. New York Zoological Society,
    894 F.2d 454 (D.C. Cir. 1990) ......................................................... 5, 11

Dooley v. United Technologies Corp.,
    786 F. Supp. 65 (D.D.C. 1992) ............................................................ 14

Edick v. Poznanski,
    6 F. Supp. 2d. 666 (W.D. Mich. 1998) ..................................................... 6

Edmond v. United States Postal Service,
    949 F.2d 415 (D.C. Cir. 1991) ............................................................ 14

Gambelli v. United States,
    904 F. Supp. 494 (E.D. Va. 1995) ......................................................... 6

Gorman v. Ameritrade,
    293 F.3d 506 (D.C.Cir. 2002) ............................................................. 8

Greater Yellowstone Coalition v. Bosworth,
    180 F. Supp. 2d 124 (D.D.C. 2001) ....................................................... 24

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1946) ..................................................................... 24

Helmer v. Doletskaya,
    393 F. 3d 201 (D.C. Cir. 2004) ...................................................... 12, 13

Islamic Republic of Iran v. Boeing,
    477 F. Supp. 142 (D.D.C. 1979) .......................................................... 24

Keeton v. Hustler Magazine,
    465 U.S. 770 (1984) .................................................................................... 11, 12

Last v. Elwyn, Inc.,
    935 F. Supp. 594 (E.D.Pa. 1996) ................................................................... 6

Mandelkorn v. Patrick,
    359 F. Supp. 692 (D.D.C. 1973) ................................................................... 14

Margoles v. Johns,
    483 F.2d 1212 (D.C. Cir 1973) ..................................................................... 11

Mitchell v. Mackey,
    915 F. Supp. 388 (M.D.Ga. 1996) ................................................................ 6

Moncrief v. Lexington Herald-Leader Co.,
    807 F.2d 217 (D.C. Cir. 1986) ................................................................ 11, 12

Neal v. Janssen,
    270 F.3d 328 (6th Cir. 2001) ........................................................................ 12

Reiman v. First Union Real Estate Equity & Mortgage,
    614 F. Supp. 255 (D.D.C 1985) ........................................................... 8, 11, 12

Shaller v. Columbia Hospital for Women,
    685 F. Supp. 852 (D.D.C. 1988) ................................................................... 6

Sierra Club v. Flowers,
    276 F. Supp. 2d 62 (D.D.C. 2003) ................................................................ 17

Thayer/Patricof Education Funding, LLC v. Pryor Resources, Inc.,
    196 F. Supp. 2d 21 (D.D.C. 2002) ......................................... 5, 16, 17, 18, 20, 22, 23

Trout Unlimited v. U.S. Dep't of Agric.,
    944 F. Supp. 13 (D.D.C 1996) ...................................................................... 17

United States v. Ferrara,
    54 F.3d 825 (D.C. Cir. 1995) ........................................................................ 10

Wein Air Alaska v. Brandt,
    195 F.3d 208 (5th Cir. 1999) ........................................................................ 12

World-wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980) ........................................................................................ 8

iv

**STATUTES**

28 U.S.C. § 1332 ................................................................................................. 6

28 U.S.C. § 1391 ................................................................................................. 15

D.C. Code § 13-423 ......................................................................................... 7, 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FC INVESTMENT GROUP LC, <u>et al</u>. | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| LARRY B. LICHTENSTEIN , <u>et al</u>. | ) |
| | ) |
| **Defendants.** | ) |

Case No. 1:05-cv-01753-RMC

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
### <u>TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO ILLINOIS</u>

Plaintiffs FC Investment Group, LC and Lawrence J. Eisenberg (collectively, "FCIG") respectfully submit this opposition to Defendants Larry B. Lichtenstein and Larry B. Lichtenstein & Associates' (collectively, "Lichtenstein") Motion to Dismiss, or in the Alternative, Motion to Transfer Venue.

### <u>Preliminary Statement</u>

After personally participating in a conspiracy that bilked FCIG out of millions of dollars by directing systematic and regular telephone calls and faxes to the District of Columbia, Lichtenstein seeks to avoid scrutiny in this Court by claiming: (1) Federal jurisdiction is improper because the complaint refers to the "residency" as opposed to the "citizenship" of the parties, whom Lichtenstein tacitly concedes are actually diverse; (2) his purposeful and systematic direction of contacts to the District are insufficient to establish personal jurisdiction over him; and (3) this suit should be transferred to Illinois. Each of these arguments are specious and suggest that Lichtenstein's insurance defense counsel simply is running the defendant "play

book" in an effort to avoid adjudication on the merits to increase FCIG's costs and bully a settlement.

First, Federal jurisdiction is proper and any lack of clarity that the parties are citizens of different states has been cured by the Amended Complaint submitted as of right herewith. Second, Lichtenstein squarely is within the personal jurisdiction of this Court. This is not a case, as Lichtenstein suggests, of "random" or "fortuitous" contacts between Lichtenstein and the District of Columbia. Lichtenstein, along with his co-conspirators, regularly and systematically conducted business through the mail and wires with FCIG in the District of Columbia. As it is well-settled that physical presence in a state is not necessary to subject an individual to personal jurisdiction there, these regular mail and wire communications satisfy the requirements of the District of Columbia Long-Arm statute and the Due Process clause. Indeed, under this Circuit's conspiracy jurisdiction law, which is conspicuously ignored in Lichtenstein's brief, Lichtenstein would be subject to jurisdiction here even if he directed no contact to the District (even though he did). Third, as to the proper venue for this action, the allegations in the complaint and the affidavit attached hereto demonstrate the significant nexus between the operative facts and this forum. Moreover, FCIG's choice to sue Lichtenstein here should not be disturbed because Lichtenstein has failed to meet his burden of proving that venue here is improper or that the interests of justice require transfer. Indeed, this case has a far greater nexus to the District than to Illinois.

### Statement of Facts

In or about September 1998, Titan Global Strategies, Ltd. ("Titan") and its officials contacted Eisenberg at his offices in the District of Columbia about making an investment in a foreign currency trading account to be managed by Titan. Amended Complaint ("Amend.

