## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FC INVESTMENT GROUP, L.C., et al. | |
| Plaintiffs | |
| | Case No. 1:05-cv-01753-RMC |
| v. | |
| LARRY B. LICHTENSTEIN, et al., | **ORAL HEARING REQUESTED** |
| Defendants. | |

## MOTION TO DISMISS AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

Defendants, LARRY B. LICHTENSTEIN and LARRY B. LICHTENSTEIN & ASSOCIATES, by their undersigned attorneys, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), and Local Rule 7.1, respectfully move this Court for an Order dismissing the Amended Complaint in this matter, with prejudice, on the following grounds: (1) that this court lacks personal jurisdiction over the Defendants, and (2) that venue in this Court is improper.

In the alternative, for the convenience of the parties and witnesses and in the interests of justice, pursuant to 28 U.S.C. § 1404(a), Defendants respectfully move this court for an Order transferring this action to the United States District Court for the Northern District of Illinois.

In support of this Motion, Defendants submit the attached Memorandum of Points and Authorities, as well as a proposed Order.

Defendants request that the Court hold an oral hearing on this Motion.

Respectfully submitted,
**LARRY B. LICHTENSTEIN**
**LARRY     B.     LICHTENSTEIN     &**
**ASSOCIATES**
*Defendants*
By Counsel:

DATED: December 2, 2005

Matthew A. Ranck (D.C. Bar # 484983)
William L. Mitchell, II (D.C. Bar # 476101)
ECCLESTON AND WOLF, P.C.
2001 S Street, N.W., Suite 310
Washington, DC  20009
Tel. (202) 857-1696
Fax (202) 867-0762
*ranck@ewmd.com*
*wmitchell@ewdc.com*

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Motion, Memorandum of Points

and Authorities and proposed Order were transmitted by electronic mail on this 2nd day of

December, 2005, to:

Ross D. Cooper, Esquire
SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.
11921 Rockville Pike, Third Floor
Rockville, Maryland 20852
*Counsel for Plaintiffs*

Matthew A. Ranck

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FC INVESTMENT GROUP, L.C., et al.

     Plaintiffs

v.

LARRY B. LICHTENSTEIN, et al.,

     Defendants.

Case No. 1:05-cv-01753-RMC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT OR, IN
THE ALTERNATIVE, TO TRANSFER VENUE**

     Larry B. Lichtenstein and Larry B. Lichtenstein & Associates, Defendants herein, by and through their undersigned counsel, Pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure, and pursuant to Local Rule 7.1, hereby file this Memorandum of Points and Authorities in support of their Motion to Dismiss the Amended Complaint or, in the Alternative, to Transfer Venue, and in support thereof state:

**INTRODUCTION**

     This action arises from the Plaintiffs' alleged loss of in excess of $5,000,000, which they claim to have invested on behalf of themselves and a group of unidentified, non-party investors, with another non-party, Titan Global Strategies, Ltd. ("Titan") for trading in foreign currency securities. The Defendants moved to dismiss the original Complaint on several grounds; specifically: (1) that the Complaint failed to sufficiently plead subject matter jurisdiction; (2) that this Court lacked personal jurisdiction over Mr. Lichtenstein and the law firm; and (3) because venue in this Court is improper.

1

Alternatively, Lichtenstein and the law firm moved the Court to transfer this case to the United States District Court for the Northern District of Illinois on the basis of *forum non-conveniens*.

Thereafter, Plaintiffs filed an Amended Complaint containing new factual allegations to counter the Defendants' arguments in the motion to dismiss. Additionally, Plaintiffs filed a Memorandum in Opposition to the motion to dismiss. Lichtenstein and the law firm, out of an abundance of caution, filed a Reply to Plaintiffs' Opposition, despite the fact that the filing of the Amended Complaint superseded the original Complaint and rendered the arguments set forth in the motion to dismiss moot.

In the Amended Complaint, Plaintiffs assert that Titan was undercapitalized when it was formed, failed to observe requisite corporate formalities, was not in compliance with applicable statutes and regulations, and was a sham entity. (Amended Complaint, ¶7) They further assert that Mr. Lichtenstein, an attorney, knew that Titan was a sham, but that he and Titan's sole owner, Milan Martinic ("Martinic"), as well as perhaps others who are not parties to the suit, induced Plaintiffs to invest their funds through various misrepresentations and other wrongs. (Amended Complaint, ¶8-11, 22-27)  Although Plaintiffs assert that their investments were either lost or stolen, they do not allege that any of this money went to Mr. Lichtenstein or his law firm.

Plaintiffs[1] began investing funds with Titan and/or Martinic in 1998, and they allege that they were advised in 2002 that a company called IFX Markets, Ltd ("IFX") was to take over management and brokerage services for Titan's investments. (Amended Complaint, ¶¶ 8-11, 15-21)  Mr. Lichtenstein incorporated Titan in November 2002, and

---

[1] Upon information and belief, Plaintiff Eisenberg is an exceedingly sophisticated businessman, and is a licensed attorney and is or was a certified public accountant as well.

was nominally identified as one of its two directors, along with Martinic, until January 11, 2003, when he (Mr. Lichtenstein) formally resigned.

