## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FC INVESTMENT GROUP LC, <u>et</u> <u>al</u>. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:05-cv-01753-RMC |
| v. | ) | |
| | ) | |
| LARRY B. LICHTENSTEIN, <u>et</u> <u>al</u>. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, <u>OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO ILLINOIS</u>

Ross D. Cooper #429200
SHULMAN, ROGERS, GANDAL,
 PORDY & ECKER, P.A.
11921 Rockville Pike, Third Floor
Rockville, MD 20852
(301) 230-5200
(301) 230-2891 (fax)

Attorney for Plaintiffs Lawrence Jay
Eisenberg and FC Investment Group

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    II.    Lichtenstein Is Subject to Personal Jurisdiction
          in the District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          A.    Lichtenstein is Subject to Personal Jurisdiction
               Pursuant To the District of Columbia Long-Arm
               Statute Based Upon His Own Contacts with
               the District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . 5

               1.    Lichtenstein Transacted Business in the
                    District of Columbia . . . . . . . . . . . . . . . . . . . . . . . 6

               2.    Lichtenstein Caused Injury in the District
                    of Columbia by an Act or Omission within
                    the District of Columbia . . . . . . . . . . . . . . . . . . . . 10

          B.    Lichtenstein is also Subject to Jurisdiction Here
               Based on His Co-Conspirators' Contacts with the
               District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.   Venue is Proper in the District of Columbia . . . . . . . . . . . . . . . . . . 16

    IV.   There is No Basis to Transfer this Action to the
          Northern District of Illinois . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          A.    Private Interest factors Warrant Retaining Venue
               in the District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . 18

               1.    Plaintiffs' Choice of Forum . . . . . . . . . . . . . . . . . . . . 18

               2.    Defendants' Choice of Forum . . . . . . . . . . . . . . . . . . . 19

3.   Whether the Claim Arose Elsewhere . . . . . . . . . . . . . . . . . . . . . 20

4.   The Convenience of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . 20

5.   Convenience of the Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . 21

6.   Ease of Access to Sources of Proof . . . . . . . . . . . . . . . . . . . . . 24

B.   Public Interest Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1.   Transferee's Familiarity with the
     Governing Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2.   The Relative Congestion of the Calendars
     of the Transferor and Transferee Courts . . . . . . . . . . . . . . . . . 25

3.   Local Interest in Decided Local Controversies
     At Home . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

### CASES

Airport Working Group of Orange County v. U.S. Dep't of Defense,
  226 F. Supp. 2d 227 (D.D.C. 2002) .................................................................................. 18

Bank of Cape Verde v. Bronson,
  869 F. Supp. 21 (D.D.C. 1994) ..................................................................................... 9, 10

Burger King Corp. v. Rudzewicz,
  471 U.S. 462 (1985) ...................................................................................................... 6, 10

Chung v. Chrysler Corp.,
  903 F. Supp. 160 (D.D.C. 1995) ........................................................................................ 21

Chung v. NANA Dev. Corp.,
  783 F.2d 1124 (4th Cir. 1986) ............................................................................................ 8

Crane v. New York Zoological Society,
  894 F.2d 454 (D.C. Cir. 1990) .................................................................................. 5, 9, 10

Dooley v. United Technologies Corp.,
  786 F. Supp. 65 (D.D.C. 1992) ......................................................................................... 13

Edmond v. United States Postal Service,
  949 F.2d 415 (D.C. Cir.  1991) ......................................................................................... 13

Gorman v. Ameritrade,
  293 F.3d 506 (D.C.Cir. 2002) ............................................................................................. 6

Greater Yellowstone Coalition v. Bosworth,
  180 F. Supp. 2d 124 (D.D.C. 2001) .................................................................................. 26

Gulf Oil Corp. v. Gilbert,
  330 U.S. 501 (1946).......................................................................................................... 26

Havoco of America, Ltd. v. Shell Oil Co.,
  626 F.2d 549 (7th Cir. 1980) ............................................................................................ 15

Hayes v. Schweikart's Upholstering Co.,
  402 S.W.2d 472 (Tenn. Ct. App. 1965) ............................................................................ 15

Helmer v. Doletskaya,
  393 F. 3d 201 (D.C. Cir. 2004) .................................................................................... 11, 12

Islamic Republic of Iran v. Boeing,
   477 F. Supp. 142 (D.D.C. 1979)...................................................................26

Keeton v. Hustler Magazine,
   465 U.S. 770 (1984)..................................................................................10

Mandelkorn v. Patrick,
   359 F. Supp. 692 (D.D.C. 1973).................................................................13

Margoles v. Johns,
   483 F.2d 1212 (D.C. Cir 1973)..................................................................10

Moncrief v. Lexington Herald-Leader Co.,
   807 F.2d 217 (D.C. Cir. 1986)...................................................................10

Naartex Consulting Corp. v. Watt,
   722 F.2d 779 (D.C. Cir. 1983)...................................................................15

Neal v. Janssen,
   270 F.3d 328 (6th Cir. 2001).....................................................................11

Reiman v. First Union Real Estate Equity & Mortgage,
   614 F. Supp. 255 (D.D.C 1985).........................................................6, 9, 11

Savannah College of Art & Design, Inc. v. School of Visual Arts of Savannah, Inc.,
   464 S.E.2d 895 (Ga. Ct. App. 1995)...........................................................15

Sierra Club v. Flowers,
   276 F. Supp. 2d 62 (D.D.C. 2003).............................................................18

Thayer/Patricof Education Funding, LLC v. Pryor Resources, Inc.,
   196 F. Supp. 2d 21 (D.D.C. 2002)........................5, 17, 18, 19, 21, 24, 25

Trout Unlimited v. U.S. Dep't of Agric.,
   944 F. Supp. 13 (D.D.C 1996)...................................................................18

United States v. Ferrara,
   54 F.3d 825 (D.C. Cir. 1995)......................................................................8

Wein Air Alaska v. Brandt,
   195 F.3d 208 (5th Cir. 1999)...................................................................11

World-Wide Volkswagen Corp. v. Woodson,
   444 U.S. 286 (1980)...................................................................................6

iv

Youming Jin v. Ministry of State Security,
  335 F. Supp. 2d 72 (D.D.C. 2004) ................................................................. 14, 15, 16

## STATUTES

28 U.S.C. § 1391 ........................................................................................................ 16

D.C. Code § 13-423 ................................................................................................. 6, 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FC INVESTMENT GROUP LC, <u>et al</u>. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:05-cv-01753-RMC |
| | ) |
| LARRY B. LICHTENSTEIN, <u>et al</u>. | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT,
## <u>OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO ILLINOIS</u>

Plaintiffs FC Investment Group, LC and Lawrence J. Eisenberg (collectively, "FCIG")

respectfully submit this opposition to Defendants Larry B. Lichtenstein and Larry B.

Lichtenstein & Associates' (collectively, "Lichtenstein") Motion to Dismiss the Amended

Complaint, or in the Alternative, Motion to Transfer Venue.

