IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FC INVESTMENT GROUP, L.C., et al.

    Plaintiffs

v.

LARRY B. LICHTENSTEIN, et al.,

    Defendants.

Case No. 1:05-cv-01753-RMC

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

Larry B. Lichtenstein and Larry B. Lichtenstein & Associates, Defendants herein, by and through their undersigned counsel, pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure and Local Rule 7.1, hereby file this Reply to Plaintiff's Opposition to the Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, Motion to Transfer Venue, previously filed herein, and in support thereof state:

### PRELIMINARY STATEMENT[1]

Plaintiffs – an attorney and his Maryland limited liability company – filed this lawsuit against the Defendants to recover lost investments, made on their own behalf and on behalf of unidentified non-party investors, with Titan Global Strategies, Ltd. ("Titan"), another non-party, for trading in foreign currency securities. Plaintiffs have

---

[1] For reasons that are not clear, Plaintiffs continue to include in their papers, numerous derogatory personal attacks on defense counsel. See, for instance, Plaintiffs' Opposition at p. 1 ("running the defendant 'play book' in an effort to avoid adjudication on the merits to increase FCIG's costs and bully a settlement"); Opposition at p. 1 ("gamesmanship ... imposed merely to increase FCIG's costs"). Inasmuch as defense counsel do not believe that these attacks have any place in this litigation, and are not productive or pertinent to any issue before the Court, they previously ignored such comments and will continue to do so. Obviously, counsel stands ready to provide a response should the Court desire one.

amended their Complaint in response to a Motion to Dismiss, based upon similar grounds as the instant motion, previously filed by the Defendants. Defendants have now moved to dismiss the Amended Complaint for lack of personal jurisdiction over the Defendants and for improper venue; and, alternatively argued that the United States District Court for the Northern District of Illinois is a more appropriate and convenient forum for the instant dispute and, therefore, this action should be transferred there.[2]

I. **THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS**

Plaintiffs maintain that personal jurisdiction exists under the third prong of the long-arm statute, DC Code § 13-423(a)(3), contending that Lichtenstein "caused injury to FCIG and Eisenberg in the District of Columbia by acts or omissions in the District of Columbia." (Amended Complaint, ¶5). Plaintiffs also maintain that personal jurisdiction exists under the first prong of the long-arm statute, § 13-423(a)(1), alleging that Lichtenstein "transacted business in the District of Columbia by directing regular contact to FCIG and Eisenberg in the District of Columbia." (Amended Complaint, ¶5). Finally, Plaintiffs contend that personal jurisdiction exists "based upon [Lichtenstein] and his co-conspirators' acts within the forum in furtherance of the conspiracy." (Amended Complaint, ¶5). However, each of these arguments fails.

---

[2] Notably, Defendants did not abandon their previously-raised subject matter jurisdiction argument because it was "patently flawed," out of "gamesmanship" or "to increase FCIG's costs," as asserted by Plaintiffs. Rather, Defendants did not raise their subject matter jurisdiction argument again, as Plaintiffs' Amended Complaint cured the original pleadings defects regarding subject matter jurisdiction.

### A. Personal Jurisdiction Does Not Exist Under DC Code § 13-423(a)(3), which Requires "Causing Tortious Injury in the District of Columbia by an Act or Omission in the District of Columbia"

Contrary to Plaintiffs' view, the third-prong of D.C. long-arm statute only allows for personal jurisdiction when a defendant causes tortious injury in the District of Columbia by an act or omission while <u>physically present</u> in the District of Columbia. D.C. Code § 13-423(a)(3); See also *Margoles v. Johns*, 157 U.S. App. D.C. 209, 483 F.2d 1212, 1219-20 (D. C. Cir. 1973). Plaintiffs do not allege that Lichtenstein took any action while *physically present* in the District. Thus, Plaintiffs cannot assert personal jurisdiction under the third prong of the DC long-arm statute, § 13-423(a)(3).

