IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FC INVESTMENT GROUP LC<br>1700 Wisconsin Avenue, N.W.<br>Washington, DC 20007,<br><br>and<br><br>LAWRENCE JAY EISENBERG<br>1700 Wisconsin Avenue, N.W.<br>Washington, DC 20007,<br><br>       Plaintiffs,<br><br>v.<br><br>IFX Markets, Ltd.<br>One American Square<br>17 Cross Wall<br>London EC3N2LB<br>United Kingdom,<br><br>       Defendant. | Case No._____<br><br>**Jury Trial Demanded** |

## COMPLAINT

For its complaint against Defendant IFX Markets, Ltd. ("IFX"), Plaintiffs FC Investment Group LC ("FCIG") and Lawrence Jay Eisenberg ("Eisenberg") allege as follows:

### Parties

1.  Plaintiff FCIG is a Maryland limited liability company having its principal place of business at 1700 Wisconsin Avenue, N.W., Washington, DC 20007. Plaintiff Eisenberg is the sole owner and Manager of FCIG, which he created in or about April 2001 for the purpose of introducing potential investors to Titan Global Strategies, Ltd ("Titan"), which was IFX's co-conspirator in the Ponzi scheme that is the subject of this action. At all relevant times, FCIG conducted business with Defendant from its Washington, DC offices.



2. Plaintiff Lawrence Jay Eisenberg is a resident of the State of Maryland and has a principal business address in the District of Columbia at 1700 Wisconsin Avenue, N.W., Washington, DC 20007. At all relevant times, Eisenberg conducted business with Defendant from his Washington, DC offices.

3. Defendant IFX Markets, Ltd. ("IFX") is a United Kingdom corporation having a principal place of business at One American Square, 17 Cross Wall, London EC3N2LB, United Kingdom.

## Venue

4. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. §§ 1331 and 1367. Personal jurisdiction exists over IFX in the District of Columbia because IFX directed contact to FCIG and Eisenberg in the District of Columbia in furtherance of the conspiracy and IFX's co-conspirator Titan solicited and directed communications to FCIG and Eisenberg in the District of Columbia in furtherance of the conspiracy.

5. Venue is proper pursuant to 28 U.S.C. § 1391.

## Nature of the Action

6. This is an action for compensatory and punitive damages against IFX, arising from its conspiracy with a company named Titan Global Strategies, Ltd. ("Titan") and Titan's owner Milan Martinic ("Martinic") to defraud Plaintiffs out of approximately $9.5 million in a fraudulent foreign currency investment scheme. IFX, acting through one of its senior London-based officials, created marketing materials and hosted meetings with Plaintiff which were designed to, and did, induce Plaintiffs to invest millions of dollars in what was, in effect, a Ponzi scheme. The IFX/Titan conspiracy reached across America, as Plaintiffs have identified other

2

individuals who were induced to visit IFX's London offices in furtherance of the conspiracy and were thereby duped into investing millions of dollars into the Ponzi scheme. As a result, Plaintiffs are entitled to recover from IFX their lost investment, prejudgment interest, attorney fees and punitive damages.

## Statement of Facts

### A.    Titan Induced Eisenberg to Invest Money with Titan

7.    In or about September 1998, Titan and its officials contacted Eisenberg at his offices in the District of Columbia about making an investment in a foreign currency trading account to be managed by Titan. Eisenberg was informed that Milan Martinic owned and controlled Titan.

8.    Based upon Titan's representations respecting its experience and affiliations, and the representations contained in an information brochure that was sent to Eisenberg via U.S. Mail, Eisenberg invested $10,000 with Titan which investment was to be invested for foreign currency traders, and was to be completely liquid and allow for withdrawal merely upon notice to Titan.

9.    In continuing reliance on the information brochure and Titan's subsequent representations to Eisenberg at his offices in the District of Columbia and elsewhere, which are more fully described below, between October 1998 and October 2003 Eisenberg and related entities such as his pension plans invested approximately $1.065 million with Titan. Eisenberg's wife also invested $400,000 with Titan.

    B.    **In Reliance on Titan's Misrepresentations, Eisenberg Created FCIG to Facilitate His Dealings with Titan**

    10.    In April 2001, Eisenberg created FCIG to facilitate his and other Titan investors' dealings with Titan. Upon FCIG's creation, all of Eisenberg's activities were taken on behalf of, and in his capacity as Manager of, FCIG.

    11.    As of October 2003, the total investments in the FCIG accounts, net of amounts returned by Titan, was $5 million.

    C.    **Titan and later IFX Continued To Intentionally Misrepresent Facts and Deny Eisenberg and FCIG Material Information In Order to Induce Eisenberg and FCIG to Continue Investing Funds with Titan and Introducing Investors to Titan and Prevent Them From Discovering Titan's Fraud**

    12.    In early 2001, Titan assigned Charles Knott, a Titan employee responsible for "New Business Development" to be Eisenberg's, and, as of April 2001, FCIG's investment advisor and point-of-contact for Titan.