2

Compl.") at ¶ 8. Titan advised Eisenberg that it was affiliated with a well-known foreign

currency trader and sent information brochures to Eisenberg regarding the foreign currency

trading program. Id. at ¶ 9. Based upon this information, Eisenberg invested money with Titan.

Id. at ¶ 9-10.[1]

 According to the monthly account statements that Titan sent to Eisenberg in the District

of Columbia, the investment appeared profitable and Eisenberg continued to invest money with

Titan. Id. at ¶¶ 10-14. Eisenberg eventually created FCIG to facilitate his investments with

Titan, as well as the investments of his friends and family. Id. at ¶ 12. During Eisenberg and

FCIG's relationship with Titan, Eisenberg signed at least one contract with Titan, which

Eisenberg negotiated and executed in the District of Columbia. Affidavit of Lawrence J.

Eisenberg ("Eisenberg Aff."), Exhibit A at ¶ 8. FCIG repeatedly requested information

regarding Titan's compliance with applicable laws and regulations, and Titan director

Lichtenstein assured FCIG that Titan was taking all necessary steps to ensure compliance.

Amend. Compl. at ¶ 26-27.[2] In reliance on Lichtenstein's status as an attorney and involvement

with Titan, investors associated with FCIG invested an additional $3 million after Lichtenstein

became more involved in Titan's operations. Id. at ¶ 24; Eisenberg Aff. at ¶ 10.

 Despite that FCIG is a Maryland limited liability company, FCIG has at all times had its

principal place of business in the District of Columbia and used a bank account at a District of

Columbia financial institution. Eisenberg Aff. at ¶¶ 3, 9. Virtually every telephone call,

facsimile and postal correspondence from Titan was received by Eisenberg at FCIG's District of

---

[1] Lichtenstein also was a director of Titan, which he formed with his partner Martinic. Amend. Compl. at ¶¶ 28-31. Despite that Titan was a corporation formed under the laws of Illinois and that Lichtenstein, an attorney, was a director of the corporation, Titan failed to observe corporate formalities and was undercapitalized. Id.

[2] These representations proved to be false. Id.

Columbia offices. Id. at ¶¶ 4-6. In addition, Titan sent monthly account statements to Eisenberg (which listed FCIG's District of Columbia address) and most, if not all, correspondence that FCIG sent to Titan was on FCIG letterhead that listed FCIG's District of Columbia address. Id. at ¶¶ 5-6. Moreover, Titan official (and Lichtenstein co-conspirator) Charles Knott visited Eisenberg in the District of Columbia to offer assurances to FCIG of Titan's bona fides. Id. at ¶ 8. Eisenberg also received regular telephone calls at FCIG's District of Columbia offices from Titan officials Charles Knott, Milan Martinic, Lichtenstein, and co-conspirator IFX Markets, Ltd.'s Christopher Cruden, during which some of the misrepresentations alleged in the Complaint were made. Id. at ¶¶ 4-5; See Amend. Compl. at 26-27, 37-38.

After conducting business with Titan for approximately six years, and after investors associated with FCIG invested approximately $5 million with Titan, Titan's foreign currency investment scheme was revealed to be a sham and FCIG demanded return of its funds. Amend. Compl. at ¶ 34. In late 2003 and early 2004, Lichtenstein assured FCIG that its funds would be returned during telephone calls that took place in the District of Columbia. Id. at ¶¶ 37-38. On November 19, 2003, FCIG sent Lichtenstein instructions for returning the funds to FCIG's District of Columbia bank account via wire transfer. Eisenberg Aff. at ¶ 9. In addition, on January 14, 2004, Lichtenstein sent a facsimile to Eisenberg in the District of Columbia attaching a deposit slip that allegedly indicated that funds were available to return to FCIG. Amend. Compl. at ¶ 39. In reliance on Lichtenstein's representations regarding the return of FCIG's funds, FCIG refrained form filing suit to enforce its rights. Id. at ¶¶ 39, 41. Indeed, because FCIG deferred filing suit based upon Lichtenstein's representations, Titan and its officials were given sufficient time to spend and otherwise deplete the invested funds and other assets,

rendering potential judgments uncollectible. Id. at ¶ 41.  To date, none of FCIG's funds have

been returned. Id. at ¶ 34, 38.

**Argument**

**I.      Standard of Review**

When a court considers a motion to dismiss, factual allegations in the Complaint must be

taken as true and all factual discrepancies presented by the affidavits presented in conjunction

with the motion should be resolved in the plaintiff's favor.  See Crane v. New York Zoological

Society, 894 F.2d 454, 456 (D.C. Cir. 1990).  In addition, Lichtenstein, as the party seeking to

transfer venue, bears the "heavy burden" of proving that the plaintiffs' choice of forum is

improper and should be disturbed.  See Thayer/Patricof Education Funding, LLC v. Pryor

Resources, Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (denying motion to transfer venue).

Here, the allegations in the Amended Complaint and the facts set forth in Eisenberg's

affidavit reveal that this Court has both subject matter jurisdiction over these claims and that

Lichtenstein is subject to this Court's personal jurisdiction based upon his regular contact with

the District of Columbia in connection with the transactions at issue.  In addition, Lichtenstein

has failed to meet his burden of proving that the relevant private and public interest factors

warrant transferring this case to the Northern District of Illinois.

**II.     Lichtenstein and FCIG are Diverse Citizens
         and Thus This Court has Subject Matter
         Jurisdiction Over FCIG's Complaint**

Strikingly absent from Lichtenstein's subject matter jurisdiction objection is any

allegation that diversity jurisdiction is lacking.  Lichtenstein simply argues that the complaint

should be dismissed because the jurisdictional allegations use the word "resident" instead of

5

"citizen" to describe the individual parties' domicile.  Mot. at 5.[3]  However, Lichtenstein does

not assert – nor could he – that he and Eisenberg are citizens of the same state, which would

render this Court without subject matter jurisdiction.   28 U.S.C §1332 provides jurisdiction in

the federal courts for suits arising between citizens of different states when the amount in

controversy exceeds $75,000.  The cases Lichtenstein cites correctly hold that an individual's

"citizenship" is the state in which the individual is domiciled.  See Mitchell v. Mackey, 915 F.