Plaintiffs allege that, beginning in 2002, Mr. Lichtenstein acted as an intermediary between Titan/IFX and the Plaintiffs concerning the investments. (Amended Complaint, ¶ 25) Specifically, Plaintiffs assert that Mr. Lichtenstein falsely represented that Titan was in compliance with all United States securities and commodities regulations, and that he and Martinic would take the necessary steps to ensure continuing compliance in that regard, despite knowing that Titan was a sham entity and was not in compliance with applicable statutes and regulations. (Amended Complaint, ¶¶ 26-27)

In addition, Plaintiffs maintain that Mr. Lichtenstein continued to misrepresent Titan's true nature and character after Plaintiffs allegedly discovered that Titan had lost the invested funds. (Amended Complaint, ¶¶ 35-39) According to Plaintiffs, Mr. Lichtenstein was in regular contact with them from late 2003 to early 2004 regarding the return of these funds by Titan, and he repeatedly assured Plaintiffs that the money had been, or was in the process of being, returned. (Amended Complaint, ¶ 38) Plaintiffs assert that they relied on Mr. Lichtenstein's alleged statements by refraining from filing lawsuits against Titan and Martinic until after the point in time when the funds had been dissipated and were unrecoverable. (Amended Complaint, ¶ 37) Ultimately, Plaintiffs obtained a $6.5 Million judgment against Titan and Martinic in Wisconsin state court. (Amended Complaint, ¶ 40)

Having apparently been unable to recover from Martinic, Plaintiffs now set their sights on Mr. Lichtenstein, seeking to recover their $6.5 million based upon theories of: (1) piercing the corporate veil; (2) fraudulent misrepresentation; (3) civil conspiracy; (4)

3

civil aiding and abetting; and (5) negligent misrepresentation. Respectfully, the claims must be dismissed because this Court lacks personal jurisdiction over Mr. Lichtenstein and the law firm, and because the venue selected by Plaintiffs is improper. Alternatively, this case should be transferred to the United States District Court for the Northern District of Illinois on the basis of *forum non-conveniens*.

## FACTUAL BACKGROUND

Plaintiffs concede that Mr. Lichtenstein is a resident of the state of Illinois, and has a principal place of business in Chicago, Illinois. (Amended Complaint, ¶ 3). Plaintiffs also concede that Mr. Lichtenstein's law firm was formed under the laws of the state of Illinois, and has a principal place of business in Chicago, Illinois. (Amended Complaint, ¶ 4). Plaintiffs assert that Lichtenstein, as Titan's attorney, "directed contact" to them in the District of Columbia. (Amended Complaint, ¶¶ 5, 24) (emphasis added). However, while Plaintiffs allege substantial contact between themselves and Titan, Martinic and other non-parties, the contact between the Plaintiffs and Lichtenstein seems to be limited to alleged telephone conversations with Lichtenstein in 2002, 2003, and 2004 concerning Titan and the investments (Amended Complaint, ¶¶ 25-26, 37-38), and a facsimile Lichtenstein allegedly sent to Plaintiffs in January 2004 concerning a $4.5 million deposit of funds into a Titan-controlled bank account at U.S. Bank. (Amended Complaint, ¶ 39).

Lichtenstein and his law firm have no offices, agents, or employees located in the District of Columbia. (Lichtenstein Declaration, Exh. A, ¶ 3). They do not own real estate in the District of Columbia. (*Id.*, ¶ 4). They do not transact any business in the District of Columbia, and are not even licensed to conduct business therein. (*Id.*, ¶¶ 5-6).

4

**ARGUMENT**[2]

**I.    The Amended Complaint Should Be Dismissed Because This Court Lacks Personal Jurisdiction Over the Defendants**

Plaintiffs have the burden of establishing that the Defendants are subject to the personal jurisdiction of the federal court in the District of Columbia.    To determine whether that jurisdiction exists, the Court must employ a two-part test.    First it must determine whether jurisdiction is appropriate under the District of Columbia long-arm statute.    Second, if the long-arm statute permits jurisdiction, the court must determine whether personal jurisdiction is permissible under the Constitutional requirements of due process. *Youming Jin v. Ministry of State Security*, 335 F. Supp.2d 72, 77 (D.D.C. 2004).

Pursuant to the District of Columbia long-arm statute, "the plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. New York Zoological Soc.,* 894 F.2d 454, 456 (D.C.Cir. 1990). While the long-arm statute is interpreted broadly and factual disputes are resolved in favor of the plaintiff, the plaintiff must allege some specific facts evidencing purposeful activity by the defendant that invokes the benefits and protections of the District's laws. *COMSAT Corp. v. Finshipyards S.O.M.*, 900 F. Supp 515, 520 (D.D.C. 1995).    In that regard, the long-arm statute provides specific categories of purposeful activity from which personal jurisdiction over a defendant may arise.    Thus, § 13-423 of the D.C. Code explains that jurisdiction may arise from the defendant, among other things: (1) "transacting any business in the District;" (2) "contracting to supply services in the District;" (3) "causing tortious injury in the District of Columbia by an act or omission in

---

[2]    Although Defendants have not responded substantively to the Complaint at this time, Defendants wish to assure the Court that they vehemently deny any wrongdoing in connection with any of the matters alleged in the Complaint.

the District of Columbia" or (4) "causing tortious injury in the District" by an act or

omission outside of the District if the person regularly does business or derives revenue

from the District of Columbia. D.C. Code § 13-423; *See also*, *Youming Jin*, 335 F.

Supp.2d at 77.