### <u>Preliminary Statement</u>

After personally participating in a conspiracy that bilked FCIG out of millions of dollars

by directing systematic and regular telephone calls and faxes to the District of Columbia,

Lichtenstein seeks to avoid scrutiny in this Court by claiming: (1) his purposeful and systematic

direction of contacts to the District are insufficient to establish personal jurisdiction over him;

and (2) this suit should be transferred to Illinois. Each of these arguments are specious and

suggest that Lichtenstein's insurance defense counsel simply is running the defendant "play

book" in an effort to avoid adjudication on the merits to increase FCIG's costs and bully a

settlement. Indeed, this gamesmanship is further evidenced by Lichtenstein's abandonment of

his patently flawed subject matter jurisdiction argument in this second Motion to Dismiss

directed at the Amended Complaint, which obviously was imposed merely to increase FCIG's costs.

First, Lichtenstein squarely is within the personal jurisdiction of this Court. This is not a case, as Lichtenstein suggests, of "random" or "fortuitous" contacts between Lichtenstein and the District of Columbia. Lichtenstein, along with his co-conspirators, regularly and systematically conducted business through the mail and wires with FCIG in the District of Columbia. As it is well-settled that physical presence in a state is not necessary to subject an individual to personal jurisdiction there, these regular mail and wire communications satisfy the requirements of the District of Columbia Long-Arm statute and the Due Process clause. Indeed, under this Circuit's conspiracy jurisdiction law, Lichtenstein would be subject to jurisdiction here even if he directed no contact to the District (even though he did). Second, as to the proper venue for this action, the allegations in the complaint and the affidavit attached hereto demonstrate the significant nexus between the operative facts and this forum. Moreover, FCIG's choice to sue Lichtenstein here should not be disturbed because Lichtenstein has failed to meet his burden of proving that venue here is improper or that the interests of justice require transfer. Indeed, this case has a far greater nexus to the District of Columbia than to Illinois.

## Statement of Facts

In or about September 1998, Titan Global Strategies, Ltd. ("Titan") and its officials contacted Eisenberg at his offices in the District of Columbia about making an investment in a foreign currency trading account to be managed by Titan. See Amended Complaint ("Amend. Compl.") at ¶ 8. Titan advised Eisenberg that it was affiliated with a well-known foreign currency trader and sent information brochures to Eisenberg regarding the foreign currency

2

trading program. Id. at ¶ 9. Based upon this information, Eisenberg invested money with Titan. Id. at ¶ 9-10.[1]

According to the monthly account statements that Titan sent to Eisenberg in the District of Columbia, the investment appeared profitable and Eisenberg continued to invest money with Titan. Id. at ¶¶ 10-14. Eisenberg eventually created FCIG to facilitate his investments with Titan, as well as the investments of his friends and family. Id. at ¶ 12. During Eisenberg and FCIG's relationship with Titan, Eisenberg signed at least one contract with Titan, which Eisenberg negotiated and executed in the District of Columbia. Affidavit of Lawrence J. Eisenberg ("Eisenberg Aff."), Exhibit A at ¶ 8. FCIG repeatedly requested information regarding Titan's compliance with applicable laws and regulations, and Titan director Lichtenstein assured FCIG that Titan was taking all necessary steps to ensure compliance. Amend. Compl. at ¶ 26-27.[2] In reliance on Lichtenstein's status as an attorney and involvement with Titan, investors associated with FCIG invested an additional $3 million after Lichtenstein became more involved in Titan's operations. Id. at ¶ 24; Eisenberg Aff. at ¶ 10.

Despite that FCIG is a Maryland limited liability company, FCIG has at all times had its principal place of business in the District of Columbia and used a bank account at a District of Columbia financial institution. Eisenberg Aff. at ¶¶ 3, 9. Virtually every telephone call, facsimile and postal correspondence from Titan was received by Eisenberg at FCIG's District of Columbia offices. Id. at ¶¶ 4-6. In addition, Titan sent monthly account statements to Eisenberg (which listed FCIG's District of Columbia address) and most, if not all, correspondence that

---

[1] Lichtenstein also was a director of Titan, which he formed with his partner Martinic. Amend. Compl. at ¶¶ 28-31. Despite that Titan was a corporation formed under the laws of Illinois and that Lichtenstein, an attorney, was a director of the corporation, Titan failed to observe corporate formalities and was undercapitalized. Id.

[2] These representations proved to be false. Id.

FCIG sent to Titan was on FCIG letterhead that listed FCIG's District of Columbia address. Id. at ¶¶ 5-6. Moreover, Titan official (and Lichtenstein co-conspirator) Charles Knott visited Eisenberg in the District of Columbia to offer assurances to FCIG of Titan's bona fides. Id. at ¶ 8. Eisenberg also received regular telephone calls at FCIG's District of Columbia offices from Titan officials Charles Knott, Milan Martinic, Lichtenstein, and co-conspirator IFX Markets, Ltd.'s Christopher Cruden, during which some of the misrepresentations alleged in the Complaint were made. Id. at ¶¶ 4-5; See Amend. Compl. at 26-27, 37-38.

After conducting business with Titan for approximately six years, and after investors associated with FCIG invested approximately $5 million with Titan, Titan's foreign currency investment scheme was revealed to be a sham and FCIG demanded return of its funds. Amend. Compl. at ¶ 34. In late 2003 and early 2004, Lichtenstein assured FCIG that its funds would be returned during telephone calls that took place in the District of Columbia. Id. at ¶¶ 37-38. On November 19, 2003, FCIG sent Lichtenstein instructions for returning the funds to FCIG's District of Columbia bank account via wire transfer. Eisenberg Aff. at ¶ 9. In addition, on January 14, 2004, Lichtenstein sent a facsimile to Eisenberg in the District of Columbia attaching a deposit slip that allegedly indicated that funds were available to return to FCIG. Amend. Compl. at ¶ 39. In reliance on Lichtenstein's representations regarding the return of FCIG's funds, FCIG refrained from filing suit to enforce its rights. Id. at ¶¶ 39, 41. Indeed, because FCIG deferred filing suit based upon Lichtenstein's representations, Titan and its officials were given sufficient time to spend and otherwise deplete the invested funds and other assets, rendering potential judgments uncollectible. Id. at ¶ 41. To date, none of FCIG's funds have been returned. Id. at ¶ 34, 38.

## Argument

### I.    Standard of Review

When a court considers a motion to dismiss, factual allegations in the Complaint must be taken as true and all factual discrepancies presented by the affidavits presented in conjunction with the motion should be resolved in the plaintiff's favor.  See Crane v. New York Zoological Society, 894 F.2d 454, 456 (D.C. Cir. 1990).  In addition, Lichtenstein, as the party seeking to transfer venue, bears the "heavy burden" of proving that the plaintiffs' choice of forum is improper and should be disturbed.  See Thayer/Patricof Education Funding, LLC v. Pryor Resources, Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (denying motion to transfer venue).

Here, the allegations in the Amended Complaint and the facts set forth in Eisenberg's affidavit establish that Lichtenstein is subject to this Court's personal jurisdiction based upon his contact with the District of Columbia in connection with the particular transactions at issue.  In addition, Lichtenstein has failed to meet his burden of proving that the relevant private and public interest factors warrant transferring this case to the Northern District of Illinois.