Plaintiffs' counter-argument is the product of their mistaken interpretation of § 13-423(a)(3) or their apparent confusion of § 13-423(a)(3) with § 13-423(a)(1). Plaintiffs argue that "[t]his court and courts across the country recognize that a single phone call or facsimile can give rise to the jurisdiction in the forum in which the injury and communication occurred". (Opposition, p. 10-11) (Citing *Reiman v. First Union Real Estate Equity & Mortgage,* 614 F. Supp. 255, 257 (D.D.C.1985); *Neal v. Janssen,* 270 F.3d 328 (6th Cir. 2001); *Wien Air Alaska v. Brandt*, 195 F.3d 208 (5th Cir. 1999)). Each of the cases cited for this proposition, however, involves long-arm "transacting business" provisions such as D.C. Code § 423(a)(1). Such "transacting business" provisions have "generally been given broad interpretation, normally limited only by due process considerations, and meaningful guidelines have been established by the Supreme Court to determine in a commercial setting the limits of due process." *Margoles,* 483 F. 2d at 1218 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2

3

L.Ed.2d 223 (1957); *and Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). As such, cases interpreting "transacting business" provisions look to the limits of due process principals, and sometimes base jurisdiction on a projected presence through telephone calls and facsimiles into the jurisdiction.

On the other hand, § 13-423(a)(3) is an "intentionally restricted tort section that stops short of the outer limits of due process." *Helmer v. Doletkaya*, 393 F.3d 201, 209 (D.C. Cir. 2004) (citing *Moncrief*, 807 F.2d 217, 221). In fact, the court in *Margoles* made clear that more than a "projected presence," such as a series of telephone calls or facsimiles, was required under § 13-423(a)(3). Moreover, the Court specifically explained that cases construing "transacting business" provisions and the due process clause are irrelevant in interpreting § 13-423(a)(3):

> the fact that other courts dealing with [claims under provisions similar to 423(a)(3)] have looked to the background and general language of the 'transacting business' section in justifying the exercise of personal jurisdiction, *despite the physical absence of the defendant*, is not persuasive. We are dealing with a precise and intentionally restricted tort section whose language and history mandate a different result. *Margoles,* 483 F. 2d at 1219 (emphasis supplied).

To this extent, the *Margoles* Court specifically rejected a decision by the United States Court for Appeals for First Circuit granting jurisdiction, under a provision similar to 423(a)(3), over a nonresident who lacked a physical presence, but made misrepresentations into the jurisdiction over the telephone and through the mail. *Margoles,* 483 F. 2d at 1218 (rejecting the holding in *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972)). As such, contacts in the form of telephone and facsimile communications (and the cases applying them under "transacting business" provisions)

4

are irrelevant to the Court's determination under § 13-423(a)(3). Instead, the Defendant must act while *physically present* in the District.

Plaintiffs further argue that Defendants reliance on *Margoles* is outdated as it was decided before *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). (Opposition, fn. 8) This argument, however, only further demonstrates Plaintiffs' confusion regarding § 13-423(a)(3). *Burger King* is exactly the type of case described in *Margoles* as having been decided under a "transacting business" provision of a long arm statute, allowing jurisdiction to the full extent of the due process clause. *Margoles* clearly distinguishes itself and § 13-423(a)(3) from that line of cases. Moreover, *Margoles* has been cited by this Circuit for the proposition put forward in Defendants' motion since the holding in *Burger King*. See e.g., *Moncrief v. Lexington Herald-Leader Co.,* 257 U.S. App. D.C. 72, 807 F.2d 217, 220 (D. C. Cir. 1986) (noting that "any consideration of the reach of section § 13-423(a)(3) must begin with a review of this court's comprehensive discussion of that provision in *Margoles*").

Indeed, the only case cited by Plaintiffs as part of their argument for jurisdiction under § 13-423(a)(3) that actually deals § 13-423(a)(3) or a similar provision is *Helmer v. Doletkaya,* 393 F.3d 201, 209 (D.C. Cir. 2004). In *Helmer,* the court held that § 13-423(a)(3) is a "'precise and intentionally restricted tort section which stops short of the outer limits of due process,' and requires that both act and injury occur in the District of Columbia." *Helmer,* 393 F.3d at 209 (citing *Moncrief,* 807 F.2d at 221). In no instance does the court in *Helmer,* as Plaintiffs seem to argue, suggest that establishing the place of the injury alone is sufficient for jurisdiction under 423(a)(3)[3]. Instead, the court reiterated that § 13-423(a)(3) "requires that both *act and injury* occur in the District of

---

[3] It should be noted that Defendants do not concede that the injury occurred in the District of Columbia.