    13.    In or about 2002, Knott advised FCIG that IFX would assume the management, investment and brokerage service responsibilities for Titan. Titan board member Lawrence B. Lichtenstein ("Lichtenstein") testified recently under oath that IFX was Titan's "business partner." Lichtenstein further testified that his points of contact at IFX were Senior Sales Executive Andy Demetriades and IFX executive Christopher L. Cruden ("Cruden"), Head of IFX Managed Funds. Eisenberg had telephone conversations with Lichtenstein and Cruden confirming IFX's involvement. IFX's involvement with Titan was reassuring to FCIG and Eisenberg.

4

14.     Further reassuring to FCIG was that, on the several occasions FCIG requested a partial return of investment funds Titan released the funds without delay. These partial returns exceeded over $500,000 in total. This hallmark of a well-executed fraud – the partial return of an investor's funds to provide the appearance of legitimacy – was designed to induce FCIG to continue its investment activities and assuage any concerns respecting Titan's business practices.

15.     To further perpetuate the fraudulent scheme, Eisenberg was invited by Titan in November, 2002 to visit IFX's offices for a presentation respecting the venture.

16.     Prior to the meeting at IFX offices, a Desiree Lichtman worked on the IFX trading floor with IFX personnel to create a PowerPoint presentation that was to be shown at FCIG's meeting with Titan and IFX.

17.     During his visit to IFX, Eisenberg met with Knott, Cruden and some IFX directors and officers. Eisenberg and was shown an elaborate PowerPoint presentation that indicated in no uncertain terms that Titan and IFX had established a joint venture with respect to foreign currency trading activities. The Powerpoint presentation prominently displayed IFX's logo. It also included detailed information that included a sophisticated statistical analysis of Titan's performance from 1997, trading strategies, due diligence methodologies, and a roster of directors that included the Chief Executive and a Director of IFX. The Powerpoint also listed major IFX shareholders and market counterparties.

18.     Relying on Titan and IFX's representations that Titan and IFX were business partners, the meeting in IFX offices and the Powerpoint demonstration, FCIG and those investors associated with FCIG invested approximately $2 million after the London meeting in November, 2002.

5

19. In late 2003, when Eisenberg's request to close his account was rebuffed, the IFX/Titan venture was revealed to be a Ponzi scheme. To this date, Eisenberg/FCIG's funds have not been returned.

### D. The Titan/IFX Conspiracy is of National Scope and is Continuing

20. Eisenberg/FCIG is apparently not the only victim of the Titan/IFX conspiracy.

21. Eisenberg/FCIG has been contacted by a Dennis Joyce from Florida who was directed to Eisenberg/FCIG by IFX's US-based counsel.

22. Like Eisenberg, Joyce and his friend, Kevin Neal, invested more than $1 million in Titan based upon perceived bona fides given IFX's involvement.

23. Like Eisenberg, Joyce's main Titan contact was Charles Knott. Like Eisenberg, Joyce was provided literature linking Titan and IFX. Like Eisenberg, Joyce was invited to, and did, attend a meeting in London at IFX's offices and on its trading floor where the bona fides of the IFX/Titan venture were discussed. Attached hereto as Exhibits A and B are two photographs taken by Joyce of the IFX offices/trading floor where he met Knott at Knott's office on the IFX trading floor. A photograph of Knott taken by Joyce at the meeting is attached as Exhibit C.

24. As of October, 2004, Joyce remains in contact with Knott, whose activities in furtherance of the conspiracy remain ongoing.

### COUNT I - INTENTIONAL FRAUD/FRAUD IN THE INDUCEMENT

25. Plaintiffs incorporate as if realleged herein the allegations contained at paragraphs 1-24.

6

26.     IFX made intentional and material misrepresentations of fact to FCIG and Eisenberg respecting, inter alia: (i) Titan's relationships with foreign IFX; and (ii) the success and performance of Titan's investment strategies.

27.     In reasonable reliance on Defendant's misrepresentations described above, FCIG and Eisenberg were induced to, inter alia: (i) invest funds with Titan; (ii) perform services for Titan, such as introducing Titan to other potential investors; and (iii) maintain their investments with Titan.

28.     Defendant, recklessly and/or maliciously, intended that FCIG and Eisenberg would rely upon their misrepresentations in the manner described above.

29.     As a result of Defendant's intentional fraud, FCIG and Eisenberg have been deprived of approximately $5 million of investment funds.

## COUNT II - CIVIL CONSPIRACY

30.     Plaintiffs incorporate as if realleged herein the allegations contained at paragraphs 1-29.

31.     Defendant had agreements and/or understandings with Titan and Martinic to commit fraud and violate the Securities and Exchange Act of 1933 and 1934 and the Commodity Exchange Act.

32.     As described above, Defendant actually committed numerous overt acts in furtherance of the conspiracy, including intentionally providing material false and misleading information to Eisenberg and FCIG and arranging a meeting at IFX offices and introducing Eisenberg and FCIG to IFX officers and directors. Moreover, IFX during its participation in the conspiracy, knew that the overt actions were directed to the District of Columbia.