Supp. 388, 391 (M.D.Ga. 1996) (holding that the Court had subject matter jurisdiction pursuant

to 28 U.S.C. § 1332); Last v. Elwyn, Inc., 935 F. Supp. 594, 596 (E.D.Pa. 1996) (same).[4]  One's

"domicile" is determined by the place in which the individual resides and intends to remain.  See

Last, 935 F. Supp. at 597 ("Domicile consists of one's physical presence in a state and the intent

to remain there.").   The court should examine the location of the individual's place of business,

assets and other ties to determine the party's "intent" to remain where they reside.  Id.

     Here, Lichtenstein recently testified under oath in another proceeding that he lives,

works, and maintains his only bank accounts in Illinois.  See Transcript of October 7, 2004

Deposition of Lawrence B. Lichtenstein at 18:3-14; 23:15-24:1, Exhibit B.  Lichtenstein also

admits in his motion that he is licensed to practice law in Illinois and that he formed and operates

his law practice there.  See Lichtenstein Affidavit at 2.  Lichtenstein's domicile (and

---

[3]  FCIG has amended the complaint to cure this alleged defect.  However, given the liberal
"notice pleading" requirement of the Federal Rules of Civil Procedure, the actual facts of this
case, and the Complaint's reference to the proper jurisdictional statute, FCIG does not concede
that such amendment was required.  However, in order to permit the Court to more quickly turn
to the merits of the Complaint, FCIG amended the Complaint to render this objection moot.

[4]  All of the cases that Lichtenstein cites that dismissed complaints for lack of subject matter
jurisdiction are clearly distinguishable.  In Shaller v. Columbia Hospital for Women, 685 F.
Supp. 852 (D.D.C. 1988), Edick v. Poznanski, 6 F. Supp. 2d. 666 (W.D. Mich. 1998); and
Gambelli v. United States, 904 F. Supp. 494 (E.D. Va. 1995), complete diversity was lacking
because at least one of the defendants in those cases was a citizen of the same state as one of the
plaintiffs.  Here, none of the Defendants are domiciled in the same state as Plaintiffs.

"citizenship") is thus Illinois because he resides there and has shown an intent to remain in Illinois.  As for Eisenberg, Eisenberg lives in Maryland and works primarily in Washington, D.C. – with no ties to Illinois other than his contacts with Titan and Lichtenstein.  Thus, because, as Lichtenstein admits, the corporate parties' citizenship has properly been alleged, and because Lichtenstein and Eisenberg are citizens of different states, diversity jurisdiction exists and Lichtenstein's motion to dismiss for lack of subject matter jurisdiction should be denied.[5]

### III.    Lichtenstein Is Subject to Personal Jurisdiction in the District of Columbia

#### A.    Lichtenstein is Subject to Personal Jurisdiction Pursuant to the District of Columbia Long-Arm Statute Based Upon His Own Contacts with the District of Columbia

The District of Columbia long-arm statute provides for <u>specific</u> jurisdiction over non-resident defendants who, either individually or through an agent: (1) transact business in the District; (2) contract to supply goods or services in the District; (3) cause tortious injury in the District of Columbia by an act or omission in the District of Columbia; or (4) cause injury in the District of Columbia by an act or omission outside the District of Columbia if the person regularly does business or derives revenue here for claims arising from the enumerated contacts. <u>See</u> D.C. Code § 13-423.   The first prong of this statute has been held to extend to the limits of the due process clause, and thus jurisdiction can be exercised over a defendant who has

---

[5] In a footnote, Lichtenstein asserts that "as Larry B. Lichtenstein & Associates is nothing more than a trade name, lacking capacity to sue or be sued, all claims against it should be dismissed." Mot. at 3, n. 2.  However, in the same motion and the affidavit attached thereto, Lichtenstein admits that one of the defendants is "a law firm whose principal place of business is in Northern District of Illinois" and that Lichtenstein is "the sole proprietor of Larry B. Lichtenstein & Associates, an unincorporated association located in Chicago Illinois."  Mot. at 13; Lichtenstein Aff. at ¶ 2.  Thus, there is currently no basis for dismissing any claims against the corporate defendant.  If Lichtenstein provides further information regarding Larry B. Lichtenstein & Associates' organizational structure, FCIG will determine whether continuation of its claims against the law firm is appropriate.

"minimum contacts" with this state so long as the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." See Reiman v. First Union Real Estate Equity and Mortgage Investments, 614 F. Supp. 255, 256 (D.D.C. 1985). Indeed, even a "single act may be sufficient to bring a defendant within the purview of the statute." Id. at 257.

Here, Lichtenstein is subject to jurisdiction pursuant to both the first and third prongs of this statute. Lichtenstein "transacted business" here by regularly contacting Eisenberg and FCIG in the District of Columbia and he "caused injury" to FCIG in the District of Columbia by intentionally misrepresenting the true nature of the Titan program, which resulted in economic harm to FCIG in the District.

### 1.    Lichtenstein Transacted Business in the District of Columbia

As for the "transacting business" prong, the United States Supreme Court has held that, given the advance of technology in today's business world, a defendant can "transact business" in a state without actually ever being physically present there. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Indeed, mail and wire communications often are the only methods by which business is transacted between individuals and entities in different states. Id.; Gorman v. Ameritrade, 293 F.3d 506, 512 n.4 (D.C.Cir. 2002). Thus, so long as the defendant's actions are such that he could "anticipate being haled into court" in a forum to which he has directed contact, the exercise of jurisdiction over him there comports with due process. World-wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Lichtenstein asserts that jurisdiction is nonetheless improper here because his contacts with the District of Columbia were "random" and "fortuitous," given that FCIG is a Maryland LLC, Eisenberg is a resident of Maryland and because Eisenberg initiated or requested some of the communications, and thus the only reason that he had any contacts with the District of Columbia was because Eisenberg

8

happened to be at work in the District of Columbia when some of those contacts took place. Mot. at 8-10.