In this instance, Plaintiffs assert personal jurisdiction under the third prong of the

long-arm statute, contending that Lichtenstein "caused injury to FCIG and Eisenberg in

the District of Columbia by acts or omissions in the District of Columbia." Plaintiffs

further allege personal jurisdiction exists under the first prong of the long-arm statute,

alleging that Lichtenstein "transacted business in the District of Columbia by directing

regular contact to FCIG and Eisenberg in the District of Columbia." Finally, Plaintiffs

contend that personal jurisdiction exists "based upon [Lichtenstein] and his co-

conspirators' acts within the forum in furtherance of the conspiracy" (Amended

Complaint, ¶5).

## A.    Causing Tortious Injury in the District of Columbia by an Act or Omission in the District of Columbia

Plaintiffs do not allege that Lichtenstein took any action while *physically present*

in the District of Columbia. As such, they cannot assert personal jurisdiction under the

third prong, § 13-423(a)(3). In *Margoles v. Johns*, 157 U.S. App. D.C. 209, 483 F.2d

1212, 1219-20 (D. C. Cir. 1973), the appellee made an allegedly tortious telephone call

from Wisconsin into the District of Columbia. The appellant argued that the telephone

call "projected [the appellee's] presence" into the District and, consequently, was an act

or omission in the District of Columbia for the purposes of section (a)(3). The court

rejected this reasoning noting "that to develop any such 'presence' doctrine we would be

thwarting the plain language and normal interpretation of the District's statute, and

6

creating needless ambiguities which have no place in a statute as reasonably constructed as the Uniform Act." *Id. at 1217.* The rationale in *Margoles* was that the statute is in plain, easy to understand language, and shows an intent that when an act is outside the forum state, other significant contacts such as those enumerated in sections (a)(1) and (a)(4) are necessary before jurisdiction can be exercised. *Id.; See also Moncrief v. Lexington Herald-Leader Co.,* 257 U.S. App. D.C. 72, 807 F.2d 217, 221 (D. C. Cir. 1986) (holding that § 13-423(a)(3) is an intentionally restricted tort section which stops short of the outer limits of due process, and confers jurisdiction only over a defendant who commits an act while physically in the District and causes an injury physically in the District). Defendants, like the appellee in *Margoles,* are only alleged to have contacts with the District of Columbia through facsimile or telephone calls that "project" their presence. The *Margoles* court made clear that more than a "projected presence" was required under (a)(3).

**B. Transacting Business in the District of Columbia**

As noted above, the "transacting business" provision of the District of Columbia long-arm statute, D.C. Code § 13-423(a)(1), permits the exercise of personal jurisdiction to the limits of the due process clause. *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 810-811 (D.C. 1976). Thus, a plaintiff must demonstrate that the defendant had minimum contacts with the District of Columbia such that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Dooley v. United Technologies,* 786 F. Supp. 65, 71 (D.D.C. 1992) (citing *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). This determination has been described essentially as "whether the

7

defendant purposefully established minimum contacts in the forum state." *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 108-09, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987). With regard to establishing such contacts, the Supreme Court recognized in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), that contemporary business is often transacted solely by mail and wire communications and that jurisdiction may sometimes exist even if a defendant "did not physically enter the forum state." *Id.* at 476, 105 S.Ct. at 2184. Thus, under a provision like D.C. Code §13-423(a)(1), the most critical inquiry is whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum. *Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C.1981), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982).

Nevertheless, the Constitution does not permit a defendant to be haled into court in a jurisdiction "solely as a result of 'random,' 'fortuitous,' or other 'attenuated' contacts...or of the 'unilateral activity of another party or third person'...." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. The *Burger King* Court explained, that in a case where jurisdiction is based on non-physical contacts, one must determine: (1) whether the defendant purposefully availed himself/itself of the privilege of conducting business in the forum state and (2) whether the defendant's conduct and contacts in connection with the forum is such that he "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This analysis embodies the notion that the Defendants' own action must be substantial enough to put it on notice of the possibility of defending itself in the

8

forum state. *Id.* at 298, 100 S.Ct. at 567-68; *Chung v. NANA Development Corp.,* 783 F.2d 1124, 1127 (4th Cir. 1986).

Plaintiffs have not suggested that the Defendants or any of their agents, are residents of the District of Columbia or have ever entered the District for the purpose of transacting business with the Plaintiffs.    In fact, Plaintiffs assertion of personal jurisdiction under § 423(a)(1) is apparently based solely upon a series of telephone calls and a facsimile transmission. (Amended Complaint, ¶¶ 25-26, 37-39).  These contacts, however, are simply not substantial enough, and do not evidence any intent on the part of Defendants to transact business in the District of Columbia, such that the requirements of the due process clause and/or § 423(a)(1) are met.   As the court in *Chung,* supra., explained, "if a party's slightest gesture of accommodation were to impose personal jurisdiction, commercial dealings would soon turn unobliging and brusque." *See Chung,* 783 F.2d at 1129.  See also, *Sol Salins v. Sure Way Refrigerated Truck Trans. Brokers,* 510 A.2d 1032, 1035 (D.C.1986)

Certainly, the alleged facsimile transmission alone does not rise to the level necessary to for personal jurisdiction.  It is the general rule that a "single, responsive mailing cannot constitute the 'meaningful' contact or 'substantial connection' between the defendant and the forum state." *United States v. Ferrara,* 54 F.3d at 831 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).  The facsimile upon which Plaintiffs substantially rely upon to assert personal jurisdiction was a single facsimile that was in response to continuous requests from the Plaintiffs. However, even when considered in conjunction with the alleged telephone calls between Defendants and Eisenberg in his D.C. office (Amended Complaint, ¶¶ 26, 37), the

"contacts" are insufficient, as a matter of law, to give rise to personal jurisdiction. See, *Bank of Cape Verde v. Bronson*, 869 F.Supp. 21 (D.D.C. 1994).