### II.    Lichtenstein Is Subject to Personal Jurisdiction
### in the District of Columbia

#### A.    Lichtenstein is Subject to Personal Jurisdiction Pursuant to the District of Columbia Long-Arm Statute Based Upon His Own Contacts with the District of Columbia

The District of Columbia long-arm statute provides for specific jurisdiction over non-resident defendants who, either individually or through an agent: (1) transact business in the District; (2) contract to supply goods or services in the District; (3) cause tortious injury in the District of Columbia by an act or omission in the District of Columbia; or (4) cause injury in the District of Columbia by an act or omission outside the District of Columbia if the person regularly does business or derives revenue here for claims arising from the enumerated contacts.

See D.C. Code § 13-423.   The first prong of this statute has been held to extend to the limits of the due process clause, and thus jurisdiction can be exercised over a defendant who has "minimum contacts" with this state so long as the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice."  See Reiman v. First Union Real Estate Equity and Mortgage Investments, 614 F. Supp. 255, 256 (D.D.C. 1985).  Indeed, even a "single act may be sufficient to bring a defendant within the purview of the statute." Id. at 257.

Here, Lichtenstein is subject to jurisdiction pursuant to both the first and third prongs of this statute.   Lichtenstein "transacted business" here by regularly contacting Eisenberg and FCIG in the District of Columbia and he "caused injury" to FCIG in the District of Columbia by intentionally misrepresenting the true nature of the Titan program, which resulted in economic harm to FCIG in the District.

## 1.    Lichtenstein Transacted Business in the District of Columbia

As for the "transacting business" prong, the United States Supreme Court has held that, given the advance of technology in today's business world, a defendant can "transact business" in a state without actually ever being physically present there.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).  Indeed, mail and wire communications often are the only methods by which business is transacted between individuals and entities in different states. Id.; Gorman v. Ameritrade, 293 F.3d 506, 512 n.4 (D.C.Cir. 2002).  Thus, so long as the defendant's actions are such that he could "anticipate being haled into court" in a forum to which he has directed contact, the exercise of jurisdiction over him there comports with due process.  World-wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Lichtenstein asserts that jurisdiction is nonetheless improper here because his contacts with the District of Columbia were "random" and "fortuitous," and thus not substantial enough

to confer jurisdiction under the due process clause, especially given that Eisenberg requested some of the phone calls. Mot. at 9-12. These arguments are misplaced.

First, rather than "random," Lichtenstein's contacts with the District of Columbia (individually and through his co-conspirators) were both regular and systematic and evidenced an intent to do business with FCIG in the District of Columbia. Despite that FCIG is a Maryland limited liability company, it has operated from 1700 Wisconsin Avenue, NW in the District of Columbia since its inception. See Eisenberg Aff. at ¶ 3. Indeed, most (if not all) contact between FCIG and Lichtenstein and FCIG and Titan took place in the District, and Lichtenstein initiated some of those communications. Id. at ¶¶4-8. The following list illustrates the extent of the numerous regular contacts between Lichtenstein, Titan and FCIG in the District of Columbia:

- The majority (if not all) telephone communications from Titan and Lichtenstein to FCIG were made to a telephone number with at 202 area code and received by FCIG in the District of Columbia. Id. at ¶¶ 4-5.

- Lichtenstein and Eisenberg regularly spoke on the telephone regarding the bona fides of the Titan program and, later, the return of FCIG's funds. Lichtenstein initiated many of these phone calls to Eisenberg at his District of Columbia telephone number. Amend Compl. at ¶¶ 26, 37; Eisenberg Aff. at ¶ 4.

- All facsimile transmissions from FCIG to Titan and Lichtenstein, and all facsimile transmissions from Titan and Lichtenstein to FCIG, were sent or received on a facsimile machine located inside the District of Columbia and that is connected to a phone number with a 202 area code. Id. at ¶ 6.

- All correspondence that Titan received from FCIG was sent on FCIG letterhead that listed its District of Columbia address. Eisenberg Aff. at ¶ 7.

- Titan sent monthly account statements to FCIG in the District of Columbia, all of which listed FCIG's District of Columbia address. Id. at ¶ 6.

- Titan sent wires to FCIG's District of Columbia bank account and FCIG sent wires from its District of Columbia bank account to Titan. Id. at ¶ 10.

7

- When requesting return of its funds, FCIG provided Lichtenstein wiring instructions for return of the money into a District of Columbia bank account. Id. at ¶ 10.[3]

Thus, each time that Lichtenstein or any other Titan official called FCIG, sent a fax to FCIG, sent account statements to FCIG, sent a wire transfer to FCIG or reviewed any correspondence from FCIG, they knew that they were transacting business with a company located in the District of Columbia.[4]  Lichtenstein and his co-conspirators had to affirmatively and purposely dial a District of Columbia phone number or write to a District of Columbia address in order to communicate with FCIG.  Despite that FCIG was formed in Maryland, Lichtenstein and Titan continuously and systematically transacted business with FCIG in the District of Columbia.[5] Such contacts are sufficient to subject Lichtenstein to jurisdiction under the first prong of the District of Columbia long-arm statute.

---

[3] As explained above, contrary to Lichtenstein's assertions, FCIG is not relying on one facsimile or a few telephone calls as the basis for this Court's jurisdiction. Mot. at 9-10. Lichtenstein's and Titan's contacts with FCIG in the District of Columbia were numerous and took place over a period of several years. Such "systematic" contact is precisely the type of activity that confers jurisdiction over a non-resident defendant.

[4] Lichtenstein's personal jurisdiction analysis conspicuously overlooks that Titan had repeated and systematic contact with FCIG, including sending and receiving funds to and from FCIG's District of Columbia bank account. FCIG's Amended Complaint specifically asserts that Titan was a sham corporation and thus its "corporate veil" should be pierced, making Lichtenstein liable for Titan's acts. Amend. Compl. At ¶¶ 28-31, 44-47. It follows that Titan's acts should be attributable to Lichtenstein as one of Titan's principals.

[5] Lichtenstein relies on Chung v. NANA Dev. Corp., 783 F.2d 1124 (4th Cir. 1986) and United States v. Ferrara, 54 F.3d 825 (D.C. Cir. 1995), for the proposition that Lichtenstein's contacts were not substantial enough to warrant exercising jurisdiction. Mot. at 9-10. In Chung, the defendant's only contact with the forum was a single mailing to the plaintiff, which it only made at plaintiffs' request. Similarly, in United States v. Ferrara, 54 F.3d 825 (D.C. Cir. 1995), the District of Columbia Circuit declined to exercise jurisdiction over a non-resident defendant based upon one responsive mailing to a federal instrumentality. Here, as explained above, Lichtenstein and his co-conspirators had regular contacts with FCIG in the District of Columbia, not merely one mailing into the forum. Lichtenstein's reliance on Chung and Ferrara is thus misplaced.