5

Columbia." *Id.* *See also, Moncreif,* 807 F.2d at 220 (noting that the D.C. long arm statute "separates 'act' from 'injury'"). Moreover, *Helmer* does not alter the holding of *Margoles* that projected acts, such as communications into DC, are not acts *in* the District of Columbia for the purpose of § 13-423(a)(3).

Because Plaintiffs do not and cannot allege that the Defendants took any act while physically present in the District of Columbia, personal jurisdiction is not appropriate under § 13-423(a)(3).

### B. Personal Jurisdiction Does Not Exist Under DC Code § 13-423(a)(1), which requires that the Defendants were "Transacting Business" in the District of Columbia

Plaintiffs' reliance, to a large extent, upon the actions of *Titan* and others to establish the Defendants' minimum contacts is misplaced.[4] Allegations that Titan or its agents sent correspondence, executed wire transfers, or mailed account statements to the Plaintiffs in the District of Columbia are irrelevant to the "transacting business" determination.[5] Titan is not a party to this suit and the Plaintiff is not attempting to assert jurisdiction over Titan. Alleged contacts by any entity or person besides Lichtenstein are insufficient to satisfy the requirements of § 13-423(a)(1).

Furthermore, when considered in light of their nature, frequency and quality, it becomes clear that the Defendants' "contacts" with the forum are insufficient, as a matter of law, to give rise to personal jurisdiction. *Bank of Cape Verde v. Bronson*, 869 F.Supp. 21 (D.D.C. 1994). Plaintiffs argue that because Lichtenstein "initiated" some of the

---

[4] For instance, Plaintiffs' argument includes assertions regarding "correspondence that Titan received from FCIG...," "telephone communications from Titan...," "Facsimile Transmissions from FCIG to Titan," and allegations that "Titan sent monthly account statements to FCIG in the District of Columbia..." and "Titan sent wires to FCIG's District of Columbia bank account" (Opposition to Motion to Dismiss, p. 7-8).

[5] Plaintiffs even seem to argue that jurisdiction under § 13-423(a)(1) can be asserted based entirely upon Titan's acts because "Titan's acts should be attributable to Lichtenstein as one of Titan's principals." (Opposition, fn. 4) Plaintiffs, however, offer no support for this argument. Indeed, this argument appears to be a reiteration or recharacterization of Plaintiffs' conspiracy argument, addressed *infra*.

communications to the Plaintiffs in DC by "affirmatively and purposely dial[ing] a District of Columbia Phone number" (Opposition, p. 8), and because "Lichtenstein and his co-conspirators voluntarily sought FCIG's business...," the communications go beyond the type of responsive activity referred to in *Bank of Cape Verde* and, thus, support the exercise of personal jurisdiction.

Plaintiffs' argument is misplaced. It overlooks the fact that each and every phone call and communication, regardless of whether Lichtenstein actually dialed the call, was in response to an explicit request from Plaintiffs. Plaintiffs specifically allege that their communications with Lichtenstein were to discuss the "bona fides of the Titan program and, later, the return of FCIG funds." (Opposition, p. 7; Amended Compl., ¶¶ 26, 37). Plaintiffs do not allege that Lichtenstein made any solicitations to FCIG or contacted him for any other purpose except to respond to inquiries from Eisenberg regarding the solvency and *bona fides* of Titan. In fact, the Amended Complaint even notes, that Lichtenstein's interaction with Plaintiffs was "in response to FCIG's continuing inquiries." (Amended Complaint, ¶24). While Plaintiffs argue that "Lichtenstein and his co-conspirators voluntarily sought FCIG's business," their own pleadings reveal that the communications involving solicitations for investment occurred well before Lichtenstein's alleged involvement (Amended Compl., ¶¶ 8, 11, 15) and/or involved communications between Eisenberg and some other non-party (Amended Compl., ¶¶ 8, 11, 16, 20).