33. Eisenberg and FCIG were harmed by Defendant's civil conspiracy and have suffered damages.

## COUNT III - CIVIL AIDING AND ABETTING

34. Plaintiffs incorporate as if realleged herein the allegations contained at paragraphs 1-33.

35. As described above, Titan and Martinic committed numerous fraudulent acts in violation of various securities and civil statutes and the common law.

36. Defendant had knowledge of Titan and Martinic's fraudulent enterprise and attempts to induce Plaintiffs to continue to invest money with Titan and to maintain their accounts with Titan.

37. Defendant aided, abetted and encouraged Titan and Martinic's wrongful and tortious conduct and knowingly provided substantial assistance, aid and encouragement in the commission of such conduct by: (i) working with Titan agents and employees to prepare a PowerPoint presentation to be shown at the 2002 meeting – which presentation indicated that IFX had formed a joint venture with Titan; (ii) meeting with Plaintiffs at IFX offices in 2002; (iii) providing Knott with an office on the IFX trading floor.

38. Plaintiffs relied on Defendant's representations to their detriment by maintaining their accounts with and continuing to invest funds with Titan in an amount to be more fully determined at trial.

## COUNT IV - CONSPIRACY TO VIOLATE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

39. Plaintiffs incorporate as if realleged herein the allegations contained at paragraphs 1-38.

40. The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), prohibits any person from engaging in a pattern of racketeering and deriving income therefrom.

41. Titan and Martinic's above actions, including the criminal laundering of funds, engaging in monetary transactions derived from unlawful activities, engaging in wire fraud, traveling in interstate and foreign commerce to promote, manage and carry on an unlawful activity, and failing to report foreign currency transactions in excess of $10,000, in violation of 18 U.S.C. §§ 1343, 1952, 1956, 1957 and 31 U.S.C. § 5316, constitute acts of racketeering activity pursuant to 18 U.S.C. § 1961(a).

42. Titan, Martinic, Knott and IFX, among others, maintained an enterprise through which they perpetrated their fraudulent conspiracy.

43. Titan and Martinic's unlawful acts, over the course of six years from 1998 through 2004, constitute a pattern of racketeering activity from which the Defendant derived income, e.g., the millions of dollars invested by Eisenberg and FCIG.

44. As described above, the racketeering activities were related to each other in furtherance of the fraudulent Ponzi scheme.

45. As evidenced by Joyce's continued contact with Titan as recently as October, 2004, the pattern of racketeering is ongoing and threatens continued criminal activity.

9

46. Titan and Martinic's actions affected interstate commerce. Moreover, IFX, during its participation in the enterprise, knew that the actions of the enterprise were directed to the District of Columbia.

47. RICO, 18 U.S.C. § 1962(d), prohibits any person from conspiring to violate 18 U.S.C. § 1692(a).

48. As described above, Defendant had agreements and/or understandings to engage in racketeering activities with Titan and Martinic and participate in their enterprise.

49. As described above, Titan and Martinic actually committed numerous overt racketeering activities, including the criminal laundering of funds, engaging in wire fraud, engaging in monetary transactions derived from unlawful activities, traveling in interstate and foreign commerce to promote, manage and carry on an unlawful activity, and failing to report foreign currency transactions in excess of $10,000, in violation of 18 U.S.C. §§ 1343, 1952, 1956, 1957 and 31 U.S.C. § 5316. Moreover, IFX, during its participation in the enterprise, knew that the actions of the enterprise were directed to the District of Columbia.

50. Plaintiffs were harmed by Defendant's conspiracy to violate RICO and have suffered damages.

WHEREFORE, Plaintiffs Eisenberg and FCIG respectfully request this Court enter judgment in their behalf and enter an order:

A. Awarding Plaintiffs the full amount of investment funds contained in Plaintiffs' account(s) with Titan which are in excess of $5 million;

B. Awarding Plaintiffs compensatory damages in an amount to be proven at trial for Defendant's actions as described above;

C.  Awarding Plaintiffs treble damages on all amounts awarded under Count II pursuant to 18 U.S.C. § 1964(c) which are in excess of $15 million;

D.  Awarding Plaintiffs punitive damages in an amount to be proven at trial for Defendant's intentional and malicious actions as described in Counts I, III and IV;

E.  Awarding Plaintiffs pre- and post-judgment interest on all amounts awarded;

F.  Awarding Plaintiffs attorney fees incurred in bringing this action; and

G.  Awarding Plaintiffs all such further relief this Courts deems fair and reasonable.

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.

By: _____
Ross D. Cooper #429200
11921 Rockville Pike, Third Floor
Rockville, MD 20852
(301) 230-5200
(301) 230-2891 (fax)

Attorney for Plaintiffs, Lawrence Jay Eisenberg
and FC Investment Group LC

11

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

*Ross D. Cooper*