First, rather than "random," Lichtenstein's contacts with the District of Columbia (individually and through his co-conspirators) were both regular and systematic and evidenced an intent to do business with FCIG in the District of Columbia. Despite that FCIG is a Maryland limited liability company, it has operated from 1700 Wisconsin Avenue, NW in the District of Columbia since its inception. See Eisenberg Aff at ¶ 3. Indeed, most (if not all) contact between FCIG and Lichtenstein and FCIG and Titan took place in the District, and Lichtenstein initiated some of those communications. Id. at ¶¶4-8. The following list illustrates the extent of the numerous regular contacts between Lichtenstein, Titan and FCIG in the District of Columbia:

- The majority (if not all) telephone communications from Titan and Lichtenstein to FCIG were made to a telephone number with at 202 area code and received by FCIG in the District of Columbia. Id. at ¶¶ 4-5.

- Lichtenstein and Eisenberg regularly spoke on the telephone regarding the bona fides of the Titan program and, later, the return of FCIG's funds. Lichtenstein initiated many of these phone calls to Eisenberg at his District of Columbia telephone number. Amend Compl. at ¶¶ 26, 37; Eisenberg Aff. at ¶ 4.

- All facsimile transmissions from FCIG to Titan and Lichtenstein, and all facsimile transmissions from Titan and Lichtenstein to FCIG, were sent or received on a facsimile machine located inside the District of Columbia and that is connected to a phone number with a 202 area code. Id. at ¶ 6.

- All correspondence that Titan received from FCIG was sent on FCIG letterhead that listed its District of Columbia address. Eisenberg Aff. at ¶ 7.

- Titan sent monthly account statements to FCIG in the District of Columbia, all of which listed FCIG's District of Columbia address. Id. at ¶ 6.

- Titan sent wires to FCIG's District of Columbia bank account and FCIG sent wires from its District of Columbia bank account to Titan. Id. at ¶ 10.

- When requesting return of its funds, FCIG provided Lichtenstein wiring instructions for return of the money into a District of Columbia bank account. Id. at ¶ 10.

Thus, each time that Lichtenstein or any other Titan official called FCIG, sent a fax to FCIG, sent account statements to FCIG, sent a wire transfer to FCIG or reviewed any correspondence from FCIG, they knew that they were transacting business with a company located in the District of Columbia. Lichtenstein and his co-conspirators had to affirmatively and purposely dial a District of Columbia phone number or write to a District of Columbia address in order to communicate with FCIG. Despite that FCIG was formed in Maryland, Lichtenstein and Titan continuously and systematically transacted business with FCIG in the District of Columbia.[6] Lichtenstein's argument regarding FCIG's state of formation and Eisenberg's state of residence is merely "form over substance" and does not change the regular and systematic contacts that Lichtenstein had with the District of Columbia in connection with the facts giving rise to this Complaint.

Second, Lichtenstein claims that his contacts into the forum should not subject him to jurisdiction because Eisenberg initiated or requested some of the phone calls. While it is true that Lichtenstein may have returned some phone calls at Eisenberg's request, Lichtenstein called Eisenberg many times throughout the course of their dealings regarding the Titan program.

---

[6] Lichtenstein relies on Chung v. NANA Dev. Corp., 783 F.2d 1124 (4th Cir. 1986) and United States v. Ferrara, 54 F.3d 825 (D.C. Cir. 1995), for the proposition that Lichtenstein's contacts were not substantial enough to warrant exercising jurisdiction. Mot. at 9-10. In Chung, the defendant's only contact with the forum was a single mailing to the plaintiff, which it only made at plaintiffs' request. Similarly, in United States v. Ferrara, 54 F.3d 825 (D.C. Cir. 1995), the District of Columbia Circuit declined to exercise jurisdiction over a non-resident defendant based upon one responsive mailing to a federal instrumentality. Here, as explained above, Lichtenstein and his co-conspirators had regular contacts with FCIG in the District of Columbia, not merely one mailing into the forum. Lichtenstein's reliance on Chung and Ferrara is thus misplaced.

10

Amend. Compl. at ¶¶ 3, 26, 37, 49; Eisenberg Aff. at ¶ 4.[7]  Lichtenstein and his co-conspirators

voluntarily sought FCIG's business and chose to make material misrepresentations to FCIG

during their regular communications with FCIG in the District of Columbia.  FCIG is thus not

relying on its own solicitation or contacts with Lichtenstein and Titan as the basis for personal

jurisdiction, but directs the Court's attention to the volume and nature of Lichtenstein and his co-

conspirators' purposeful contacts here connected to this fraudulent scheme.[8]

2.    **Lichtenstein Caused Injury in the District of Columbia
by an Act or Omission within the District of Columbia**

Lichtenstein is also subject to jurisdiction under the third prong of the D.C. long-arm

statute, which subjects persons to jurisdiction for "causing injury in the District of Columbia

from an act or omission within the District of Columbia."  D.C. Code § 13-423.[9]  This Court and

---

[7] This allegation must be construed to be true for purposes of this motion and alone is sufficient to subject Lichtenstein to personal jurisdiction.  See Crane v. New York Zoological Society, 894 F.2d 454, 456 (D.C. Cir. 1990).

[8] Lichtenstein cites Reiman v. First Union Real Estate Equity & Mortgage, 614 F. Supp. 255, 257 (D.D.C 1985), for the proposition that if Eisenberg requested or initiated a call, such contacts should not factor into the jurisdictional analysis. Mot. at 10.  However, in Reiman, the court did not determine whether the plaintiff's actions would subject the defendant to jurisdiction.  The court maintained jurisdiction over the action because it found that there were too many factual discrepancies to warrant granting the motion to dismiss without determining whether Reiman's contacts with the Defendants would be factored into the personal jurisdiction analysis.  Thus, if anything, Reiman supports retaining jurisdiction here given the discrepancies between Lichtenstein's and FCIG's allegations.