In *Bank of Cape Verde,* the clients of the defendant attorneys entered into a series of loans transactions with the plaintiff. *Id.* at 22. As a condition of the loans, plaintiff requested that the defendants' clients furnish a legal opinion regarding their solvency, the validity of warranties made in the agreement and whether relevant collateral and assets were free of liens and encumbrances. *Id.* Defendants furnished these opinions on behalf of their clients and transmitted them to the plaintiff in the District of Columbia. *Id.* When it later became clear that the defendant's clients were insolvent, plaintiff filed suit against the defendants alleging that the representations in their legal opinions were fraudulent. *Id.*

Thus, the facts in *Bank of Cape Verde* are strikingly similar to the case at bar. Like the Defendants in the case at bar, the defendants in *Bank of Cape Verde* were attorneys based outside of DC; neither the defendants in *Bank of Cape Verde* nor the Defendants in the case at bar have offices in the District of Columbia or clients in DC; and neither the defendants in *Bank of Cape Verde* nor the Defendants in the case at bar were ever physically present in the District of Columbia in connection with the transactions underlying the respective lawsuits. *Id.* Moreover, the defendants in *Bank of Cape Verde* were never hired by the plaintiff to represent them and all representations made by the defendant's were made in connection with the representation of their client. *Id.* Similarly, Lichtenstein was never hired to represent Eisenberg or FCIG and all representations made by Lichtenstein were made in connection with his representation of

Titan and/or Martinic.[3]    Most strikingly, the plaintiffs in both the case at bar and in *Bank of Cape Verde* claimed jurisdiction based on (1) the transmission of representations to the plaintiff in the District of Columbia, regarding the viability of their client, and (2) several phone calls made by defendants to the plaintiffs into the District of Columbia. *Id.*

The *Bank of Cape Verde* court held that it lacked personal jurisdiction under such circumstances reasoning that,

> "[a]ny activity by defendants related to their representation of their client, and any telephone calls or mailing to the District of Columbia occurred solely because the [plaintiff] requested that material be sent [to D.C.]...the unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts. Defendants did not intend to transact business here when they complied with plaintiff's request to have certain documents mailed [into] the District of Columbia." *Id.* at 23. (Internal citations omitted).

Similarly, any activity by Lichtenstein related to his representation of Titan, and any telephone calls or mailing into the District of Columbia occurred solely because Eisenberg requested those communications.  As such, this activity cannot be considered sufficient to establish personal jurisdiction under §13-423(a)(1).   *Id.* at 23 (citing *Sol Salins v. Sure Way Refrigerated Truck Trans. Brokers,* 510 A.2d 1032, 1035 (D.C.1986)); See also, *Reiman v. First Union Real Estate Equity & Mortgage,* 614 F. Supp. 255, 257 (D.D.C.1985) ("A plaintiff may not...depend upon his own activity to establish the existence of minimum contacts; the defendant must in some way have voluntarily and purposefully availed himself of the protection of the forum state's laws.").

---

[3] Indeed, Plaintiffs expressly allege that they relied on Lichtenstein's representations <u>as Titan's attorney</u>. (Amended Complaint, ¶ 24, 66-70)

Lichtenstein did not intend to voluntarily and purposefully transact business in the District of Columbia when he sent a facsimile or made telephone calls in response to Eisenberg's repeated requests. There are no allegations Lichtenstein ever represented the Plaintiffs or that Lichtenstein benefited directly from the transactions between Plaintiffs and Titan. In fact, Lichtenstein's contacts are almost identical in nature to those in *Bank of Cape Verde* and, as such, are "minimal and not of a quality that manifests a deliberate and voluntary association with the District of Columbia." *Bank of Cape Verde*, 869 F. Supp at 23.

The contacts referred to in the Amended Complaint can at best be categorized as "random," "fortuitous," or "attenuated." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. While these "minimal" contacts by phone and fax may have been into the District of Columbia, the fact that Defendants were, in these instances, required to communicate with Mr. Eisenberg in D.C. as part of their representation of Titan, cannot be shown to arise out of any intent on the part of the Defendants to transact business in Washington, DC. *Bank of Cape Verde*, 869 F. Supp at 23; see also, *Sol Salins v. Sure Way Refrigerated Truck Trans. Brokers,* 510 A.2d 1032, 1035 (D.C.1986). As such, Plaintiffs assertion of personal jurisdiction over the Defendant based on D.C. Code § 13-423(a)(1) must fail.

### C.    Conspiracy Jurisdiction

Plaintiffs further allege jurisdiction over the Defendants under the theory of "conspiracy jurisdiction." "Courts consider conspiracy jurisdiction a form of long-arm jurisdiction in which the defendant's contact with the forum consists of the acts of the defendant's co-conspirators within the forum." *Jin v. Ministry of State Security*, 335 F.

12

Supp. 2d 72, 77 (D.D.C. 2004) (citing *Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 523 (D.C.Cir.2001)). Because the District of Columbia long-arm statute provides for jurisdiction over persons acting directly *and* their agents, D.C. Code § 13-423(a), courts deem the defendant's co-conspirator the defendant's "agent." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1031 (D.C.Cir.1997).