Second, Lichtenstein claims that his contacts into the forum should not subject him to jurisdiction because Eisenberg initiated or requested some of the phone calls. Although it is true that Lichtenstein may have returned some phone calls at Eisenberg's request, Lichtenstein called Eisenberg many times throughout the course of their dealings regarding the Titan program. Amend. Compl. at ¶¶ 3, 26, 37, 49; Eisenberg Aff. at ¶ 4.[6] Lichtenstein and his co-conspirators voluntarily sought FCIG's business and chose to make material misrepresentations to FCIG during their regular communications with FCIG in the District of Columbia. FCIG is thus not relying on its own solicitation or contacts with Lichtenstein and Titan as the basis for personal jurisdiction, but directs the Court's attention to the volume and nature of Lichtenstein and his co-conspirators' purposeful contacts here connected to this fraudulent scheme.[7]

Lichtenstein's reliance on Bank of Cape Verde v. Bronson, 869 F.Supp. 21 (D.D.C. 1994) for the proposition that his contacts with the District of Columbia are insufficient to confer jurisdiction over him is misplaced. Mot. at 10-12. In the court's four-paragraph analysis of the personal jurisdiction issue in Bank of Cape Verde, it simply determined that jurisdiction was not proper because the defendant's only contact with the District of Columbia was sending opinion letters and making a few telephone calls to an embassy in the District of Columbia at the

---

[6] This allegation must be construed to be true for purposes of this motion and alone is sufficient to subject Lichtenstein to personal jurisdiction. See Crane v. New York Zoological Society, 894 F.2d 454, 456 (D.C. Cir. 1990).

[7] Lichtenstein cites Reiman v. First Union Real Estate Equity & Mortgage, 614 F. Supp. 255, 257 (D.D.C 1985), for the proposition that if Eisenberg requested or initiated a call, such contacts should not factor into the jurisdictional analysis. Mot. at 11. However, in Reiman, the court did not determine whether the plaintiff's actions would subject the defendant to jurisdiction. The court maintained jurisdiction over the action because it found that there were too many factual discrepancies to warrant granting the motion to dismiss without determining whether Reiman's contacts with the Defendants would be factored into the personal jurisdiction analysis. Thus, if anything, Reiman supports retaining jurisdiction here given the discrepancies between Lichtenstein's and FCIG's allegations.

9

plaintiff's request. Id. The court held that because the only contacts asserted as basis for personal jurisdiction were a result of requests from the plaintiff to send the documents/make the calls to the District of Columbia, the complaint would be dismissed. Id. Here, Lichtenstein was an active participant in Titan's business and affirmatively and voluntarily took acts directed to the forum. Indeed, nowhere in Lichtenstein's affidavit is any denial that Lichtenstein initiated many of the telephone calls, nor is there any statement under oath that Lichtenstein only contacted Eisenberg at Eisenberg's request. Because Lichtenstein has offered no evidence to support these arguments and because FCIG's Amended Complaint and Eisenberg's affidavit present facts to the contrary, the allegations in the Amended Complaint and Eisenberg's affidavit must be taken as true. See Crane, 894 F.2d at 456. Thus, given these distinguishing facts, Bank of Cape Verde does not provide Lichtenstein shelter from this court's jurisdiction.

### 2. Lichtenstein Caused Injury in the District of Columbia by an Act or Omission within the District of Columbia

Lichtenstein is also subject to jurisdiction under the third prong of the D.C. long-arm statute, which subjects persons to jurisdiction for "causing injury in the District of Columbia from an act or omission within the District of Columbia." D.C. Code § 13-423.[8] This Court and

---

[8] Lichtenstein argues that the third prong of the Long-Arm statute is inapplicable because, he asserts, FCIG does not allege that Lichtenstein committed an injurious act while physically present in the District of Columbia. Mot. at 6. In support of this argument, Lichtenstein cites Margoles v. Johns, 483 F.2d 1212 (D.C. Cir 1973), for the proposition that a single telephone call into the district is not sufficient to confer jurisdiction. However, Margoles was decided before the United States Supreme Court enunciated in Burger King that modern commercial transactions are often consummated completely through the mail and wires and thus physical presence in the forum is not required. In addition, Moncrief v. Lexington Herald-Leader Co., 807 F.2d 217 (D.C. Cir. 1986) is inapposite. In Moncrief, the plaintiff argued that the act of printing a defamatory statement occurred wherever the statement was circulated, relying on Keeton v. Hustler Magazine, 465 U.S. 770 (1984). In one brief paragraph, the Moncreif court rejected this argument because the Keeton court did not distinguish between where the "act" and where the "injury" occurs and did not further analyze the issue. Here, as explained below, both the act and the injury occurred in the District of Columbia and jurisdiction here is thus proper.

courts across the country recognize that a single phone call or facsimile into a forum that forms the precise basis for a claim of fraud or misrepresentation can give rise to personal jurisdiction in the forum in which the injury and communication occurred. See Reiman, 614 F. Supp. at 257; Neal v. Janssen, 270 F.3d 328, 333 (6th Cir. 2001) ("when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state."); Wein Air Alaska v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999) ("When the actual content of nonresident's communications with forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment, for purposes of determining whether personal jurisdiction over nonresident is constitutionally permissible under due process principles."); see also Helmer v. Doletskaya, 393 F. 3d 201, 209 (D.C. Cir. 2004) (direction of tortious conduct into a forum may confer jurisdiction in the District of Columbia if there is injury within the forum).

Here, it is the very calls from Lichtenstein to Eisenberg in the District of Columbia that caused FCIG's injury. Lichtenstein repeatedly assured FCIG through telephone calls to FCIG in the District that Titan was a bona fide entity and that Titan was taking steps to ensure compliance with all applicable statutes and regulations. Amend. Compl. at ¶¶ 26-27. Investors associated with FCIG invested an additional $3 million with Titan based upon Lichtenstein's involvement in Titan. Amend. Compl. at ¶ 24. When the Titan program was revealed to be a fraudulent scheme and FCIG requested return of its funds, Lichtenstein made further material misrepresentations to FCIG during telephone calls to Eisenberg in the District of Columbia during which he told FCIG that its funds would be returned. Amend. Compl. at ¶¶ 37-40. Lichtenstein also sent a fake deposit slip (which supposedly indicated that funds were available

11

for return to FCIG) to FCIG in the District of Columbia via facsimile. Lichtenstein's assurances caused FCIG to delay filing suit, which delay rendered the judgment that FCIG eventually obtained against Titan and Martinic virtually uncollectible. Amend Compl. at ¶¶ 38-41. Because these communications form the basis, in part, for FCIG's fraud claims, Lichtenstein is subject to personal jurisdiction here because FCIG was injured (with losses exceeding $5 million) by an act within the District of Columbia (the fraudulent misrepresentations made during the telephone calls and facsimile transmissions).