Critically, the alleged communications between Eisenberg and Lichtenstein were nearly identical in nature to that which the *Bank of Cape Verde* court described as "the unilateral activity of another party or a third person" that "is not an appropriate

consideration when determining whether a defendant has sufficient contacts." *Bank of Cape Verde*, 869 F.Supp. at 23. Plaintiffs efforts to distinguish *Bank of Cape Verde* from the case at bar are unpersuasive, as the contacts in that case were more significant than in the case at bar. Although Plaintiffs indicate that the attorneys in *Bank of Cape Verde* "merely" issued opinion letters, the plaintiffs therein substantially relied upon those opinion letters in making the investments that eventually gave rise to the suit.

While Plaintiffs attempt to distinguish *Bank of Cape Verde* on the grounds that "Lichtenstein was an active participant in Titan's business and voluntarily took acts" in that capacity, as opposed to that of the attorney for Titan, they have not alleged any active participation by Lichtenstein beyond his role as an attorney providing services almost identical to those at issue in *Bank of Cape Verde*. Moreover, the *Bank of Cape Verde* court looked not to level of involvement but instead at whether the Defendants ever "represented the [plaintiff]" or took some "benefit directly from the [transactions]." Lichtenstein never represented FCIG or Eisenberg and even Plaintiffs do not and cannot allege that he benefited from the relationship between Titan and FCIG. Indeed, he did not. Thus, as *Bank of Cape Verde* involved strikingly similar facts to those presented in the instant matter, the courts reasoning is equally applicable here:

> [a]ny activity by [the] defendants related to their representation of their client, and any telephone calls or mailing to the District of Columbia occurred solely because the [plaintiff] requested that material be sent [to D.C.]...the unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts. *Id.* at 23 (internal citations omitted).

Plaintiffs make a final attempt to distinguish *Bank of Cape Verde* by arguing that "there is no statement under oath that Lichtenstein <u>only</u> contacted Eisenberg at

8

Eisenberg's request." Plaintiffs' own complaint, however, alleges that these conversations were "in response to FCIG's continuing inquires," (Amended Compl., ¶ 24). The Plaintiffs are bound by their own admissions in the Amended Complaint.

### C. Based on the Timing and Nature of Defendants' Alleged Participation and Knowledge, Conspiracy Jurisdiction is Improper.

Plaintiffs are seeking "conspiracy" jurisdiction in the District of Columbia based on a variety of acts by alleged co-conspirators. As the court in *Jin v. Ministry of State Security*, 335 F. Supp. 2d 72, 80 (D.D.C. 2004) explained, "if the court did not require a showing of purposeful availment, conspiracy jurisdiction would conceivably allow for such acts [by others] to constitute 'minimum contacts.'" (Citing *World-Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. 559 (holding that "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State'")). Purposeful availment, in the context of conspiracy jurisdiction, requires a *showing* that Defendants, had some "knowledge, control, approval or discretion" over the overt acts of the co-conspirators that took place within the forum. *Id. at 83.*

Recognizing the difficulty they will have in clearing this constitutional hurdle, Plaintiffs lump together all alleged co-conspirators and all alleged overt acts, blurring the distinction between the actors, the alleged acts and when they occurred. That is, Plaintiffs attempt to rely on acts of other, occurring before Defendants are alleged to have participated in, or even known about the alleged conspiracy, in order to satisfy the requirements for jurisdiction. In this regard, as alleged in the Amended Complaint, the Defendants were not involved with Titan prior to 2002. Thus, by Plaintiffs' own admission, the Defendants could not have controlled or approved of acts in the District

9

prior to that date. The "overt" acts by co-conspirators alleged after 2002 are conclusionary allegations such that there was an agreement among co-conspirators to commit fraud and that co-conspirators "regularly transacted business" in the District of Columbia without any reference to time, place or specific act. (Amended Complaint, ¶¶ 1, 3, 57, 58) This kind of generalized statement does not sufficiently allege any overt acts in the first instance, and, furthermore, does not allege that Lichtenstein had any knowledge or control over an overt act. See *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787-88 (D.C.Cir.1983). The only specific allegations of "overt" acts, occurring after 2002, involve acts by Lichtenstein himself. While he certainly had knowledge and control over his own acts, these acts did not occur *in* the District of Columbia and imposing personal jurisdiction based on these such responsive communications would violate due process. *Bank of Cape Verde*, 869 F.Supp. at 23.