[9] Lichtenstein argues that the third prong of the Long-Arm statute is inapplicable because, he asserts, FCIG does not allege that Lichtenstein committed an injurious act while physically present in the District of Columbia.  Mot. at 7.  In support of this argument, Lichtenstein cites Margoles v. Johns, 483 F.2d 1212 (D.C. Cir 1973), for the proposition that a single telephone call into the district is not sufficient to confer jurisdiction.  However, Margoles was decided before the United States Supreme Court enunciated in Burger King that modern commercial transactions are often consummated completely through the mail and wires and thus physical presence in the forum is not required.  Lichtenstein's reliance on Margoles is thus outdated and misplaced.  In addition, Moncrief v. Lexington Herald-Leader Co., 807 F.2d 217 (D.C. Cir. 1986) is inapposite.  In Moncrief, the plaintiff argued that the act of printing a defamatory

11

courts across the country recognize that a single phone call or facsimile into a forum that forms the precise basis for a claim of fraud or misrepresentation can give rise to personal jurisdiction in the forum in which the injury and communication occurred.  See Reiman, 614 F. Supp. at 257; Neal v. Janssen, 270 F.3d 328, 333 (6th Cir. 2001) ("when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state."); Wein Air Alaska v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999) ("When the actual content of nonresident's communications with forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment, for purposes of determining whether personal jurisdiction over nonresident is constitutionally permissible under due process principles."); see also Helmer v. Doletskaya, 393 F. 3d 201, 209 (D.C. Cir. 2004) (direction of tortious conduct into a forum may confer jurisdiction in the District of Columbia if there is injury within the forum).

Here, it is the very calls from Lichtenstein to Eisenberg in the District of Columbia that caused FCIG's injury.  Lichtenstein repeatedly assured FCIG through telephone calls to FCIG in the District that Titan was a bona fide entity and that Titan was taking steps to ensure compliance with all applicable statutes and regulations.  Amend. Compl. at ¶¶ 26-27.  Investors associated with FCIG invested an additional $3 million with Titan based upon Lichtenstein's involvement in Titan.  Amend. Compl. at ¶ 24.  When the Titan program was revealed to be a fraudulent scheme and FCIG requested return of its funds, Lichtenstein made further material

---

statement occurred wherever the statement was circulated, relying on Keeton v. Hustler Magazine, 465 U.S. 770 (1984).  In one brief paragraph, the Moncreif court rejected this argument because the Keeton court did not distinguish between where the "act" and where the "injury" occurs and did not further analyze the issue.  Here, as explained below, both the act and the injury occurred in the District of Columbia and jurisdiction here is thus proper.

misrepresentations to FCIG during telephone calls to Eisenberg in the District of Columbia during which he told FCIG that its funds would be returned. Amend. Compl. at ¶¶ 37-40. Lichtenstein also sent a fake deposit slip (which supposedly indicated that funds were available for return to FCIG) to FCIG in the District of Columbia via facsimile. Lichtenstein's assurances caused FCIG to delay filing suit, which delay rendered the judgment that FCIG eventually obtained against Titan and Martinic virtually uncollectible. Amend Compl. at ¶¶ 38-41. Because these communications form the basis, in part, for FCIG's fraud claims, Lichtenstein is subject to personal jurisdiction here because FCIG was injured (with losses exceeding $5 million) by an act within the District of Columbia (the fraudulent misrepresentations made during the telephone calls and facsimile transmissions).

On this point, Lichtenstein's reliance on Helmer v. Doletskaya, 393 F. 3d 201, 209 (D.C. Cir. 2004) is misplaced because it actually underscores that jurisdiction here is proper. Mot. at 7. In Helmer, the court held that the fraud count must be dismissed, reasoning that the place of economic injury is where the injurious act takes place, and because the fraudulent acts (and thus the injury) occurred in Russia (where Helmer was at all times residing), jurisdiction was not proper. Id. Here, the misrepresentations complained of were made during telephone calls and facsimiles that Lichtenstein directed to the District of Columbia. In addition, unlike Helmer, Eisenberg was in the District of Columbia when he received these communications. Thus, according to Helmer's reasoning, jurisdiction under this prong of the D.C. long–arm statute is proper because both the act and the injury took place in the District of Columbia.

## B. Lichtenstein is also Subject to Jurisdiction Here Based on His Co-Conspirators' Contacts with the District of Columbia

Setting aside the allegations respecting Lichtenstein's regular contact with FCIG in the District of Columbia, jurisdiction is proper based upon FCIG's conspiracy allegations. It is well-

13

settled that a defendant is subject to this Court's specific jurisdiction based on his involvement in

a conspiracy if the plaintiff alleges: 1) the existence of a conspiracy; 2) the non-resident

defendant's participation in the conspiracy; and 3) an injury-causing act of the conspiracy within

the forum's boundaries. Edmond v. United States Postal Service, 949 F.2d 415, 425 (D.C. Cir.

1991). In Edmond, plaintiffs sued certain postal inspectors, officers, government attorneys and

witnesses claiming that the defendants had conspired to violate plaintiffs' constitutional rights

arising from a wrongful arrest and subsequent detention in the District of Columbia. Id. The

Court of Appeals held that although the plaintiffs had only alleged that two of the defendants (the

arresting officers) had caused Plaintiffs' injury in the District of Columbia, the remaining

defendants also could be subject to jurisdiction if the plaintiff could make a showing that the

remaining defendants were part of a conspiracy of which the wrongful arrest and detention in

D.C. were a part. Id.

Moreover, when the allegations respecting the conspiracy and the overt acts within the

forum by a co-conspirator remain uncontroverted by the affidavits presented in support of the

motion to dismiss, the allegations detailing the conspiracy are taken as true. See Mandelkorn v.

Patrick, 359 F. Supp. 692, 696-697 (D.D.C. 1973); Dooley v. United Technologies Corp., 786 F.

Supp. 65, 80 (D.D.C. 1992). As in Mandelkorn and Dooley, FCIG has specifically alleged that

there was a conspiracy of which Lichtenstein was a part, and that Lichtenstein and his co-

conspirators caused injuries to FCIG in the District of Columbia. Paragraphs 57-58 of the

Amended Complaint allege that there was a conspiracy to induce FCIG to invest millions of

dollars in a fraudulent foreign currency investment scheme. In addition, inter alia, paragraph 58

of the Amended Complaint specifically asserts that Lichtenstein participated in the conspiracy to

bilk FCIG out of millions of dollars. Finally, FCIG's Amended Complaint claims that there were

14

overt acts in furtherance of the conspiracy within the forum.  See Amend. Compl. at ¶¶ 1, 3, 9,

15, 26, 37, 57-58 (FCIG at all times conducted business with Titan and Lichtenstein from the

District of Columbia, Titan sent brochures containing misrepresentations to FCIG in the District

of Columbia, and Titan, Lichtenstein and a representative of IFX regularly directed misleading

phone calls to Eisenberg in the District of Columbia).  FCIG has thus met its prima facie burden

of establishing that Lichtenstein is subject to jurisdiction here based upon conspiracy

jurisdiction.