As with other forms of personal jurisdiction, conspiracy jurisdiction requires a prima facie showing of the pertinent jurisdictional facts. *Second Amendment Found.,* 274 F.3d at 524. Jurisdiction under this theory, however, requires unusually particularized pleading. *Jin,* 335 F. Supp 2d at 77. See also, *World Wide Minerals Ltd. v. Rep. of Kazakhstahn,* 116 F. Supp 2d 98, 108 (D.D.C 2000); aff'd in part, reamanded in part, 296 F. 3d 1154 (D.C. Cir. 2002) ("courts utilize conspiracy jurisdiction warily and require that a plaintiff plead with particularity the conspiracy as well as the overt acts within the forum.") (internal citation omitted)

To prevail on a theory of conspiracy jurisdiction, courts require a prima facie showing of (1) a conspiracy (2) in which the defendant participated and (3) a co-conspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the conspiracy. *Jung v. Ass'n of American Med. Colls.,* 300 F.Supp.2d 119, 141 (D.D.C.2004). In the District of Columbia, the four elements of civil conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme. *Weishapl v. Sowers,* 771 A.2d 1014, 1023 (D.C. 2001)

13

Plaintiffs allege that Lichtenstein had "agreements and/or understandings with Martinic, Titan and IFX to commit fraud beginning at least in 2002 and continuing through 2004." (Amended Complaint, ¶57)  In order to meet the burden of demonstrating a conspiracy, plaintiff must allege a "common scheme" among the members of the conspiracy.  *Weishapl,* 771 A.2d at 1023 (laying out the elements of conspiracy).  The Amended Complaint, however, asserts facts that tend to undermine any argument that a common scheme including Defendants existed.  In this regard, the Amended Complaint notes that Martinic, IG Group, PLC and Titan first began dealing with the Plaintiffs in 1998. (Amended Complaint, ¶8).  As such, the alleged "common scheme" was ongoing for four years prior to any involvement by the Defendants. The "scheme" cannot be common among Martin, Titan *and* Defendants if it was created and perpetuated long before Plaintiffs can even allege Defendants had any knowledge or involvement.

Moreover, Plaintiffs have failed to plead with particularity any overt act taken by a co-conspirator in furtherance of a common scheme to which the Defendants were a party.  Plaintiff's Opposition to the original Motion to Dismiss argues that allegations of overt acts by co-conspirators within the forum, in furtherance of the conspiracy, are contained in ¶¶ 1, 3, 9, 15, 26, 37, 57 and 58 of the Amended Complaint.  To the contrary, however, ¶¶ 1, 3, 57 and the first clause in ¶ 58 make only conclusionary statements such as that there was an agreement among co-conspirators to commit fraud and that co-conspirators "regularly transacted business" in the District of Columbia.  These are precisely the type of "bald speculation" and "conclusionary statements" rejected by the court in *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787-88 (D.C.Cir.1983); See also *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1208 n. 5 (9th

14

Cir.1980) ("a plaintiff must allege specific acts connecting defendant with the forum") (cited by *Naartex,* 722 F.2d at 788). Paragraphs 26, 37 and the latter portion of 58 are the same allegations regarding communications into the District of Columbia by Lichtenstein that are relied upon by Plaintiffs as and for their argument for personal jurisdiction under D.C. Code § 13-423(a)(1). These allegations, as discussed at length above, do not rise to level of substantial contacts with the District of Columbia and thus certainly do not rise to the level of an "overt act" within the District. Moreover, these allegations involve acts by the Defendants, not their alleged co-conspirators. As such, they should be evaluated in terms of traditional long-arm jurisdiction as opposed to "conspiracy jurisdiction."

This leaves only ¶¶ 9 and 15 as those making specific allegations of overt acts within the District of Columbia by alleged co-conspirators. However, the acts contained in these allegations, that Titan made representations to Plaintiffs in D.C. to solicit their initial investment and that Titan employee Charles Knott traveled to D.C. to meet with Plaintiffs, occurred *before* Defendants were allegedly a party to the conspiracy. As such, even if these were "overt acts" within the District of Columbia, they were not taken in furtherance of any conspiracy about which Defendants had any knowledge, or to which Defendants were a part.

Finally, even if Plaintiffs have made a prima facie showing of the elements required for conspiracy jurisdiction, they still must demonstrate that jurisdiction over the Defendants does not violate the due process clause. *Jin,* 335 F.Supp. 2d at 80 (noting that if the court did not require a showing of purposeful availment, conspiracy jurisdiction would be unconstitutional). The court "expects the plaintiffs not only to make a showing of the three traditional elements of conspiracy jurisdiction, but also of purposeful

15

availment." *Id.* In the context of conspiracy this "requires knowledge, control, approval or discretion" over the acts of the co-conspirators. *Id.* at 83. As noted above, however, all of the alleged overt acts of co-conspirators either occurred before Defendants were allegedly involved or involve acts by the Defendants themselves. Defendants could not have exerted any knowledge, control, approval or discretion over the acts occurring before their alleged involvement. Moreover, as discussed at length above, basing jurisdiction on the plaintiff's minimal communications into the District of Columbia would violate due process. See *Bank of Cape Verde*, 869 F. Supp 21.

## II.    The Amended Complaint Should Be Dismissed as Venue is Improper

In a suit such as this, where the purported jurisdiction would be based upon alleged diversity of citizenship, venue is appropriate in a judicial district "(1)...where any defendant resides, if all defendants reside in the same State", "(2)...in which a substantial part of the events or omissions giving rise to the claim occurred", or "(3)...in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." *See* 28 U.S.C. § 1391(a).