On this point, Lichtenstein relied on Helmer v. Doletskaya, 393 F. 3d 201, 209 (D.C. Cir. 2004) in his original motion to dismiss. However, apparently conceding that Helmer actually supports jurisdiction, Helmer is nowhere cited in Lichtenstein's motion to dismiss the amended complaint. In Helmer, the court held that the fraud count must be dismissed, reasoning that the place of economic injury is where the injurious act takes place, and because the fraudulent acts (and thus the injury) occurred in Russia (where Helmer was at all times residing), jurisdiction was not proper. Id. Here, the misrepresentations complained of were made during telephone calls and facsimiles that Lichtenstein directed to the District of Columbia. In addition, unlike Helmer, Eisenberg was in the District of Columbia when he received these communications. Thus, according to Helmer's reasoning, jurisdiction under this prong of the D.C. long–arm statute is proper because both the act and the injury took place in the District of Columbia.

### B.    Lichtenstein is also Subject to Jurisdiction Here Based on His Co-Conspirators' Contacts with the District of Columbia

Setting aside the allegations respecting Lichtenstein's regular contact with FCIG in the District of Columbia, jurisdiction is proper based upon FCIG's conspiracy allegations. It is well-settled that a defendant is subject to this Court's specific jurisdiction based on his involvement in a conspiracy if the plaintiff alleges: 1) the existence of a conspiracy; 2) the non-resident

defendant's participation in the conspiracy; and 3) an injury-causing act of the conspiracy within the forum's boundaries. Edmond v. United States Postal Service, 949 F.2d 415, 425 (D.C. Cir. 1991). In Edmond, plaintiffs sued certain postal inspectors, officers, government attorneys and witnesses claiming that the defendants had conspired to violate plaintiffs' constitutional rights arising from a wrongful arrest and subsequent detention in the District of Columbia. Id. The Court of Appeals held that although the plaintiffs had only alleged that two of the defendants (the arresting officers) had caused plaintiffs' injury in the District of Columbia, the remaining defendants also could be subject to jurisdiction if the plaintiff could make a showing that the remaining defendants were part of a conspiracy of which the wrongful arrest and detention in D.C. were a part. Id.

Moreover, when the allegations respecting the conspiracy and the overt acts within the forum by a co-conspirator remain uncontroverted by the affidavits presented in support of the motion to dismiss, the allegations detailing the conspiracy are taken as true. See Mandelkorn v. Patrick, 359 F. Supp. 692, 696-697 (D.D.C. 1973); Dooley v. United Technologies Corp., 786 F. Supp. 65, 80 (D.D.C. 1992). As in Mandelkorn and Dooley, FCIG has specifically alleged that there was a conspiracy of which Lichtenstein was a part, and that Lichtenstein and his co-conspirators caused injuries to FCIG in the District of Columbia. Paragraphs 57-58 of the Amended Complaint allege that there was a conspiracy to induce FCIG to invest millions of dollars in a fraudulent foreign currency investment scheme. In addition, inter alia, paragraph 58 of the Amended Complaint specifically asserts that Lichtenstein participated in the conspiracy to bilk FCIG out of millions of dollars. Finally, FCIG's Amended Complaint claims that there were overt acts in furtherance of the conspiracy within the forum. See Amend. Compl. at ¶¶ 1, 3, 9, 15, 26, 37, 57-58 (FCIG at all times conducted business with Titan and Lichtenstein from the

13

District of Columbia, Titan sent brochures containing misrepresentations to FCIG in the District of Columbia, and Titan, Lichtenstein and a representative of IFX regularly directed misleading phone calls to Eisenberg in the District of Columbia).[9]  FCIG has thus met its prima facie burden of establishing that Lichtenstein is subject to jurisdiction here based upon conspiracy jurisdiction.

Lichtenstein asserts that FCIG fails to plead a "common scheme" between the co-conspirators because the scheme was ongoing prior to Lichtenstein's involvement.  Mot. at 14. However, although FCIG does not concede that Lichtenstein had no involvement with Titan prior to 2002 (as evidenced by Lichtenstein's testimony that he first met Martinic in 1998 or 1999), that Lichtenstein joined an ongoing conspiracy does not relieve Lichtenstein of liability or defeat an allegation of conspiracy.  See Youming Jin v. Ministry of State Security, et al., 335 F.Supp. 2d 72, 80 (D.D.C. 2004) ("a plaintiff need not prove that each participant in a conspiracy knew the exact limits of the illegal plan or the identity of all participants therein.  The conspirators must share the general conspiratorial objective, but they need not know all the details of the plan . . . or possess the same motive.")(citations omitted).  Indeed, if Lichtenstein's assertions were true, any potential co-conspirator could simply wait until a conspiracy had

---

[9] Lichtenstein argues that FCIG has not properly plead this element because the allegations regarding Lichtenstein's acts within the forum are not "substantial contacts" here and because his co-conspirators acts within the District of Columbia took place before Lichtenstein was involved in the conspiracy.  Mot. at 15.  First, as discussed above, Lichtenstein has contacts with the District of Columbia sufficient to subject him to jurisdiction here pursuant to the District of Columbia long-arm statute.  Second, the Amended Complaint and the Eisenberg affidavit evidence that Titan and its agents' acts with the forum were regular, systematic and continued over a course of several years.  Contrary to Lichtenstein's assertions, FCIG does not simply rely on a few acts by Lichtenstein's co-conspirators that occurred before he was a director of Titan as a basis for conspiracy jurisdiction.  Throughout the course of the Titan scheme, Lichtenstein and/or his co-conspirators continuously made misrepresentations to FCIG through telephone calls, mailings, wires and visits to the District of Columbia.  Such activity is precisely what "conspiracy jurisdiction" holds subjects a co-conspirator to jurisdiction within a forum.

begun, and then join the conspiracy later to avoid legal repercussion. Such a result is not the law. Indeed, that Lichtenstein joined an ongoing conspiracy only adds to his liability. See also Havoco of America, Ltd. v. Shell Oil Co., 626 F.2d 549, 554 (7th Cir. 1980); Savannah College of Art & Design, Inc. v. School of Visual Arts of Savannah, Inc., 464 S.E.2d 895, 896 (Ga. Ct. App. 1995); Hayes v. Schweikart's Upholstering Co., 402 S.W.2d 472, 481 (Tenn. Ct. App. 1965) (holding that a co-conspirator is "liable for all damages naturally flowing from any wrongful act of a co-conspirator in carrying out the common design"). Moreover, the Amended Complaint alleges Lichtenstein's involvement as Martinic's business partner in other ventures, his activities as a Titan director, in which role he dealt with investors and coordinated "potential revenue streams" for Titan with IFX. See Amend. Compl. at ¶¶ 22-43. Such allegations are sufficient to infer the existence of a conspiracy. See Youming Jin, 335 F.Supp. 2d at 82 ("in most cases the court will have to infer conspiracy from indirect evidence."). In sum, FCIG has met its prima facie burden of alleging the "existence of a conspiracy."

Lichtenstein asserts that Naartex Consulting Corp. v. Wyatt, 722 F.2d 779 (D.C. Cir. 1983) supports dismissal. Not so. In Naartex, the court declined to assert jurisdiction over several defendants who had no contacts with the forum, and whom the plaintiff had simply alleged were "co-conspirators." Id. at 787. Here, FCIG has alleged far more than simply that Lichtenstein was a "co-conspirator." The Amended Complaint sets forth the nature of the conspiracy and details of Lichtenstein's role therein. Thus, the specificity requirement is met.