As the court in *Jin*, 335 F. Supp. 2d at 80, noted, the "requirement for conspiracy jurisdiction that the plaintiff demonstrate purposeful availment raises serious questions about the future usefulness of conspiracy jurisdiction." Clearly, the court is acknowledging that the exercise of "conspiracy" jurisdiction is held to same the level of constitutional scrutiny as traditional non-conspiracy personal jurisdiction. In this case, the vague allegations and bootstrap logic put forth by the Defendants would require the court to make numerous inferences and stretch the definitions of "within the disctrict of Columbia," "overt act" and "knowledge, control, approval or discretion" beyond that which is constitutionally permissible. A straightforward examination of the alleged overt acts within the District of Columbia, occurring after the date when Plaintiffs became

10

involved, and over which Defendants exercised knowledge or control, reveal that none actually exist.

## II. THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA IS NOT A PROPER VENUE FOR THIS ACTION

As argued above, the Defendants do not believe that Defendants' contacts are sufficient to give rise to personal jurisdiction. See *Bank of Cape Verde*, 869 F. Supp 21, 22-23. However, even if the Court finds to the contrary, the arguments above make clear that the role of the District of Columbia in this dispute is limited and insufficient to constitute a "substantial part of the events" giving rise to the claims as required by 28 U.S.C. § 1391(a)(2).

Moreover, Defendants have argued, among other things, that the fact that this suit involves a dispute between a Maryland LLC and an Illinois lawyer tends to demonstrate that no substantial part of the events occurred inside the District of Columbia. Plaintiffs have attempted to rebuff this argument that by asserting that FCIG has always maintained its principal place of business is in the District of Columbia. Nonetheless, FCIG's principal place of business was originally designated, in April 2001, as 9800 Gable Ridge Terrace, Apt. G, Rockville, MD. (Articles of Incorporation, Motion Exhibit B.) Moreover, in January 2005, just months before filing this suit, and while alleging in a related suit that its principal place of business was the District of Columbia for jurisdictional purposes (Complaint in *Eisenberg v. IFX*, Reply Exhibit A), FCIG designated its principal place of business as 122 Treehaven Street, Gaithersburg, Maryland 20850. (Certificate of Reinstatement, Motion Exhibit C). This inconsistency

serves to undermine whatever faith can be given to allegations by the Plaintiffs that FCIG conducts its business entirely within the District of Columbia.[6]

### III. FOR THE CONVENIENCE OF PARTIES AND WITNESSES, AND IN THE INTEREST OF JUSTICE, THIS SUIT SHOUD BE TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS

Even if both jurisdiction and venue are proper, the court should exercise its discretion and transfer this case to the Northern District of Illinois "for the convenience of parties and witnesses, [and] in the interest of justice…" 28 U.S.C. § 1404(a). Section 1404(a) directs the court to weigh a number of case-specific private interest and public interest factors. *Id.*; see also *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). These factors include: the plaintiff's choice of forum; the defendant's choice of forum; whether the claim arose elsewhere; the convenience of the parties; the convenience of the witnesses; the ease of access to sources of proof; the transferee's familiarity with the governing laws; the relative congestion of the calendars of the transferor and transferee courts; and the local interest in deciding local controversies at home. *Id.* As set forth in detail in Defendants' Motion, the application of these factors demonstrates that this case should be transferred to the United States District Court for the Northern District of Illinois.

Plaintiffs argue that their choice of forum should be given deference because "many of the tortuous actions took place in the District of Columbia." (Opposition, p. 19-20). To the contrary, however, no alleged tortious act by Defendants took place in the District and the District has no meaningful ties to the controversy between these parties.