### IV.     Venue is Proper in the District of Columbia

Lichtenstein asserts that venue is improper in the District of Columbia pursuant to 28

U.S.C. § 1391 because, he alleges, the events giving rise to FCIG's claims occurred in Illinois

rather than the District of Columbia.  Although some of the acts complained of occurred in

Illinois (such as the allegations regarding Lichtenstein's formation of and involvement in sham

corporation Titan), the bulk of the misrepresentations and actions in furtherance of the

conspiracy took place in the District of Columbia and had injurious effects here.  The Amended

Complaint is replete with allegations regarding this action's connection with the District of

Columbia.  See Amend. Compl. at 1-3, 8, 11, 15, 26, 37, 38, 58.  As explained above, that

Eisenberg is a resident of Maryland and FCIG is a Maryland limited liability company does not

matter for purposes of the jurisdiction and venue inquiry:  Titan, Lichtenstein and their co-

conspirators purposely and regularly directed tortious actions to FCIG in the District of

Columbia.  Thus, "a substantial part of the events" giving rise to this action occurred within this

district, and venue here is thus proper.  Lichtenstein's motion to dismiss for improper venue

should be denied.

V.     **There is No Basis to Transfer this Action
       to the Northern District of Illinois**

Lichtenstein next proffers that this action should be transferred to the Northern District of Illinois because this action originally could have been brought in Illinois and "considerations of convenience and the interests of justice" weigh in favor of transfer. Mot. at 13.   When a party seeks to transfer venue, it bears a "heavy burden" of demonstrating that the plaintiffs' choice of forum should be disturbed.  See Thayer/Patricof Education Funding, LLC v. Pryor Resources, Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (denying motion to transfer venue).  The moving party must demonstrate that the "private interest" and "public interest" factors warrant transfer. Id.  The pertinent private interests are: (1) the plaintiffs' choice of forum; (2) the defendants' choice of forum; (3) whether the claims arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof.  Id.  The pertinent public interest factors are:  (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars and potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.  Id.

Although it is true that FCIG originally could have asserted its claims in Illinois, there is no reason that FCIG's choice of venue should be disturbed.   As explained more fully below, FCIG's choice should be given deference given the District of Columbia's ties to the controversy.  In addition, Lichtenstein has failed to meet his burden of showing that the District of Columbia will be less convenient to the parties, witnesses and that sources of proof are more easily accessible in Illinois.  Thus, Lichtenstein's motion to transfer should be denied because the inconvenience to FCIG and its potential witnesses, and the interests of justice in maintaining this action here weigh against transfer.

### A.   Private Interest Factors Warrant Retaining Venue in the District of Columbia

### 1.   Plaintiffs' Choice of Forum

It is well-settled that the plaintiffs' choice of forum should be given deference and should not be disturbed unless the other factors overwhelmingly warrant transfer. See Thayer, 196 F. Supp. 2d at 31 (plaintiff's choice of forum is a "paramount consideration.").[10]   Lichtenstein argues that no deference to FCIG's choice is warranted because District of Columbia has no ties to the controversy. Not so. As explained above, many tortious actions took place in the District of Columbia and form the "heart" of FCIG's complaint. It is of little, if any, significance that FCIG was formed under the laws of Maryland or that Eisenberg resides there. FCIG operated out of the District of Columbia, used a bank account in the District of Columbia, communicated with Lichtenstein and Titan almost exclusively from its District of Columbia offices and numerous acts in furtherance of the conspiracy took place in the District of Columbia. See generally, Eisenberg Aff.[11]   Thus, because the other factors do not significantly tilt the balance in favor of transfer, FCIG's choice of forum should be given deference.

---

[10]   All of the cases cited by Lichtenstein that grant the defendant's request to transfer are easily distinguishable because the proposed transferee forum had significant geographic ties to the subject matter of the controversy. In Sierra Club v. Flowers, 276 F. Supp. 2d 62 (D.D.C. 2003), the controversy concerned permits that were issued for mining in the Everglades wetlands of Florida. The controversy in Airport Working Group of Orange County v. U.S. Dep't of Defense, 226 F. Supp. 227 (D.D.C. 2002) centered around an air station located in Orange County, CA. Similarly, in Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13 (D.D.C 1996), the controversy concerned operation of a dam and reservoir in a national park in Colorado. Here, conversely, this controversy does not concern a park, landmark or building that is geographically located in Illinois. These cases are thus inapposite.

[11]   Lichtenstein asserts that the address listed in the Complaint as FCIG's principal place of business is, upon information and belief, the address of Eisenberg's law firm. Mot. at 15. Although it is true that Eisenberg practices law from this address, Eisenberg also regularly conducted FCIG business from this location, used this address on FCIG letterhead and Titan's records listed this address as FCIG's address. Thus, Lichtenstein's assertion that this address is

## 2.    Defendants' Choice of Forum

Lichtenstein's primary argument respecting why Illinois is a more appropriate forum is

that Lichtenstein has no significant ties to the District of Columbia and litigating here would

result in hardship to him. Mot. at 15.[12] However, Lichtenstein fails to cite any cases holding that

hardship on the defendant in plaintiffs' forum warrants disturbing that choice. Surely every non-

resident defendant would prefer to litigate in their home state. However, as this Court has made

clear, the forum's ties to the plaintiff and to the events giving rise to the cause of action are the

proper venue inquiries. Here, as explained above, FCIG chose this forum because of its

connection to the District of Columbia and because many of the events giving rise to the

complaint happened here. Defendant's preference to litigate at home thus should not be

considered in determining the most appropriate venue.

## 3.    Whether the Claims Arose Elsewhere

Lichtenstein continues to assert that the claims arose in Illinois, where Titan was

incorporated and where Lichtenstein practiced as a lawyer. Mot. at 16. However, as explained

repeatedly above, many of the acts in furtherance of the conspiracy to bilk FCIG out of millions

---

merely that of Eisenberg's law practice and that FCIG was not based in the District of Columbia
is specious.