According to the Amended Complaint, the defendants in this matter are both residents of Illinois (Amended Complaint ¶¶ 3,4), and the Plaintiffs are residents of Maryland and allegedly the District of Columbia[4]. (Amended Complaint ¶¶ 1,2). As all defendants reside in Illinois, venue is proper in Illinois under § 1391(a)(1).

Moreover, 28 U.S.C. § 1391(a)(3) is only available "if there is no district in which the action may otherwise be brought." However, as Illinois is a proper venue, §

---

[4] Although Plaintiffs allege the LCC's principal place of business is in the District of Columbia, the LLC's principal place of business was originally designated, in April 2001, as 9800 Gable Ridge Terrace, Apt. G, Rockville, MD. See Articles of Incorporation, Exhibit B. In January 2005, just months before filing this suit, the LLC designated its principal place of business as 122 Treehaven Street, Gaithersburg, Maryland 20850. See Certificate of Reinstatement, Exhibit C.

1391(a)(3) is unavailable as a means of establishing venue. As such, it appears that Plaintiffs are asserting the District of Columbia is an appropriate venue under § 1391(a)(2), which requires that "a substantial part of the events or omissions giving rise to the claim occurred" in the judicial district. However, as this case has a minimal nexus with the District of Columbia, § 1391(a)(2) is unavailable to Plaintiffs.

The Amended Complaint itself establishes that the alleged wrongful acts occurred entirely outside of the District of Columbia. The Amended Complaint asserts that Lichtenstein, an attorney in Illinois, was briefly a director of an undercapitalized Illinois corporation, which failed to meet the corporate formalities required under Illinois, and that he conspired with, aided and abetted, acted through and made fraudulent representations on behalf of, that corporation and its sole owner with regard to an ongoing transaction between the Illinois corporation and the Plaintiffs, a Maryland LLC[5] with a place of business in the District of Columbia and its Maryland-resident owner/proprietor. (Amended Complaint, ¶¶ 44-70).

Plaintiffs do not allege that the Defendants conspired with any party or entity found in the District of Columbia, or that the Defendants aided or abetted any party or entity located in the District of Columbia. Essentially, Plaintiffs argue that the Defendant acted as the director and attorney for an Illinois corporation to induce a Maryland LLC to invest money that was never returned. As such, the claims that are subject to suit arise almost entirely from Mr. Lichtenstein's representation of Titan and/or Martinic's as their Illinois counsel, or from his brief role as a director of Titan, an Illinois company. Although Plaintiffs maintained an office and place of business in D.C. and allegedly communicated with Defendants from D.C., as opposed to Eisenberg's residence or the

---

[5] See note 6, infra.

17

LLC's registered principal place of business[6], the nucleus of facts giving rise to this claim occurred in Illinois. As discussed above, the only contacts with the District of Columbia arise from what the Amended Complaint makes clear were minimal communication into the District, all of which were initiated by the Plaintiffs or were in response to their requests.

As argued above, the Defendants do not believe that these minimal contacts are sufficient to give rise to personal jurisdiction. See *Bank of Cape Verde*, 869 F. Supp 21, 22-23. However, even if the Court finds to the contrary, these contacts are certainly insufficient to constitute a "substantial part of the events" giving rise to the claims as required by 28 U.S.C. § 1391(a)(2). Thus, the Amended Complaint should be dismissed on the basis of improper venue.

## IV.    If the Amended Complaint is not Dismissed, the Court Should Exercise Its Discretion and Transfer Venue to the Northern District of Illinois

### A. 28 U.S.C. 1404(a)

Even if both jurisdiction and venue are proper, the court should exercise its discretion and transfer this case to the Northern District of Illinois "for the convenience of parties and witnesses, [and] in the interest of justice..." 28 U.S.C. § 1404(a). Pursuant to Section 1404(a), the movant must make two showings to justify transfer: (1) that the plaintiff originally could have brought the action in the proposed transferee district, and (2) that the considerations of convenience and the interest of justice weigh in favor of transfer to that court. See, e.g., *Sierra Club v. Flowers*, 276 F. Supp.2d 62, 65 (D.D.C. 2003).

---

[6] See note 6, infra.

**B. Plaintiffs Could Have Brought The Action In The United States District Court For The Northern District Of Illinois**

To satisfy the requirements of § 1404(a), the movant must establish that the plaintiff could have brought the action in the proposed transferee forum. *Sierra Club*, 276 F. Supp.2d at 65.   As previously noted, when jurisdiction is based upon diversity, venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." See, 28 U.S.C. § 1391(a).   In this case, the defendants are (1) an individual resident of the Northern District of Illinois, and (2) a law firm whose principal place of business is in Northern District of Illinois.   (Amended Complaint, ¶¶ 3,4)   Accordingly, venue is proper in the United States District Court for the Northern District of Illinois.   In fact, Plaintiff admits in his Opposition to the original Motion to Dismiss that "FCIG originally could have asserted its claim in Illinois" (Opposition to Motion to Dismiss, p. 16)

**C . Convenience and the Interests of Justice Weigh In Favor Of Transfer**

Considerations of convenience and the interests of justice weigh in favor of transfer. In this regard, Section 1404(a) directs the court to weigh a number of case-specific private interest and public interest factors. *Id*. The private interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Id*.; *see also Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996) (same). The public interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in deciding local controversies at home. Id. As set forth in detail

19

below, the application of these factors demonstrates that this case should be transferred to the United States District Court for the Northern District of Illinois.