In addition, Lichtenstein's assertion that the requirements of the due process clause have not been satisfied because he had no "knowledge, approval or discretion" over the overt acts within the forum is misplaced for two reasons. First, as evidenced by Lichtenstein's role as a director of Titan, he had (or should have had) knowledge of Titan's fraudulent activities directed

to FCIG in the District of Columbia. Lichtenstein's own motion reflects his knowledge of Titan's activities, in that he claims that he communicated with FCIG only as part of his representation of Titan and Martinic. Mot. at 10-12. Further, as a Titan director, Lichtenstein had a duty to ensure that Titan was operating legally and not defrauding its clients. Not only did he fail to fulfill this duty, but he had knowledge that Titan was engaging in multi-million dollar transactions with an LLC based in the District of Columbia and that Titan was regularly communicating with FCIG in furtherance of the fraudulent scheme. FCIG has set forth facts to satisfy this "mens rea" aspect of conspiracy jurisdiction. Second, in Youming Jin v. Ministry of State Security, et al., 335 F.Supp. 2d 72 (D.D.C. 2004) (which Lichtenstein cites as support for this position) the plaintiff sought to subject the defendant to jurisdiction based upon acts "by alleged co-conspirators about which the plaintiffs fail to show the defendant had any knowledge, approval or discretion." Id. at 83.[10] Here, as explained above, Eisenberg has shown facts from which Lichtenstein's knowledge of overt acts can be inferred, especially given that Lichtenstein himself participated in some of those acts. Thus, given Lichtenstein's direct contacts with FCIG in the District of Columbia, Lichtenstein's "lack of purposeful availment" argument is without merit.

**III.    Venue is Proper in the District of Columbia**

Lichtenstein asserts that venue is improper in the District of Columbia pursuant to 28 U.S.C. § 1391 because, he alleges, the events giving rise to FCIG's claims occurred in Illinois rather than the District of Columbia. Although some of the acts complained of occurred in Illinois (such as the allegations regarding Lichtenstein's formation of and involvement in sham

---

[10]  In addition, in Youming Jin, the court did not find that it lacked personal jurisdiction over the defendant, but simply permitted the plaintiff to conduct jurisdictional discovery on the "purposeful availment" requirement.

corporation Titan), the bulk of the misrepresentations and actions in furtherance of the conspiracy took place in the District of Columbia and had injurious effects here. The Amended Complaint is replete with allegations regarding this action's connection with the District of Columbia. See Amend. Compl. at 1-3, 8, 11, 15, 26, 37, 38, 58. As explained above, that Eisenberg is a resident of Maryland and FCIG is a Maryland limited liability company does not matter for purposes of the jurisdiction and venue inquiry: Titan, Lichtenstein and their co-conspirators purposely and regularly directed tortious actions to FCIG in the District of Columbia. Thus, "a substantial part of the events" giving rise to this action occurred within this district, and venue here is thus proper. Lichtenstein's motion to dismiss for improper venue should be denied.

### IV.    There is No Basis to Transfer this Action to the Northern District of Illinois

Lichtenstein next asserts that this action should be transferred to the Northern District of Illinois because this action originally could have been brought in Illinois and "considerations of convenience and the interests of justice" weigh in favor of transfer. Mot. at 18. When a party seeks to transfer venue, it bears a "heavy burden" of demonstrating that the plaintiffs' choice of forum should be disturbed. See Thayer/Patricof Education Funding, LLC v. Pryor Resources, Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (denying motion to transfer venue). The moving party must demonstrate that the "private interest" and "public interest" factors warrant transfer. Id. The pertinent private interests are: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claims arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. Id. The pertinent public interest factors are: (1) the transferee's familiarity with the governing laws; (2)

the relative congestion of the calendars and potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. Id.

Although FCIG originally could have asserted its claims in Illinois, there is no reason that FCIG's choice of venue should be disturbed. As explained below, FCIG's choice should be given deference given the District of Columbia's ties to the controversy. In addition, Lichtenstein has failed to meet his burden of showing that the District of Columbia will be less convenient to the parties and witnesses, and that sources of proof are more easily accessible in Illinois. Thus, Lichtenstein's motion to transfer should be denied because the inconvenience to FCIG and its potential witnesses, and the interests of justice in maintaining this action here weigh against transfer.

### A.  Private Interest Factors Warrant Retaining Venue in the District of Columbia

### 1.  Plaintiffs' Choice of Forum

It is well-settled that the plaintiffs' choice of forum should be given deference and should not be disturbed unless the other factors overwhelmingly warrant transfer. See Thayer, 196 F. Supp. 2d at 31 (plaintiff's choice of forum is a "paramount consideration.").[11] Lichtenstein argues that no deference to FCIG's choice is warranted because District of Columbia has no ties to the controversy. Not so. As explained above, many tortious actions took place in the District

---

[11]  All of the cases cited by Lichtenstein that grant the defendant's request to transfer are easily distinguishable because the proposed transferee forum had significant geographic ties to the subject matter of the controversy. In Sierra Club v. Flowers, 276 F. Supp. 2d 62 (D.D.C. 2003), the controversy concerned permits that were issued for mining in the Everglades wetlands of Florida. The controversy in Airport Working Group of Orange County v. U.S. Dep't of Defense, 226 F. Supp. 2d 227 (D.D.C. 2002) centered around an air station located in Orange County, CA. Similarly, in Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13 (D.D.C 1996), the controversy concerned operation of a dam and reservoir in a national park in Colorado. Here, conversely, this controversy does not concern a park, landmark or building that is geographically located in Illinois. These cases are thus inapposite.

of Columbia and form the "heart" of FCIG's complaint. It is of little, if any, significance that
FCIG was formed under the laws of Maryland or that Eisenberg resides there. FCIG operated
from the District of Columbia, used a bank account in the District of Columbia, communicated
with Lichtenstein and Titan almost exclusively from its District of Columbia offices and
numerous acts in furtherance of the conspiracy took place in the District of Columbia. See
generally, Eisenberg Aff. Indeed, Lichtenstein now admits that FCIG was "allegedly often doing
business and communicating from its DC office." Mot. at 20. Thus, because the other factors do
not significantly tilt the balance in favor of transfer, FCIG's choice of forum should be given
deference.

### 2.     Defendants' Choice of Forum

Lichtenstein's primary argument respecting why Illinois is a more appropriate forum is
that Lichtenstein has no significant ties to the District of Columbia and litigating here would
result in hardship to him. Mot. at 21.[12] However, Lichtenstein fails to cite any cases holding that
hardship on the defendant in plaintiffs' forum warrants disturbing that choice. Surely every non-
resident defendant would prefer to litigate in their home state.[13] However, as this Court has
made clear, the forum's ties to the plaintiff and to the events giving rise to the cause of action are

---

[12] Lichtenstein also argues that Illinois substantive law will likely apply to these claims. Mot. at
16. However, given the connection of the facts giving rise to these claims to the District of
Columbia, District of Columbia law will likely apply to the majority of the Counts in the
Amended Complaint. However, even if Illinois law applies, the common law claims asserted
here are not complicated and this Court is fully capable of applying Illinois common law to the
facts of this case. See Thayer, 196 F. Supp. 2d at 36 (noting that federal courts are "often called
upon to apply state law, especially on common legal issues such as ...misrepresentation [and]
fraud.").