---

[6] Indeed, Plaintiffs' failure to register in the District of Columbia while doing business in the District of Columbia might bar this suit if was brought in the District's own Courts. See, DC Code §29-1058(a) ("A foreign limited liability company transacting business in the District may not maintain any action at law or equity in any court of the District until it has obtained a certificate of registration")

12

As such, only marginal deference should be given to Plaintiffs' choice of forum; see *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996). As discussed above, there is no allegation that the Defendant took any action while physically present in the District of Columbia. Indeed, the only tie between the District of Columbia and the controversy between these parties is that Mr. Eisenberg, a Maryland resident and the principal of a Maryland LLC, has alleged minimal and limited communications with the Defendants from his District of Columbia law office, that also allegedly served as a place of business for his LLC. On the other hand, the allegations contained in the Amended Complaint make clear that this controversy arose in Illinois and that Illinois law will apply to the substantive issues to be resolved. As such, Illinois is a more appropriate forum.

Plaintiffs further argue that, "Lichtenstein has not demonstrated that litigating [in DC] would be more inconvenient for him than it would be for FCIG to litigate in Illinois." (Opposition, p. 20-21) To the contrary, however, Defendants have made clear that being forced to litigate this case in the District of Columbia will be a hardship to Lichtenstein's law practice and clients. On the other hand, Plaintiffs have already voluntarily litigated Titan-related issues in the Midwest.

Moreover, Plaintiff asserts that because two Merrill Lynch brokers and numerous FCIG investors reside in or near the District of Columbia, the convenience of the numerous factual witnesses living in and around Illinois should be disregarded. Only one of the witnesses cited by Plaintiffs (who resides in New York) is alleged to have had any interaction with the Defendants. According to the Plaintiffs, the rest of these witnesses' testimony will pertain only to the amounts of money invested and thus will have minimal

value. On the other hand, the factual witnesses within the subpoena power of the United States District Court for the Northern District of Illinois will testify to issues critical to the fair adjudication of this matter.

Plaintiffs also contend that even if Illinois law applies, the application of those laws does not favor transfer. (Opposition, p. 25). While it is true that the application of another state's laws <u>alone</u> does not warrant transfer, see *Thayer/Patricof Educ. Funding v. Pryor Res.*, 196 F. Supp. 2d 21, 37 (D.D.C. 2002), the transferee courts' familiarity with the governing laws has been long established as a factor in determining whether to transfer venue. *Trout Unlimited,* 944 F. Supp. at 16. Similarly, Plaintiffs argue that documents showing "that the Northern District of Illinois may appear to dispose of cases more quickly" (Opposition, fn. 21) do not favor transfer. However, the relative congestion of the calendars of the transferor and transferee courts has been long established as a factor in determining whether to transfer venue. *Trout Unlimited,* 944 F. Supp. at 16.

Finally, the claims that are subject to suit arise almost entirely from Mr. Lichtenstein's representation of Titan and/or Martinic's as their Illinois counsel, or from his alleged role as a director of Titan, an Illinois company. As such, the dispute alleged in the Amended Complaint should be decided by a court in the affected judicial district, the United States District Court for the Northern District of Illinois, and not by the United States District Court for the District of Columbia.

WHEREFORE, for the reasons aforesaid and for the reasons stated in their Motion to Dismiss the Amended Complaint, Defendants respectfully request that their Motion be GRANTED, and that this case be DISMISSED, or in the alternative, that the

case be TRANSFERRED to the United States District Court for the Northern District of Illinois.

                                         Respectfully submitted,
                                         **LARRY B. LICHTENSTEIN**
                                         **LARRY B. LICHTENSTEIN & ASSOCIATES**
                                         *Defendants*

                                         By Counsel:

DATED: December 20, 2005                    _____/s/_____
                                         Matthew A. Ranck (D.C. Bar # 484983)
                                         William L. Mitchell, II (D.C. Bar # 476101)
                                         ECCLESTON AND WOLF, P.C.
                                         2001 S Street, N.W., Suite 310
                                         Washington, DC  20009
                                         Tel. (202) 857-1696
                                         Fax (202) 867-0762
                                         *ranck@ewmd.com*
                                         *wmitchell@ewdc.com*

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Reply was transmitted by electronic mail on this 20th day of December, 2005, to:

Ross D. Cooper, Esquire
Kristin Draper, Esquire
SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.
11921 Rockville Pike, Third Floor
Rockville, Maryland 20852
*Counsel for Plaintiffs*

                                                                 _____/s/_____
                                                                  Matthew A. Ranck