[12] Lichtenstein also argues that Illinois substantive law will likely apply to these claims. Mot. at
16. However, given the connection of the facts giving rise to these claims to the District of
Columbia, District of Columbia law will likely apply to the majority of the Counts in the
Amended Complaint. However, even if Illinois law applies, the common law claims asserted
here are not complicated and this Court is fully capable of applying Illinois common law to the
facts of this case. See Thayer, 196 F. Supp. 2d at 36 (noting that federal courts are "often called
upon to apply state law, especially on common legal issues such as ...misrepresentation [and]
fraud.").

of dollars took place and had direct effects <u>in the District of Columbia</u>.[13]  Because the claims did

not wholly "arise" in Illinois, this factor militates toward maintaining venue in the District of

Columbia.

### 4.    The Convenience of the Parties

Not surprisingly, Lichtenstein argues that litigating in the Northern District of Illinois is

more convenient for him, and because Eisenberg does not reside in the District of Columbia, this

factor favors transfer.  Mot. at 17.  Lichtenstein overlooks that Eisenberg's residence in

Maryland is located in the Washington metropolitan area, only approximately 31 miles from this

Court (and approximately 678 miles from the Northern District of Illinois).[14]  This Court is thus

an exponentially more convenient forum for FCIG.  Moreover, Lichtenstein's reference to

FCIG's litigation in Wisconsin and relationship with a Wisconsin law firm is misplaced.[15]

Lichtenstein bears the burden of proving that <u>this case</u> should be litigated elsewhere and it should

not matter that FCIG has previously pursued litigation in other states.   Because Lichtenstein has

not demonstrated that litigating here would be more inconvenient for him than it would be for

FCIG to litigate in Illinois, this factor weighs in favor of maintaining venue here.[16]

---

[13]  Lichtenstein claims that it is "significant" that FCIG chose to sue Titan and Martinic in Wisconsin.  Mot. at 16.  However, Lichtenstein overlooks that FCIG originally filed suit against Titan, Martinic and other co-conspirators in this Court in 2004 and only dismissed that action after determining that settlement and/or collecting a potential judgment would be more efficiently pursued in Wisconsin where Martinic lived.  The choice is thus hardly "significant."

[14]  Eisenberg's place of business and FCIG's District of Columbia offices are approximately only 4 miles from this Court (and approximately 699 miles from the proposed transferee forum).

[15]  FCIG correspondingly notes that Lichtenstein obviously has counsel here in the District of Columbia.

[16]  Although Lichtenstein is a sole practitioner with only one receptionist employee, given the electronic filing requirements of this Court and the possibility of participating in hearings via telephone, Lichtenstein will unlikely need to travel to the District of Columbia other than for

### 5.    Convenience of the Witnesses

This Court has held that although the convenience to the witnesses is important, "to support its request for transfer under [this] section, a moving party must demonstrate (through affidavits or otherwise) what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction." Thayer, 196 F. Supp. 2d at 33.[17]   Falling far short of his burden, Lichtenstein simply avers that the "majority of" and "numerous" key witnesses (only four of which he specifically identifies) reside in or near Illinois. Mot. at 17.  Lichtenstein does not set forth the basis of these witnesses' testimony, the importance of the testimony or that the witnesses will be unwilling to testify here.  Because Lichtenstein wholly fails to set forth the information required to determine in which direction this factor weighs, Eisenberg need not set forth contrary information to demonstrate that venue here is more convenient for potential witnesses.

However, despite that Eisenberg has no burden here, the convenience to Eisenberg's witnesses of maintaining venue here overwhelmingly favors denial of Lichtenstein's transfer request.  As demonstrated by the chart below, the majority of Eisenberg's potential witnesses live either in the Washington Metropolitan Area or on the East Coast, far closer to Washington, DC than to Illinois.

---

trial.  Because trial in this case will not be scheduled for some time, Lichtenstein has plenty of time to ensure that he reserves that time to come here rather than book commitments for his clients' cases.  Lichtenstein's argument that his clients will be prejudiced is thus unavailing and does not warrant transfer.

[17]   Lichtenstein cites Chung v. Chrysler Corp., 903 F. Supp. 160 (D.D.C. 1995) in support of his position.  However, in Chung, the only connection to the forum was that the plaintiffs' decedent and a key witness had attended school in the District and a witness was currently residing there. The plaintiff resided in Hawaii, the injury took place in Mexico and the defendants and other witnesses were located in New York.  Here, as explained above, there is a much stronger nexus between this controversy and the forum than there was in Chung.  Chung is thus inapposite.

| Potential Witness | Connection to Subject Matter of Complaint | City and State of Residence or Principal Place of Business |
|---|---|---|
| Barry Taff | Investor associated with FCIG | Washington, DC |
| Anne Canfield | Investor associated with FCIG | Washington, DC |
| Glen Armand | Investor associated with FCIG | Warrenton, VA |
| Joel Levin | Investor associated with FCIG | Baltimore, MD |
| William Kolodner | Investor associated with FCIG | Baltimore, MD |
| Susan Kolodner | Investor associated with FCIG | Baltimore, MD |
| Harry Gildenhorn | Investor associated with FCIG | Rockville, MD |
| Chester Gordon | Investor associated with FCIG | Silver Spring, MD |
| Randi Lynn Cohen | Investor associated with FCIG | Potomac, MD |
| Thomas Birnbach | Investor associated with FCIG | Potomac, MD |
| Jan Eisenberg | Investor associated with FCIG | Gaithersburg, MD |
| Mark Eisenberg | Investor associated with FCIG | Baltimore, MD |
| Harry Newton | Investor associated with FCIG | New York, NY |
| Jeff Gordon | Worked with FCIG on Titan Program | Bethesda, MD |
| Robert Tamiso | Familiar with Foreign Currency Investments; Consulted by FCIG Regarding Titan program | New York, NY |
| Richard Harris | Merrill Lynch Broker who met with Eisenberg and Titan Official Knott in the District of Columbia | Washington, DC |
| Todd Kingsley | Merrill Lynch Broker who met with Eisenberg and Titan Official Knott in the District of Columbia | Washington, DC |
| Dennis Joyce | Independently invested in Titan's foreign currency program | Neptune Beach, FL |

| Anthony Versage | Performed Information Technology work for Titan and Martinic | New Jersey |
| Christopher Cruden | IFX Markets, Ltd. official who regularly contacted Eisenberg and Lichtenstein regarding the Titan Program | London, England |