1. PRIVATE INTEREST FACTORS

*(a). Plaintiff's Choice of Forum*

The Plaintiffs' choice of forum is generally given deference in determining whether a transfer of venue is justified. *See, Thayer/Patric of Educ. Funding v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002). This deference, however, is mitigated if a plaintiff's choice of forum has no meaningful ties to the controversy. *See*, *Trout Unlimited*, 944 F. Supp. at 17; and *Sierra Club*, 276 F. Supp.2d at 67; *See also*, *M Airport Working Group of Orange County, Inc. v. Dep't of Defense*, 226 F. Supp.2d 227, 231 (D.D.C. 2002) ("Even if plaintiffs' choice of forum is entitled to some deference, it is far from dispositive where...the case has minimal connection to the District of Columbia and other factors militate strongly in favor of transfer.")  Here, as the controversy arises from a dispute between a Maryland LLC (admittedly, allegedly often doing business and communicating from its DC office), a Maryland resident, an Illinois corporation and an Illinois lawyer - based upon alleged acts and omissions occurring almost exclusively in Illinois with only marginal ties to the District of Columbia - Plaintiffs' choice of forum merits little deference.

The plaintiffs are a Maryland limited liability company and its owner/manager, a Maryland resident. (Amended Complaint, ¶2).  The suit is based on allegations that the defendant acted as the director and attorney for an Illinois corporation to induce a Maryland LLC to invest money that was never returned.  As such, the claims that are subject to suit arise almost entirely from Mr. Lichtenstein's representation of Titan

20

and/or Martinic's as their Illinois counsel, or from his brief role as a director of Titan, an Illinois company.    Thus, the only tie between the District of Columbia and this controversy is that Mr. Eisenberg happened to have minimal and limited communications with Defendants from his District of Columbia law office that also served as a place of business for the LLC.  As such, the District of Columbia has no meaningful ties to the controversy, and only marginal deference should be given to Plaintiffs' choice of forum.

*(b). Defendant's Choice of Forum*

On the contrary, Defendants have significant and legitimate reasons for believing that the Northern District of Illinois is a more appropriate forum.  First, as discussed below, the forum suggested by Defendants is the forum in which this controversy arose, and there is little doubt that Illinois law will apply to the substantive issues to be resolved.  Secondly, as also discussed below, convenience of the parties and significant witnesses, as well as ease of access to evidence all weigh in favor of a transfer to Illinois. Finally, Mr. Lichtenstein has no significant or ongoing ties with the District of Columbia, but he has significant ties to Illinois.   In this respect, Mr. Lichtenstein maintains a private law practice as a solo practitioner from his Chicago office.  He has no partners, no associates, no law clerks and only a single employee (a receptionist/secretary).  Consequently, he serves all of his clients personally, with no ability to have a colleague cover matters for him.  Not only will litigating this case in the District of Columbia be a inconvenience and hardship for him personally, but it will likely be a inconvenience and hardship on his clients as well.

*(c). Whether the claim arose elsewhere*

While Plaintiffs allege that Mr. Eisenberg occasionally communicated with the Defendants from his District of Columbia office (with the Defendants remaining at all times in Illinois), these alleged communications represent the only connection between this claim and the District of Columbia. On the other hand, the nucleus of facts upon which Plaintiffs' claims are based – including Titan's fraudulent scheme, alleged to have been on-going for approximately four years before these Defendants even had any involvement or contact with Plaintiffs - all occurred in Illinois. *See, e.g.*, Amended Complaint at ¶¶ 8-18, 25. Mr. Lichtenstein's entire role in all of the underlying events was, as far as Plaintiffs allege they knew, during the course and scope of his representation as Titan's and/or Martinic's Illinois attorney. *See* Amended Complaint at ¶ 24. Mr. Lichtenstein is not alleged to have represented Plaintiffs in any capacity, and he is not even alleged to have practiced law in the District of Columbia. Rather, he allegedly simply communicated on behalf of his client with Plaintiffs.

Similarly, the Plaintiffs' other claims arise out of their dealings with Titan, a corporation formed under the laws of Illinois, which allegedly failed to follow Illinois corporate formalities. Significantly, Plaintiffs' dealings with Titan ultimately led them to first sue Martinic and Titan in Wisconsin, not the District of Columbia.

*(d). The Convenience of the Parties*

Neither Mr. Eisenberg nor Mr. Lichtenstein reside in Washington, D.C. As noted above, Mr. Lichtenstein is a solo practitioner in Chicago, without the support system to adequately serve his clients if he is forced to litigate this case in the District of Columbia. Moreover, Plaintiffs can hardly be heard to argue that it would be

22

inconvenient to litigate in Illinois, as they previously litigated the underlying case in Wisconsin. Upon information and belief, Plaintiffs have or had an attorney-client relationship with a large law firm in either Illinois or Wisconsin.

*(e). The Convenience of the Witnesses*

The most critical factor to examine in determining whether to transfer a case under 28 U.S.C. § 1404(a) is the convenience of the witnesses. See, *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995) (citing *International Comfort Products, Inc. v. Hanover House Industries, Inc.*, 739 F. Supp. 503, 507 (D. Ariz. 1989)). In this case, the majority of anticipated significant witnesses reside near or in the Northern District of Illinois, not the District of Columbia.