[13] Lichtenstein asserts that he "has no significant ongoing ties with the District of Columbia, but
he has significant ties to Illinois." Mot. at 21. The opposite can be said of Eisenberg and FCIG,
canceling out any merit this assertion may have had. Moreover, because FCIG and Eisenberg
are the plaintiffs and they have significant ties to the District of Columbia, their choice of forum
should be given preference.

the proper venue inquiries. Here, as explained above, FCIG chose this forum because of its connection to the District of Columbia and because many of the events giving rise to the complaint happened here. Defendant's preference to litigate at home thus should not be considered in determining the most appropriate venue.

### 3.    Whether the Claims Arose Elsewhere

Lichtenstein continues to assert that the claims arose in Illinois, where Titan was incorporated and where Lichtenstein practiced as a lawyer. Mot. at 22. However, as explained repeatedly above, many of the acts in furtherance of the conspiracy to bilk FCIG out of millions of dollars took place and had direct effects in the District of Columbia.[14] Because the claims did not wholly "arise" in Illinois, this factor militates toward maintaining venue in the District of Columbia.

### 4.    The Convenience of the Parties

Not surprisingly, Lichtenstein argues that litigating in the Northern District of Illinois is more convenient for him, and because Eisenberg does not reside in the District of Columbia, this factor favors transfer. Mot. at 22-23. Lichtenstein overlooks that Eisenberg's residence in Maryland is located in the Washington metropolitan area, only approximately 31 miles from this Court (and approximately 678 miles from the Northern District of Illinois).[15] This Court is thus an exponentially more convenient forum for FCIG. Moreover, Lichtenstein's reference to

---

[14]   Lichtenstein claims that it is "significant" that FCIG chose to sue Titan and Martinic in Wisconsin. Mot. at 22. However, Lichtenstein overlooks that FCIG originally filed suit against Titan, Martinic and other co-conspirators in this Court in 2004 and only dismissed that action after determining that settlement and/or collecting a potential judgment would be more efficiently pursued in Wisconsin where Martinic lived. The choice is thus hardly "significant."

[15]   Eisenberg's place of business and FCIG's District of Columbia offices are approximately only 4 miles from this Court (and approximately 699 miles from the proposed transferee forum).

FCIG's litigation in Wisconsin and relationship with a Wisconsin law firm is misplaced.[16]

Lichtenstein bears the burden of proving that this case should be litigated elsewhere and it should

not matter that FCIG has previously pursued litigation in other states.   Because Lichtenstein has

not demonstrated that litigating here would be more inconvenient for him than it would be for

FCIG to litigate in Illinois, this factor weighs in favor of maintaining venue here.[17]

### 5.    Convenience of the Witnesses

This Court has held that although the convenience to the witnesses is important, "to

support its request for transfer under [this] section, a moving party must demonstrate (through

affidavits or otherwise) what a non-resident witness will testify to, the importance of the

testimony to the issues in the case, and whether that witness is willing to travel to a foreign

jurisdiction." Thayer, 196 F. Supp. 2d at 33.[18]   Falling far short of his burden, Lichtenstein

simply avers that the "majority of" and "numerous" key witnesses (only four of which he

specifically identifies) reside in or near Illinois.  Mot. at 23.  Despite that FCIG raised this issue

in its opposition to Lichtenstein's original motion to dismiss, Lichtenstein still does not set forth

---

[16]   FCIG correspondingly notes that Lichtenstein obviously has counsel here in the District of
Columbia.

[17]   Although Lichtenstein is a sole practitioner with only one receptionist employee, given the
electronic filing requirements of this Court and the possibility of participating in hearings via
telephone, Lichtenstein will unlikely need to travel to the District of Columbia other than for
trial.  Because trial in this case will not be scheduled for some time, Lichtenstein has plenty of
time to ensure that he reserves that time to come here rather than book commitments for his
clients' cases.  Lichtenstein's argument that his clients will be prejudiced is thus unavailing and
does not warrant transfer.

[18]   Lichtenstein cites Chung v. Chrysler Corp., 903 F. Supp. 160 (D.D.C. 1995) in support of his
position.  However, in Chung, the only connection to the forum was that the plaintiffs' decedent
and a key witness had attended school in the District and a witness was currently residing there.
The plaintiff resided in Hawaii, the injury took place in Mexico and the defendants and other
witnesses were located in New York.  Here, as explained above, there is a much stronger nexus
between this controversy and the forum than there was in Chung.  Chung is thus inapposite.

21

the substance of these witnesses' testimony, the importance of the testimony or that the witnesses will be unwilling to testify here. Nor does Lichtenstein contest that such a showing is necessary. Because Lichtenstein wholly fails to set forth the information required to determine in which direction this factor weighs, Eisenberg need not set forth contrary information to demonstrate that venue here is more convenient for potential witnesses.

However, despite that Eisenberg has no burden here, the convenience to Eisenberg's witnesses of maintaining venue here overwhelmingly favors denial of Lichtenstein's transfer request. As demonstrated by the chart below, the majority of Eisenberg's potential witnesses live either in the Washington Metropolitan Area or on the East Coast, far closer to Washington, DC than to Illinois.

| Potential Witness | Connection to Subject Matter of Complaint | City and State of Residence or Principal Place of Business |
|---|---|---|
| Barry Taff | Investor associated with FCIG | Washington, DC |
| Anne Canfield | Investor associated with FCIG | Washington, DC |
| Glen Armand | Investor associated with FCIG | Warrenton, VA |
| Joel Levin | Investor associated with FCIG | Baltimore, MD |
| William Kolodner | Investor associated with FCIG | Baltimore, MD |
| Susan Kolodner | Investor associated with FCIG | Baltimore, MD |
| Harry Gildenhorn | Investor associated with FCIG | Rockville, MD |
| Chester Gordon | Investor associated with FCIG | Silver Spring, MD |
| Randi Lynn Cohen | Investor associated with FCIG | Potomac, MD |
| Thomas Birnbach | Investor associated with FCIG | Potomac, MD |
| Jan Eisenberg | Investor associated with FCIG | Gaithersburg, MD |

| Mark Eisenberg | Investor associated with FCIG | Baltimore, MD |
| Harry Newton | Investor associated with FCIG | New York, NY |
| Jeff Gordon | Worked with FCIG on Titan Program | Bethesda, MD |
| Robert Tamiso | Familiar with Foreign Currency Investments; Consulted by FCIG Regarding Titan program | New York, NY |
| Richard Harris | Merrill Lynch Broker who met with Eisenberg and Titan Official Knott in the District of Columbia | Washington, DC |
| Todd Kingsley | Merrill Lynch Broker who met with Eisenberg and Titan Official Knott in the District of Columbia | Washington, DC |
| Dennis Joyce | Independently invested in Titan's foreign currency program | Neptune Beach, FL |
| Anthony Versage | Performed Information Technology work for Titan and Martinic | New Jersey |
| Christopher Cruden | IFX Markets, Ltd. official who regularly contacted Eisenberg and Lichtenstein regarding the Titan Program | London, England |