See Eisenberg Aff. at ¶ 11.  As demonstrated above, the convenience to these twenty witnesses in maintaining venue in the District of Columbia outweighs the convenience to the three witnesses Lichtenstein identifies as available in the Northern District.[18]  In addition, Lichtenstein has presented no evidence to indicate that the three witnesses he identifies would be unwilling to travel to the District of Columbia.  Given Lichtenstein's failure to meet his evidentiary burden and the number of potential witnesses that FCIG has identified who work or reside in closer proximity to this Court, this "important" factor weighs heavily in favor of maintaining this action in the District of Columbia.

### 6.    Ease of Access to Sources of Proof

Lichtenstein's argument that this factor warrants transfer is misplaced for two reasons. First, FCIG has expended significant resources investigating the fraudulent scheme and has gathered documents from numerous non-party sources in various geographic locations (including Titan and Martinic's bank account records), all of which are currently located in the Washington metropolitan area.  Second, this Court has recognized that given "modern technology," the location of documents "is less important" in considering a motion to transfer.  See Thayer, 196 F.

---

[18]  Lichtenstein specifically identifies four witnesses, one of whom is Martinic's wife, Kathleen Martinic. However, Lichtenstein's assertion that Ms. Martinic resides in or near Illinois is likely no longer accurate.  A recent document filed in the Martinics' divorce action stated that Ms. Martinic intended to remove herself and her children to Washington State on or about August 1, 2005.  See Case No. 04-FA-000745 in the Circuit Court for Walworth County, Wisconsin.  This filing thus indicates that she will not be within the proposed transferee forum's subpoena power.

22

Supp. 2d at 36.  Because FCIG's records are located in close proximity to this forum and modern technology permits documents to be produced and examined almost anywhere, this factor warrants deferring to FCIG's choice of forum.

### B.    Public Interest Factors

#### 1.    Transferee's Familiarity with the Governing Laws

Lichtenstein asserts that pursuant to the District of Columbia's choice of law rules, the "law of the state with the most significant relationship to the matters at issue" will govern.  Mot. at 19.  As explained above, many of the operative facts occurred in the District of Columbia and thus District of Columbia law should apply.  However, even if Illinois law applies, this Court has held that federal courts are equally adept at applying the common law of other states, including claims of fraud.  Thayer, 196 F. Supp. 2d at 37 (holding that application of another state's common law does not alone warrant transfer to that state).  Application of another state's laws thus does not warrant transfer to Illinois.

#### 2.    The Relative Congestion of the Calendars of the Transferor and Transferee Courts

Contrary to Lichtenstein's assertion that "there is nothing to indicate that the calendar of the transferee district is any more or less congested [than] that of this district," judicial caseload statistics from the Administrative Office of the U.S. Courts state otherwise.  Mot. at 19.  For example, in 2004, the number of cases filed in the Northern District of Illinois exceeded the number filed in this Court by approximately two-thirds.  See Exhibit C (In 2004, there were 10,584 cases filed in the Northern District of Illinois, while only 3,121 cases were filed in the U.S. District Court for the District of Columbia).  In addition, in 2004 each Judge in the proposed transferee District considered approximately 55 more cases than the Judges in this District.  Id.  This factor thus militates toward keeping this action in the District of Columbia.

23

### 3.    Local Interest in Decided Local Controversies at Home

As explained above, this is not a local Illinois controversy.[19]  This action concerns

fraudulent activities that took place and had injurious effects in the District of Columbia.  This

District and its residents thus have an interest in adjudicating these claims here and the motion to

transfer venue should be denied.

### Conclusion

Contrary to what Lichtenstein would have this Court believe, this action is not merely

some jurisdictionally defective attempt by FCIG to assert claims against Lichtenstein in a foreign

forum.  Lichtenstein, through his own actions and those of his co-conspirators, is subject to

personal jurisdiction in the District of Columbia.  In addition, FCIG purposefully chose to sue

Lichtenstein in this forum and Lichtenstein did not meet his burden of proving why that choice

should be displaced.  For all of the foregoing reasons, FCIG respectfully requests that

Lichtenstein's motion to dismiss and motion to transfer be denied.

---

[19]   The cases Lichtenstein cites in support of his position that this case is local to Illinois are easily distinguishable from the facts here.  In Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1946), the United States Supreme Court affirmed dismissal of a case in New York on forum non conveniens grounds because the suit arose from a fire at a warehouse in Lynchburg, VA that resulted from an allegedly faulty Virginia delivery in violation of local Virginia ordinances.  In addition, plaintiff resided in Virginia.  In Islamic Republic of Iran v. Boeing, 477 F. Supp. 142 (D.D.C. 1979), the court transferred the action because there was a related proceeding pending in the transferee forum, the witnesses, airplane wreckage, and documentary evidence were located there, and there were no operative facts in the District of Columbia.  Conversely, here, plaintiffs have a connection to this forum, and many operative facts occurred in the District of Columbia. There are thus significantly more contacts with the original forum than there were in Gulf Oil or Boeing.  Indeed, Lichtenstein also cites Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124 (D.D.C. 2001). Mot. at 19.  In Greater Yellowstone, the court denied transfer despite that the case concerned the issuance of cattle-grazing permits in national forest land in Montana (the proposed transferee forum).  Given that the facts in Greater Yellowstone appear far more "local" than the facts here and the Court nonetheless denied transfer, Lichtenstein's motion should similarly be denied.

Dated:  November 21, 2005

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
 PORDY & ECKER, P.A.


By:  _____/s/_____
Ross D. Cooper #429200
11921 Rockville Pike, Third Floor
Rockville, MD 20852
(301) 230-5200
(301) 230-2891 (fax)

Attorney for Plaintiffs, Lawrence Jay Eisenberg and
FC Investment Group

25