As noted, this controversy arises out of a complex series of transactions between entities located in Illinois and Maryland. Thus, numerous key witnesses who can offer significant testimony regarding their interactions with Titan and Martinic, including Laura Mudra who assisted in preparing the paperwork for Titan's incorporation; Laurie Hewitt who handled funds for Martinic; Wes Nissen an attorney retained by Titan to address regulatory compliance issues; Ms. Martinic (and perhaps others in the Martinic family); and the Defendants all currently reside in or near Illinois. Moreover, Defendants believe that other very important witnesses live in adjoining states such as Michigan or Wisconsin. To the extent any of these witnesses are needed to testify at trial, it will obviously be exceedingly cumbersome and inconvenient for them to attend proceedings in the District of Columbia.

On the other hand, other than Plaintiff Eisenberg, it is not clear that any significant witnesses reside in or around the District of Columbia. Although there are

23

presumably investors that reside in or near the District of Columbia, they had no direct dealings with any of the Defendants and thus, the significance of their testimony is unclear. As such, by placing venue in the Northern District of Illinois the court can optimize the convenience of the witnesses.

*(f). Ease of Access to Proof*

Most of the relevant non-party documents in this case will be located in Illinois. Specifically, relevant documents will be located in the law offices of the KMZ Rosenmann, the firm retained by Titan to address regulatory compliance issues, in Chicago. Additional documents will undoubtedly exist in Illinois regulatory and corporation commission offices, as well as in the Court files in Wisconsin where the underlying case was litigated. Moreover, various personal and corporate bank and exchange or investment accounts, which were opened in Chicago, will undoubtedly be implicated in this controversy. As such, the ease of access to proof weighs heavily in favor of transfer. On the other hand, few non-party documents located in the District of Columbia appear to be at issue.

## 2. PUBLIC INTEREST FACTORS

The public interest factors the Court will consider in determining whether to transfer a case under 28 U.S.C. § 1404(a), include (1) the transferee court's familiarity with the governing laws, (2) the relative congestion of the calendars of the transferor and transferee courts, and (3) the local interest in deciding local controversies at home. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001). Like the private interest factors, these public interest factors also weigh in favor of transfer in the instant case.

24

*(a). Transferee Court's Familiarity with the Governing Laws*

Under the District of Columbia's choice of law rules, the law governing the plaintiff's claims is the law of the state with the most significant relationship to the matters at issue. *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp, 1018, 1026 (D.D.C. 1994). While limited communications took place via telephone, email and fax between Illinois, Maryland, and Washington, D.C., as discussed above, the common nucleus of operative facts underlying all of these the transactions and the claims asserted all took place in Illinois. Illinois is, therefore, the state with the most significant relationship to the matters at issue. As such, to the extent that the issues to be resolved in this lawsuit are based on statute or common-law principals, Illinois state law will apply. As such, it is respectfully submitted that the District Court for the Northern District of Illinois has a greater familiarity with the governing state laws.

*(b). The relative congestion of the calendars of the transferor and transferee courts*

There is nothing to indicate that the calendar of the transferee district is any less efficient in the disposition of its docket than this district. In fact, it appears from the attachments to Plaintiffs' Opposition to the original Motion to Dismiss, that the U.S. District Court for the Northern District of Illinois, although handling a larger number of filings each year, disposes of civil cases in almost half of the time needed, on average, for the U.S. District Court for the District of Columbia. (Plaintiffs Opposition to Defendant's Motion to Dismiss, Exh. C) Furthermore, as this suit is in its preliminary stages, transferring the case at this juncture would create no undue delay.

*(c). Local Interest in Deciding Local Controversies at Home*

25

"There is a local interest in having localized controversies decided at home."
*Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1947). As such, controversies should be
resolved in the locale where they arise. *Islamic Republic of Iran v. Boeing Co.*, 477 F.
Supp. 142, 144 (D.D.C. 1979). As noted above, the claims that are subject to suit arise
almost entirely from Mr. Lichtenstein's representation of Titan and/or Martinic's as their
Illinois counsel, or from his role as a director of Titan, an Illinois company. As such, the
dispute alleged in the Amended Complaint should be decided by a court in the affected
judicial district, the United States District Court for the Northern District of Illinois, and
not by the United States District Court for the District of Columbia.

WHEREFORE, for the reasons aforesaid, the Defendants respectfully request
that their Motion be GRANTED, and that this case be DISMISSED, or in the alternative,
that the case be transferred to the United States District Court for the Northern District of
Illinois.

Respectfully submitted,

> **Larry B. Lichtenstein**
> **Larry B. Lichtenstein & Associates**
>
> By Counsel:
>
>
> Matthew A. Ranck (D.C. Bar #484983)
> William L. Mitchell, II (D.C. Bar #476101)
> ECCLESTON AND WOLF, P.C.
> 2001 S Street, N.W., Suite 310
> Washington, D.C. 20009
> (202) 857-1696 (telephone)
> (202) 857-0762 (facsimile)
> Ranck@ewmd.com
> wmitchell@ewdc.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of December, 2005, I caused a copy of the foregoing **Memorandum of Points and Authorities in support of their Motion to Dismiss or in the alternative to Transfer Venue** to be filed electronically with the United States District Court and served in the manner indicated below:

**Via E-Mail/Electronic Filing**

Ross D. Cooper, Esquire
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
11921 Rockville Pike, Third Floor
Rockville, MD 20852
*Counsel for Plaintiffs*

William L. Mitchell, II (#476101)