See Eisenberg Aff. at ¶ 11.[19]  As explained above, the convenience to these twenty witnesses in maintaining venue in the District of Columbia outweighs the convenience to the three witnesses

---

[19] Lichtenstein maintains that "it is not clear that any significant witnesses reside in or around the District of Columbia.  Although there are presumably investors that reside in or near the District of Columbia, they had no direct dealings with any of the defendants and thus, the significance of the testimony is unclear."  Mot. at 23-24.  Not so, as victims of the Titan scheme, these investors can provide this Court with essential information regarding their losses in the Titan scheme.  In addition, Lichtenstein offered at least one these investors, Harry Newton, assurances that the funds would be returned.  See Lichtenstein Depo. Tr. at 169, Exhibit B.

Lichtenstein identifies as available in the Northern District.[20]  In addition, Lichtenstein has presented no evidence to indicate that the three witnesses he identifies would be unwilling to travel to the District of Columbia.  Given Lichtenstein's failure to meet his evidentiary burden and the number of potential witnesses that FCIG has identified who work or reside in closer proximity to this Court, this "important" factor weighs heavily in favor of maintaining this action in the District of Columbia.

### 6.     Ease of Access to Sources of Proof

Lichtenstein's argument that this factor warrants transfer is misplaced for two reasons. First, FCIG has expended significant resources investigating the fraudulent scheme and has gathered documents from numerous non-party sources in various geographic locations (including Titan and Martinic's bank account records), all of which are currently located in the Washington metropolitan area.   Second, this Court has recognized that given "modern technology," the location of documents "is less important" in considering a motion to transfer.  See Thayer, 196 F. Supp. 2d at 36.  Because FCIG's records are located in close proximity to this forum and modern technology permits documents to be produced and examined almost anywhere, this factor warrants deferring to FCIG's choice of forum.

---

[20]  Lichtenstein specifically identifies four witnesses, one of whom is Martinic's wife, Kathleen Martinic. However, Lichtenstein's assertion that Ms. Martinic resides in or near Illinois is likely no longer accurate.  A recent document filed in the Martinics' divorce action stated that Ms. Martinic intended to remove herself and her children to Washington State on or about August 1, 2005.  See Case No. 04-FA-000745 in the Circuit Court for Walworth County, Wisconsin.  This filing thus indicates that she will not be within the proposed transferee forum's subpoena power. Despite that FCIG's response to Lichtenstein's original motion raised this point, Lichtenstein continues to assert that Mrs. Martinic resides in or near Illinois.

**B.**     **Public Interest Factors**

**1.**     **Transferee's Familiarity with the Governing Laws**

Lichtenstein asserts that pursuant to the District of Columbia's choice of law rules, the "law of the state with the most significant relationship to the matters at issue" will govern. Mot. at 19. As explained above, many of the operative facts occurred in the District of Columbia and thus District of Columbia law should apply. However, even if Illinois law applies, this Court has held that federal courts are equally adept at applying the common law of other states, including claims of fraud. Thayer, 196 F. Supp. 2d at 37 (holding that application of another state's common law does not alone warrant transfer to that state). Application of another state's laws thus does not warrant transfer to Illinois.

**2.**     **The Relative Congestion of the Calendars of the Transferor and Transferee Courts**

Contrary to Lichtenstein's assertion that "there is nothing to indicate that the calendar of the transferee district is any efficient in the disposition of its docket than this district," judicial caseload statistics from the Administrative Office of the U.S. Courts state otherwise. Mot. at 25. For example, in 2004, the number of cases filed in the Northern District of Illinois exceeded the number filed in this Court by approximately two-thirds. See Exhibit C (In 2004, there were 10,584 cases filed in the Northern District of Illinois, while only 3,121 cases were filed in the U.S. District Court for the District of Columbia). In addition, in 2004 each Judge in the proposed transferee District considered approximately 55 more cases than the Judges in this District. Id.[21] This factor thus militates toward keeping this action in the District of Columbia.

---

[21] That the Northern District of Illinois may appear to dispose of cases more quickly is not a valid reason to deny FCIG its right to have its claims heard by the court and the jury that it chose.

### 3. Local Interest in Decided Local Controversies at Home

As explained above, this is not a local Illinois controversy.[22] This action concerns fraudulent activities that took place and had injurious effects in the District of Columbia. This District and its residents thus have an interest in adjudicating these claims here and the motion to transfer venue should be denied.

### Conclusion

Contrary to what Lichtenstein would have this Court believe, this action is not merely some jurisdictionally defective attempt by FCIG to assert claims against Lichtenstein in a foreign forum. Lichtenstein, through his own actions and those of his co-conspirators, is subject to personal jurisdiction in the District of Columbia. In addition, FCIG purposefully chose to sue Lichtenstein in this forum and Lichtenstein did not meet his burden of proving why that choice should be displaced. For all of the foregoing reasons, FCIG respectfully requests that Lichtenstein's motion to dismiss and motion to transfer be denied.

---

[22]    The cases Lichtenstein cites in support of his position that this case is local to Illinois are easily distinguishable from the facts here. In Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1946), the United States Supreme Court affirmed dismissal of a case in New York on forum non conveniens grounds because the suit arose from a fire at a warehouse in Lynchburg, VA that resulted from an allegedly faulty Virginia delivery in violation of local Virginia ordinances. In addition, the plaintiff resided in Virginia. In Islamic Republic of Iran v. Boeing, 477 F. Supp. 142 (D.D.C. 1979), the court transferred the action because there was a related proceeding pending in the transferee forum, the witnesses, airplane wreckage, and documentary evidence were located there, and there were no operative facts in the District of Columbia. Conversely, here, plaintiffs have a connection to this forum, and many operative facts occurred in the District of Columbia. There are thus significantly more contacts with the original forum than there were in Gulf Oil or Boeing. Indeed, Lichtenstein also cites Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124 (D.D.C. 2001). Mot. at 19. In Greater Yellowstone, the court denied transfer despite that the case concerned the issuance of cattle-grazing permits in national forest land in Montana (the proposed transferee forum). Given that the facts in Greater Yellowstone appear far more "local" than the facts here and the Court nonetheless denied transfer, Lichtenstein's motion should similarly be denied.

Dated:  December 13, 2005                    Respectfully submitted,

                                             SHULMAN, ROGERS, GANDAL,
                                              PORDY & ECKER, P.A.


                                             By:  _____/s/_____
                                             Ross D. Cooper #429200
                                             11921 Rockville Pike, Third Floor
                                             Rockville, MD 20852
                                             (301) 230-5200
                                             (301) 230-2891 (fax)


                                             Attorney for Plaintiffs Lawrence Jay Eisenberg and
                                             FC Investment Group

27